**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Brandon Marsh (SBN 268316)
bmarsh@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone:  (858) 997-0860
Facsimile:   (858) 369-0096

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Class*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
## SOUTHERN DIVISION

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | No. 8:19-cv-2326-DOC-ADS<br><br>**LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER VENUE**<br><br>DATE:  May 11, 2020<br>TIME:   8:30 a.m.<br>COURTROOM: 9D<br>JUDGE: David O. Carter |

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................1

II.   FACTUAL BACKGROUND ............................................................................4

III.  ARGUMENT .....................................................................................................7

    A.   Party Convenience Does Not Weigh In Favor Of Transfer.................8

        1.   Lead Plaintiffs' Choice Of Forum Should Not Be Disturbed..................................................................................8

        2.   Defendants' Assertions Of Inconvenience Are Incorrect And Weigh Against Transfer ...................................11

        3.   The Location Of Documents Is No Grounds For Transfer..............................................................................17

    B.   Witness Convenience Weighs Against Transfer ...............................19

        1.   Numerous Material Witnesses Reside In This District And Elsewhere In California .......................................19

        2.   Defendants' Contentions Regarding The Convenience Of Witnesses Fail...............................................22

    C.   Transfer Is Not In The Public Interest ..............................................23

IV.   CONCLUSION ................................................................................................25

LEAD PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
CASE NO. 8:19-CV-2326-DOC-ADS

# TABLE OF AUTHORITIES

**Page(s)**

*Abundancia, LLC V. R.D.T. Bus. Enters., Inc.*,
2015 WL 3533213 (C.D. Cal. June 3, 2015) .......................................................23

*Allstar Mktg, Grp., LLC v. Your Store Online, LLC*,
666 F. Supp. 2d 1109 (C.D. Cal. 2009) ..............................................................24

*Amini Innovation Corp. v. JS Imps., Inc.*,
497 F. Supp. 2d 1093 (C.D. Cal. 2007) ..........................................................8, 23

*Anschutz Co. v. Deutsche Bank Sec., Inc.*,
2010 WL 1464375 (N.D. Cal. Apr. 13, 2010) ..............................................14, 17

*Aspen Ins. UK Ltd. v. Brown & Brown, Inc.*,
2011 WL 13217776 (C.D. Cal. May 2, 2011) .......................................................9

*Cal. Writer's Club v. Sonders*,
2011 WL 4595020 (N.D. Cal. Oct. 3, 2011)........................................................18

*Catch Curve, Inc. v. Venali, Inc.*,
2006 WL 4568799 (C.D. Cal. Feb. 27, 2006).............................................7, 19, 23

*Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*,
2005 WL 4715213 (C.D. Cal. Apr. 28, 2005) .....................................................24

*CES Grp., LLC v. DMG Corp.*,
2015 WL 457405 (N.D. Cal. Feb. 3, 2015) .........................................................19

*Davis v. Social Serv. Coordinators, Inc.*,
2013 WL 4483067 (E.D. Cal. Aug. 19, 2013)......................................................24

*Decker Coal Co. v. Commonwealth Edison Co.*,
805 F.2d 834 (9th Cir. 1986).............................................................................3, 7

*DeFazio v. Hollister Emp. Share Ownership Tr.*,
406 F. Supp. 2d 1085 (E.D. Cal. 2005)...............................................................17

*Dexcom, Inc. v. AgaMatrix, Inc.*,
2017 WL 3433543 (C.D. Cal. Feb. 3, 2017)........................................................19

*DIRECTV, Inc. v. EQ Stuff, Inc.*,
   207 F. Supp. 2d 1077 (C.D. Cal. 2002) ......................................................................8

*Eliminator Custom Boats v. Am. Marine Holdings, LLC*,
   2006 WL 4941830 (C.D. Cal. Aug. 31, 2006).........................................................18

*Elite Apparel, LLC v. Dallas Cowboys*,
   2013 WL 12116606 (S.D. Cal. Nov. 5, 2013) .........................................................11

*Ellis v. Costco Wholesale Corp.*,
   372 F. Supp. 2d 530 (N.D. Cal. 2005) .....................................................................10

*Fed. Deposit Ins. Corp. for BankUnited, FSB v. First Priority Fin., Inc.*,
   2015 WL 13357439 (C.D. Cal. Nov. 10, 2015)........................................................23

*Florens Container v. Cho Yang Shipping*,
   245 F. Supp. 2d 1086 (N.D. Cal. 2002) .....................................................................8

*Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*,
   2007 WL 1152682 (N.D. Cal. Apr. 18, 2007) .........................................................12

*Forte Cap. Partners v. Harris Cramers*,
   2007 WL 1430052 (N.D. Cal. May 14, 2007) .........................................................18

*Gen. Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*,
   2009 WL 2137094 (N.D. Cal. July 16, 2009)......................................9, 10, 12, 17

*Goodwin v. Citywide Home Loans, Inc.*,
   2014 WL 5327191 (C.D. Cal. Oct. 17, 2014).........................................................14

*Herman v. Andrus Transp. Servs., Inc.*,
   2017 WL 8292463 (C.D. Cal. Feb. 15, 2017).........................................................7

*In re AtheroGenics Sec. Litig.*,
   2006 WL 851708 (S.D.N.Y. Mar. 31, 2006) .........................................................24

*In re Ferrero Litig.*,
   768 F. Supp. 2d 1074 (S.D. Cal. 2011)...................................................................25

*In re Geopharma, Inc.*,
   2005 WL 1123883 (S.D.N.Y. May 11, 2005)..........................................................17

*In re Glob. Cash Access Holdings, Inc. Sec. Litig.*,
2008 WL 4344531 (S.D.N.Y. Sept. 18, 2008)........................................................15

*Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*,
797 F. Supp. 2d 472 (D. Del. 2011) ........................................................................14

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000)....................................................................................8

*Kondo v. Anthelio Health Care Sols., Inc.*,
2015 WL 7710301 (N.D. Cal. Nov. 30, 2015)...................................................3, 18

*LG Elecs., Inc. v. Eastman Kodak Co.*,
2009 WL 10726528 (S.D. Cal. May 26, 2009).......................................................14

*Lloyd's Material Supply Co., Inc. v. Regal Beloit Corp.*,
2017 WL 5172206 (C.D. Cal. June 27, 2017) ........................................................13

*LRN Corp. v. RGA Reinsurance Co.*,
2015 WL 13285086 (C.D. Cal. Jan. 20, 2015) .........................................11, 17, 24

*Miyauchi Corp. v. Oswald*,
2012 WL 12952741 (C.D. Cal. Oct. 29, 2012).................................................*passim*

*NFF Inventions LLC v. CTI Food Acquisition LLC*,
2012 WL 12887830 (C.D. Cal. July 3, 2012) .........................................................12

*Purdessy v. Bojangles', Inc.*,
2019 WL 2461805 (S.D.N.Y. May 24, 2019)..........................................................17

*Rafton v. Rydex Series Funds*,
2010 WL 2629579 (N.D. Cal. June 29, 2010) .........................................................17

*Rumble, Inc. v. Daily Mail and Gen. Tr. PLC*,
2018 WL 5099708 (C.D. Cal. Jan. 9, 2018) .............................................11, 16, 23

*Safarian v. Mesarati N. Am., Inc.*,
559 F. Supp. 2d 1068 (C.D. Cal. 2008) ............................................................7, 11

*Sec. Inv'r Prot. Corp. v. Vigman*,
764 F.2d 1309 (9th Cir. 1985)...............................................................................*passim*

*S.E.C. v. Rose Fund, LLC,*
  2004 WL 2445242 (N.D. Cal. Jan. 9, 2004) ........................................................9

*Signalisation Ver-Mac, Inc. v. Addco Mfg., Inc.,*
  2006 WL 6247892 (D. Or. Feb. 21, 2006)..........................................................15

*STX, Inc. v. Trik Stik, Inc.,*
  708 F. Supp. 1551 (N.D. Cal. 1988) ....................................................................7

**Statutes**

15 U.S.C.
  §78aa(a) ..............................................................................................................8, 9

28 U.S.C.
  §1404(a).................................................................................................................7

42 U.S.C.
  §2000(e)...............................................................................................................10

Court-appointed Lead Plaintiffs, the City of Atlanta Police Pension Fund, the City of Atlanta Firefighters' Pension Fund (the "Atlanta Funds"), and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("Baton Rouge"), respectfully submit this Memorandum of Points and Authorities in opposition to Defendants' motion to transfer this action to the District of Utah (ECF No. 44; the "Motion" or "Mot.").

## I.  INTRODUCTION

The Central District of California is the proper forum for this securities fraud class action. The initial complaint asserts claims under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), alleging that Merit Medical Systems, Inc. ("Merit" or the "Company") and its top executives (collectively "Defendants") defrauded investors regarding the activities and financial health of Cianna Medical, Inc. ("Cianna"), a California-based company that Merit acquired in a transformative acquisition – the "largest-ever acquisition" in the Company's history – as well as certain other acquisitions.[1]

The Exchange Act has a special venue statute, which provides plaintiffs with an unusually liberal choice of forum. Given this special venue provision, the Ninth Circuit has held that a plaintiff's choice of forum in federal securities cases such as this one is afforded substantial deference. *See, e.g.*, *Sec. Inv'r Prot. Corp. v. Vigman*, 764 F.2d 1309, 1317 (9th Cir. 1985) ("Without question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum and . . . the plaintiff's choice of forum should rarely be disturbed.").

This Court is not only a proper forum, but it is also the most convenient forum for the witnesses, and in particular non-party witnesses. The significant losses at

---

[1] ¶4. Unless otherwise noted, references to "¶__" are to the initial Class Action Complaint for Violations of the Federal Securities Laws ("Complaint"). *See* ECF No. 1. All citations and internal quotations are omitted and emphasis added unless otherwise noted.

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE NO. 8:19-CV-2326-DOC-ADS

issue in this case regard, in large part, Defendants' misrepresentations concerning the integration, sales, and performance of the Cianna business. Cianna was founded in Aliso Viejo less than 20 miles from this Court, and Merit continues to operate the Aliso Viejo office as its principal place of business in California and only sales office in the country. Numerous former employees of Cianna who experienced firsthand the issues underlying Defendants' misstatements to investors, and have highly relevant and discoverable knowledge concerning the claims at issue in this action, including the core elements of falsity and scienter, continue to reside in this District, within the Court's subpoena power. While there are certainly some relevant witnesses who reside in the District of Utah, Lead Plaintiffs are willing to take their depositions, if any, where they reside – eliminating potential travel for them.

This Court is also the most convenient forum for the parties. Merit has substantial operations in California; has recently expanded its presence in this District and in California more broadly; and has specifically chosen to litigate cases in this District as opposed to other Districts. While Defendants claim that this District is very inconvenient for them and Merit's other senior officers, they neglect to inform the Court that Defendants Lampropoulos, their own CEO and Chairman who made most of the challenged statements in this case, actually owns a home in Newport Beach, just 12 miles by car from this Courthouse. *See* Kaplan Decl. ¶4 & Ex. A.[2]

In addition, Defendants' outside law firm retained for this action is located in this District, and reports having zero attorneys in Utah. As for Lead Plaintiffs, they have no substantial contacts with Utah. Lead Counsel are also located in this District and in the nearby Southern District of California, with, like Defendants' counsel, no attorneys in Utah. There is no ease or efficiency in forcing each party's counsel to fly to Utah for every court hearing in this case.

Defendants nonetheless seek to transfer this action to a forum in a different

[2] All references to the "Kaplan Decl." refer to the Declaration of David R. Kaplan in Support of Lead Plaintiffs' Opposition to Defendants' Motion to Transfer Venue and the exhibits attached thereto, filed concurrently herewith.

Circuit where they would prefer to defend themselves, the District of Utah. To succeed, they must make a "strong showing" that the Central District of California is inconvenient – in particular for non-party witnesses – and the interests of justice warrant upsetting Lead Plaintiffs' choice of this forum. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986). Defendants fail to make such a showing. Instead, their motion ignores the compelling connections to California, omits that none of Cianna's former employees appear to be located in Utah, and similarly fails to mention that neither the original plaintiff, Bucks County Employees Retirement Fund ("Bucks County"), nor any of the three Lead Plaintiffs, have any connection to Utah.

Instead of discussing these salient facts, Defendants submit only a speculative and conclusory declaration from a Merit executive regarding the "expected" relevance of certain ***party*** witnesses and the location of certain Company documents. *See* ECF No. 44-1 (the "Frost Declaration" or "Frost Decl."). This self-serving declaration – which wrongly presupposes that fact witness discovery will be limited to only a small cadre of senior Merit executives in Utah handpicked by Merit – ignores the acquisition's focus in California, including that the substantial majority of the Cianna business's current and former California employees continue to reside in California.

As for witnesses, Defendants have wholly failed to show that a sufficiently large number of witnesses reside in Utah as opposed to in this District, particularly given the high number of relevant party and ***non-party*** witnesses located in this District. To the extent relevant party witnesses, such as the Individual Defendants and other Merit executives, are located in Utah, as noted, Co-Lead Counsel agrees to make the short hour-and-forty-five-minute flight to Utah for any needed depositions. As for documents, Defendants have made no showing that the location of documents favors transfer. Document discovery will undoubtedly occur over the Internet, as in nearly all cases such as this. *Kondo v. Anthelio Health Care Sols., Inc.*, 2015 WL

7710301, at *5 (N.D. Cal. Nov. 30, 2015) (the location of documents and witnesses is "no longer weighed heavily given the modern advances in communication and transportation").

In sum, Defendants fall far short of carrying their heavy burden of showing that this is the "rare[]" case where the plaintiff's choice of forum should be disturbed. *Vigman*, 764 F.2d at 1317. Defendants' Motion should be denied.

## II.   FACTUAL BACKGROUND

This case largely arises from Merit's acquisition of California-based Cianna in a November 2018 transaction valued at up to $200 million.

Merit manufactures disposable medical devices used in interventional diagnostic and therapeutic procedures. ¶2. In November 2018, Merit completed the acquisition of Cianna, a medical company founded in 2007 in this District in Aliso Viejo. Before the acquisition, Cianna had approximately 80 employees. Kaplan Decl. ¶7 & Ex. C. According to Defendant Lampropoulos, the Company's Chairman and CEO, Cianna was "the largest acquisition Merit has ever made." ¶29.

Before acquiring Cianna, Merit had largely operated as a medical supply company, and its acquisition targets had largely been similar companies. But with the Cianna acquisition, Merit entered a new field: the medical device market. Merit acquired Cianna's FDA-cleared product lines, SCOUT and SAVI Brachy technologies that wirelessly map and treat breast cancer tumors. ¶5. Because these were new product lines outside the core business lines of Merit's existing sales force, Lampropoulos emphasized that retention of Cianna's entire "sales force in place for all intents and purposes" – located in California – was "critical" to "drive our business." ¶¶29, 35. On an October 25, 2018 earnings call, Lampropoulos noted his personal focus on interactions with Cianna's sales force as "almost everybody on [Cianna's] sales team sen[t] me a note and share[d] with me their excitement and [that] they're looking forward to being part of Merit." Kaplan Decl. ¶8 & Ex. D. When speaking to investors about the acquisition, Lampropoulos highlighted how he

came to Orange County to meet and speak with the sales force and other employees here. Four months later, Lampropoulos underscored that Merit "essentially had no turnover" with Cianna's sales team in this District, which Lampropoulos stated was "the most important factor" in a successful integration of the business. ¶30.

During the Class Period, Merit also completed the acquisition of certain product lines and related assets from several other companies. For example, in February 2018, Merit completed the acquisition of certain product lines and related assets from Becton, Dickinson and Company ("Becton"), a company based in New Jersey, for $100 million. ¶4. In December 2018, Merit acquired the ClariVein line of products from Vascular Insights, LLC ("Vascular Insights"), a company based in Massachusetts, for up to $60 million. *Id.*

The Class Period begins on February 26, 2019, when Merit issued a press release announcing its financial results for the fourth quarter and full year of 2018, and its guidance for 2019. ¶28. The press release reported significant increases in both revenues and earnings compared to the prior year period and emphasized that the integration of Cianna and the other newly acquired businesses were driving growth and corporate confidence in the Company's financial outlook for 2019 and 2020. *Id.* During a conference call for analysts and investors later that day, Lampropoulos specifically addressed Cianna's integration into the Company. Lampropoulos indicated he had spent a substantial amount of time in this District, in addition to meeting with Cianna's sales force here. He stated that because he had conducted his own "due diligence" and "did a lot of work on the operations, . . . manufacturing, [and] sales force" (Kaplan Decl. ¶9 & Ex. E), the integration of Cianna was "going as well as could be expected" (¶30). Lampropoulos added that, "[i]ntegration of these new businesses and sales of our core products continue to drive growth to the point where we are confident forecasting an expansion of our 2019 core revenue growth" and he was "very pleased with the transition." ¶¶28-29. Securities analysts credited these statements as reasons to buy Merit's stock. ¶¶31-32.

On April 23, 2019, Cianna reported financial results for the first quarter of 2019, with Lampropoulos declaring that "[t]he Cianna transition is complete and sales continue to grow according to our expectations." ¶33. During the Company's earnings call, Lampropoulos further represented that the Cianna integration was "through the transition period" and was even "performing slightly ahead of our expectations." ¶34. Lampropoulos promoted the strength of the Company's Cianna business, stating "I think as you look at the business, you will see that we are on the topside," and "the business is strong and the pipeline is full, and I would say, our business continues to be very robust." *Id.* Accordingly, Lampropoulos noted that Cianna was "probably a[s] good of a transaction and [acquisition] that we have done … I think it may be the best one. . . . I don't know how you could do it any better, to be honest with you." ¶35. On April 24, 2019, Barrington Research cited Lampropoulos' remarks as "an encouraging assessment given the fact that Merit has done dozens of transactions over its 30-plus year history." ¶36.

On July 25, 2019, the truth that the major, recent acquisitions were actually faring poorly began to be revealed when Merit preliminarily reported financials for the second quarter of 2019 and reduced its fiscal year earnings guidance. ¶38. Defendants attributed the reduction to a variety of factors, including "slower than anticipated conversion and uptake of acquired products." *Id.* In response, Merit's stock price plummeted by $13.84, a decline of 25%. ¶43. On October 30, 2019, Merit revealed the full truth when it reported earnings below consensus estimates, reduced its fiscal year 2019 guidance, and withdrew its fiscal year 2020 guidance. ¶46. In fact, Defendants disclosed significant operational issues and revealed that they were "9 or 10 months behind" in their integrations of Cianna and ClariVein. ¶48. In response, Merit's stock price fell an additional $8.45, a decline of 29%. ¶50.

On December 3, 2019, Bucks County filed this securities class action asserting claims under the Exchange Act. ECF No. 1. On February 3, 2020, five institutional investors filed motions in this Court seeking appointment as Lead Plaintiff, either

individually or as group.  ECF Nos. 25, 29, 33.  No securities actions were filed against Defendants in the District of Utah or in any other court.

On February 24, 2020, the Court appointed Lead Plaintiffs and approved their selection of the undersigned counsel as Co-Lead Counsel for the Class.  ECF No. 41. After the lead plaintiff process was completed, Defendants indicated an interest in transferring this action to the District of Utah.

## III.    ARGUMENT

A party seeking to upend a plaintiff's choice of forum through transfer bears a heavy burden.  As the Ninth Circuit has stated, "[t]he defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum." *Decker Coal Co.*, 805 F.2d at 843; *see also Catch Curve, Inc. v. Venali, Inc.*, 2006 WL 4568799, at *2 (C.D. Cal. Feb. 27, 2006) (moving party must "demonstrate that the present forum will result in a clear balance of inconvenience to him or her"). "[T]he movant must present strong grounds for transferring the action, otherwise, the plaintiff's choice of venue will not be disturbed." *Safarian v. Mesarati N. Am., Inc.*, 559 F. Supp. 2d 1068, 1071 (C.D. Cal. 2008) (Carter, J.).  The "strong showing" standard means Defendants bear a "heavy burden of proof."  *STX, Inc. v. Trik Stik, Inc.*, 708 F. Supp. 1551, 1555-56 (N.D. Cal. 1988) (defendant's incorporation in Florida, identification of witnesses and records in Florida, and allegations of court congestion were not "strong reasons for transfer"); *see also Safarian*, 559 F. Supp. 2d at 1071 ("transfer is not appropriate merely to shift the inconvenience from one party to another").

In determining whether the movant has carried its heavy burden, the court balances three factors: "(1) the convenience of the parties; (2) the convenience of the witnesses; and (3) whether transfer will serve the interests of justice." *Miyauchi Corp. v. Oswald*, 2012 WL 12952741, at *2 (C.D. Cal. Oct. 29, 2012) (Carter, J.) (citing 28 U.S.C. §1404(a)); *see Herman v. Andrus Transp. Servs., Inc.*, 2017 WL 8292463, at *2 (C.D. Cal. Feb. 15, 2017) (the court's "primary task" is to evaluate

whether "any proposed transfer would serve the convenience of parties and witnesses and otherwise promote the interests of justice"). In analyzing these factors "the court may consider traditional forum non conveniens factors such as the ease of access to the evidence and familiarity of each forum with the applicable law." *Miyauchi*, 2012 WL 12952741, at \*2; *see Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (listing nine factors the court has discretion to consider in undertaking an "individualized, case-by-case consideration of convenience and fairness").

### A. Party Convenience Does Not Weigh In Favor Of Transfer

#### 1. Lead Plaintiffs' Choice Of Forum Should Not Be Disturbed

"[U]nder Ninth Circuit law, a plaintiff's choice of forum is accorded substantial weight . . . and courts generally will not transfer an action unless the convenience and justice factors strongly favor venue elsewhere." *Amini Innovation Corp. v. JS Imps., Inc.*, 497 F. Supp. 2d 1093, 1110 (C.D. Cal. 2007); *see also DIRECTV, Inc. v. EQ Stuff, Inc.*, 207 F. Supp. 2d 1077, 1082 (C.D. Cal. 2002) ("There is a strong presumption in favor of the plaintiff's choice of forum."); *Florens Container v. Cho Yang Shipping*, 245 F. Supp. 2d 1086, 1092 (N.D. Cal. 2002) ("a plaintiff's choice of forum is accorded substantial weight").

This deference is heightened in cases brought under the Exchange Act, which, in contrast to the restrictive requirements of the general venue statute, provides plaintiffs with an unusually liberal choice of forum. Specifically, Section 27 of the Exchange Act, 15 U.S.C. §78aa(a), provides in pertinent part:

> Any suit or action to enforce any liability or duty created by this chapter or rules and regulations thereunder, or to enjoin any violation of such chapter or rules and regulations, may be brought in any such district [wherein any act or transaction constituting the violation occurred] or in the district wherein the defendant is found or is an inhabitant or transacts business, and process in such cases

may be served in any other district of which the defendant

is an inhabitant or wherever the defendant may be found.

15 U.S.C. §78aa(a).

In drafting the special venue provisions of the Exchange Act, Congress intended to give defrauded investors the widest possible choice of forums in which to sue. As the Ninth Circuit recognizes, "[w]ithout question, the intent of the venue and jurisdiction provisions of the securities laws is to grant potential plaintiffs liberal choice in their selection of a forum and unless the balance of factors is strongly in favor of the defendants, ***the plaintiff's choice of forum should rarely be disturbed***." *Vigman*, 764 F.2d at 1317; *see also Gen. Ret. Sys. of City of Detroit v. Wells Fargo Mortg. Backed Sec. 2006-AR18 Tr.*, 2009 WL 2137094, at *5 (N.D. Cal. July 16, 2009) (affording "considerable deference . . . to plaintiffs' choice of forum" in light of the special venue provisions of the federal securities laws); *S.E.C. v. Rose Fund, LLC*, 2004 WL 2445242, at *2 (N.D. Cal. Jan. 9, 2004) ("The general rule [that plaintiff's forum choice is afforded substantial weight] applies even more so … where Congress has enacted a special venue provision for actions under the federal securities laws.").

Moreover, the deference afforded plaintiff's choice of forum will apply so long as plaintiff has selected the forum for some legitimate reason. *See Wells Fargo*, 2009 WL 2137094, at *5 (plaintiffs' choice of forum given "considerable deference" where events giving rise to the claim occurred in the district, stating "[t]hat substantial relevant activity occurred elsewhere does not obviate this deference"). More specifically, "the plaintiff's choice [of forum] is generally accorded more deference where there is a material connection or significant contact between the forum state and the . . . events allegedly underlying the claim." *Aspen Ins. UK Ltd. v. Brown & Brown, Inc.*, 2011 WL 13217776, at *6 (C.D. Cal. May 2, 2011).

Here, there is a strong connection between California and Lead Plaintiffs' securities fraud claims. Defendants' misstatements concern in significant part the

acquisition, integration, expenses, sales pipeline, and performance of the Cianna business based in Aliso Viejo, California.[3]   Defendants continue to conduct substantial business out of the Aliso Viejo facility, which, as noted, is in this District, less than 20 miles from this Courthouse.  The Complaint amply alleges how investors and securities analysts were focused on the transformative Cianna acquisition – the largest acquisition in the Company's history – and its integration into the Company.  ¶¶4, 29-32, 35-38, 43, 46-50.

Defendants' Motion fails to address the implications of the special venue provision for Lead Plaintiffs' Exchange Act claims.  Defendants also severely downplay the material connections between this District and the events underlying the claims.  Instead, their Motion attempts to argue that Lead Plaintiffs' choice of forum is entitled to "little weight" because this is a class action being litigated in a representative capacity, and no Lead Plaintiff resides in this district.  *See* Mot. at 9-10.  Defendants are wrong.

As an initial matter, where, as here, "venue is governed by a more permissive standard, a plaintiff's choice is entitled to greater deference as a matter of law, even where that case is brought as a class action."  *Ellis v. Costco Wholesale Corp.*, 372 F. Supp. 2d 530, 537 (N.D. Cal. 2005) (favorably comparing the more permissive venue standard of the federal securities laws with the liberal venue standard of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e), *et seq*.); *Wells Fargo*, 2009 WL 2137094, at *4-5 (giving significant "deference" to plaintiff's choice of forum in a securities class action given the liberal provisions of the federal securities laws).  Indeed, recognizing the propriety and convenience of this forum, *five* movants filed motions seeking Lead Plaintiff status in this action, and *no* plaintiff filed suit in Utah.

---

[3] Although Defendants' misstatements also concern other acquisitions by Merit (*i.e.*, Vascular Insights and Becton), there are nearly *twice* as many references to the Cianna acquisition compared to the Vascular Insights acquisition, and *four times* as many references to the Cianna acquisition than the Becton acquisition.  *Compare* ¶¶28-30, 33-35 (referencing Cianna), *with* ¶¶28-30, 33, 38-39 (referencing Vascular Insights and Becton).  Moreover, *none* of the acquired companies are located in Utah.

Moreover, Co-Lead Counsel for the Class have offices in this District, in Los Angeles, and 72 miles to the south, in north San Diego County, but not in the District of Utah. *See Safarian*, 559 F. Supp. 2d at 1071 (giving plaintiff's choice of forum "substantial deference" as "it appears that Plaintiff brought this case to the Southern Division [of the Central District] because counsel's offices are here"). Transfer would require Lead Plaintiffs to retain local counsel in Utah, adding unnecessary costs and expenses to the Class, which will be avoided if the action remains here. *See Elite Apparel, LLC v. Dallas Cowboys*, 2013 WL 12116606, at *3 (S.D. Cal. Nov. 5, 2013) (rejecting transfer as defendant did "not sufficiently address the difference in costs" when plaintiff argued its need to hire local counsel would increase costs); *LRN Corp. v. RGA Reinsurance Co.*, 2015 WL 13285086, at *3 (C.D. Cal. Jan. 20, 2015) (rejecting transfer as plaintiffs "would likely incur additional costs in hiring local counsel and litigating far from its main offices").

## 2. Defendants' Assertions Of Inconvenience Are Incorrect And Weigh Against Transfer

Defendants seek to upend Lead Plaintiffs' choice of forum by contending that Merit is headquartered in Utah and this Court is not a convenient forum for Defendants. Defendants' assertions are factually misleading, legally insufficient, and should be rejected.

First, Defendants do not make any actual showing whatsoever of any inconvenience to them by maintaining the action in this District. *See Rumble, Inc. v. Daily Mail and Gen. Tr. PLC*, 2018 WL 5099708, at *3 (C.D. Cal. Jan. 9, 2018) (party seeking transfer "must demonstrate through affidavits or declarations containing admissible evidence, who the key witnesses will be and what their testimony will generally include," and "describe in concrete terms how those parties would be inconvenienced by litigating in the forum"). The most Defendants assert – without any factual support – is that they and other senior Merit executives are witnesses and "[b]ecause all the potential witnesses in this matter reside in the

District of Utah and will be inconvenienced if the matter remains in Central District of California, this factor also weighs heavily in favor of transfer." Mot. at 8. As discussed further below, it is manifestly false that "all the potential witnesses in this matter reside in the District of Utah." *Id.* Indeed, well over a dozen pertinent witnesses reside in this District. As for Defendants themselves, to the extent Defendants may be required to travel to this Court for trial, if any, such travel would hardly inconvenience Defendants. The flight from Merit's headquarters on the outskirts of Salt Lake City to this District is only about an hour and forty-five minutes. *See Flotsam of Cal., Inc. v. Huntington Beach Conference & Visitors Bureau*, 2007 WL 1152682, at *2 (N.D. Cal. Apr. 18, 2007) (a "few hours of air travel" "does not constitute the type of inconvenience that would warrant disturbing the plaintiff's choice of forum"); *Wells Fargo*, 2009 WL 2137094, at *6 ("[A] forum is not necessarily inconvenient because of its distance from pertinent parties or places if it is readily accessible in a few hours of air travel."). Moreover, Defendant Lampropoulos owns a home in Newport Beach, 12 miles by car from this Courthouse, and has specifically noted his extensive travel to California to manage the Cianna acquisition and integration. Kaplan Decl. ¶¶4, 9, 10 & Exs. A, E, F. Lampropoulos has also described how other Merit executives frequently travel to California, including "weekly" commutes to Orange County by the executive in charge of the Cianna acquisition. Mot. at 8.

Nor will travel to California pose a significant financial burden on Defendants. Lead Plaintiffs will agree to depose Merit's witnesses where they are located, removing any potential inconvenience. *NFF Inventions LLC v. CTI Food Acquisition LLC*, 2012 WL 12887830, at *1 (C.D. Cal. July 3, 2012) (transfer denied as plaintiff "has displayed a willingness to work with CTI to schedule interviews and depositions in [the proposed transferor district in] Texas" and "Defendants' witnesses will be deposed near their work locations").

Second, the convenience to Defendants of litigating in this forum is

underscored by their deep connections to this District. Defendants' claim that they have only "two small connections" with this District (Mot. at 4) is false. In truth, they maintain substantial operations and conduct regular business here. *See Lloyd's Material Supply Co., Inc. v. Regal Beloit Corp.*, 2017 WL 5172206, at *2 (C.D. Cal. June 27, 2017) (denying transfer because defendant "allegedly conducts business in California and therefore has sufficient contacts in the forum such that it would not be inconvenienced by litigation here"). Merit acquired Cianna for the specific purpose of expanding in the lucrative medical device market, and Merit continues to list Cianna's former Aliso Viejo offices on the Company website as Merit's only sales office ***in the entire United States***. *See* www.merit.com/careers/merit-facilities. This was such an important acquisition to Merit that Lampropoulos traveled extensively to Cianna's Aliso Viejo headquarters to manage the deal, and continued to travel here regularly in overseeing the integration of the Cianna business into the Company.[4]

Merit's operations and contacts in California are not limited to Cianna. Before the Cianna acquisition, Merit acquired DFINE in July 2016, a company based in San Jose, California. Kaplan Decl. ¶11 & Ex. G; *Oswald*, 2012 WL 12952741, at *5 (denying transfer as "Defendants previously did substantial business in California"). After the Cianna acquisition, in June 2019, Merit acquired another California-based company, Brightwater, located in Temecula less than 65 miles from this Courthouse. Kaplan Decl. ¶12 & Ex. H. Additionally, for years, Defendants have frequently participated in industry conferences in California to promote the Company to investors, securities analysts, and industry participants.[5] This set of facts clearly

[4] For example, on a conference call announcing the Cianna deal on October 1, 2018, Lampropoulos stated he was going "into Orange County and meet[ing] with the employees" of Cianna. Kaplan Decl. ¶7 & Ex. C. Further, during the Company's earnings call on February 26, 2019, Lampropoulos represented that he was in Southern California "2 or 3 times" to review the progress of the integration of Cianna. Similarly, during the Company's earnings call on April 23, 2019, Lampropoulos reiterated that he had to visit Cianna's headquarters in this District "several times" and was "going to head down there again soon." Kaplan Decl. ¶10 & Ex. F.

[5] For example, Lampropoulos and other Merit executives traveled to and participated in the American Society of Surgeons Conference in San Francisco on October 28,

gives Merit "continuing and systematic contacts with the forum" such that transfer is disfavored. *See Goodwin v. Citywide Home Loans, Inc.*, 2014 WL 5327191, at *3 (C.D. Cal. Oct. 17, 2014) (denying transfer where company had "permanent offices in the Central District").

Third, Defendants' venue preference is entitled to little weight because Merit is a global company that has grown via acquisitions throughout the United States and internationally, with manufacturing, sales, and R&D facilities in California, New Jersey, Massachusetts, Pennsylvania, Texas, Turkey, Utah, and Virginia, as well as Australia, Brazil, Canada, China, England, France, Hong Kong, India, Ireland, Japan, Malaysia, Mexico (Tijuana), The Netherlands, Russia, Singapore, South Africa, South Korea, Turkey, and the UAE. *See* www.merit.com/careers/merit-facilities. As courts regularly hold:

> Unless the defendant is truly regional in character—that is, it operates essentially exclusively in a region that does not include [the potential transferor forum]—transfer is almost always inappropriate. When transfer is sought by a defendant with operations on a national or international scale, that defendant must prove that litigating in [the transferor forum] would pose a unique or unusual burden on [its] operations.

*Intellectual Ventures I LLC v. Checkpoint Software Tech. Ltd.*, 797 F. Supp. 2d 472, 477 (D. Del. 2011); *accord Anschutz Co. v. Deutsche Bank Sec., Inc.*, 2010 WL 1464375, at *5 (N.D. Cal. Apr. 13, 2010) (the "minimal added convenience" of litigating in the district where defendant's headquarters is located "is mitigated by the fact that defendant has offices distributed throughout the country"); *LG Elecs.,*

2019, the J.P. Morgan Health Care Conference in San Francisco on January 12, 2017, and the Needham Med Tech 1x1 Conference in San Francisco on November 10, 2016.  Kaplan Decl. ¶6.

*Inc. v. Eastman Kodak Co.*, 2009 WL 10726528, at *3, 5 (S.D. Cal. May 26, 2009) (denying transfer where the defendant "operate[d] and conduct[ed] business on a national and international scale").

Fourth, Defendants have failed to present the type of evidentiary basis required to show inconvenience. *See Signalisation Ver-Mac, Inc. v. Addco Mfg., Inc.*, 2006 WL 6247892, at *5-6 (D. Or. Feb. 21, 2006) ("Absent a clear and convincing showing that the balance of convenience strongly favors an alternate forum, discretionary transfers are not favored."). Defendants proffer only the speculative and conclusory Frost Declaration, which postulates that nine current senior executives based in Utah and Chicago are expected to be defense witnesses, while omitting the numerous witnesses located in this District and providing no actual evidence of inconvenience to *anyone* of litigating in this District. Having failed to do so, Defendants' Motion should be denied on this basis alone.[6] Indeed, as discussed in greater detail below, there are *dozens* of current *and* former employees of Cianna and Merit who reside in California and are expected to have information that is highly relevant to Lead Plaintiffs' claims.[7]

Fifth, litigating this matter in this District would be entirely fair to Defendants based on Merit's extensive business dealings in this District and history of voluntarily litigating here. Merit developed a major new source of business and revenues by acquiring Cianna, in what remains the largest acquisition in the Company's history. In addition, Defendants further expanded Merit's presence in California by acquiring

[6] To the extent that Defendants attempt to supplement the record in connection with their reply brief, the Court should reject any such belated effort. *See In re Glob. Cash Access Holdings, Inc. Sec. Litig.*, 2008 WL 4344531, at *4 (S.D.N.Y. Sept. 18, 2008) ("Nor will this Court consider the witness list and descriptions set forth for the first time in the defendants' reply brief.")

[7] Moreover, with regard to *current* employees, Defendants merely speculate that they do not "expect" that the "majority" of the nineteen individuals currently employed at the Aliso Viejo facility will be "critical" witnesses. Frost Decl. ¶8. This limited assertion fails to address whether any of the "majority" or "minority" of employees currently at the Aliso Viejo facility have *relevant* knowledge, including information that may support *Lead Plaintiffs'* claims (*i.e.*, even if not "critical" from Defendants' viewpoint). As explained further below, numerous witnesses in this District have such knowledge.

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE NO. 8:19-CV-2326-DOC-ADS

DFINE in 2016 and Brightwater in June 2019. Kaplan Decl. ¶¶11-12 & Exs. G, H. Defendants have also commenced and participated in multiple court proceedings in California, including a patent infringement lawsuit against a Chinese corporation that Merit chose to file in the Central District of California rather than other available venues. *See Merit Med. Sys. v. SCT Medicath*, No. 06-cv-00536-CJC-AN, Memorandum Of Points And Authorities In Support Of Merit's Motion For A Preliminary Injunction at 6-7 (C.D. Cal. Jun. 16, 2006) (other available venues included New York). Merit also defended a trademark infringement lawsuit in this District without objecting to venue. *See Merit Healthcare Int'l, Inc. v. Merit Med. Sys., Inc.*, No.14-cv-04280-FMO-SH (C.D. Cal.). Courts deny transfer given such litigation history. *See Rumble*, 2018 WL 5099708, at *3 (denying transfer as defendants had previously been "sued in the Central District" and did not object to venue).

Further belying any claimed inconvenience here, Defendants' litigation counsel, King & Spalding LLP ("King & Spalding"), has **three** offices in California – including a large office in this District. Indeed, King & Spalding's website notes that the firm's Los Angeles office has a "deep and diverse bench of over 50 attorneys." *See* https://www.kslaw.com/offices/los-angeles. In contrast, King & Spalding, like Co-Lead Counsel, has no offices in Utah. *See* www.kslaw.com/offices. Thus, transfer of this action to Utah would likely require counsel for all parties to travel there for court appearances, resulting in unnecessary expense and inconvenience for all involved.

Sixth, Defendants contend that they made statements in Utah, and that makes Utah a more convenient forum for them. However, as explained above, many of the operative facts underlying Defendants' misstatements – including facts critical to establishing the falsity of the statements and Defendants' fraudulent intent – occurred in California, predominantly in this District. Critical discovery in this case will focus on Cianna's operations in California, Merit's pre-merger diligence in this District,

and Cianna's post-acquisition performance in this District. *See DeFazio v. Hollister Emp. Share Ownership Tr.*, 406 F. Supp. 2d 1085, 1089 (E.D. Cal. 2005) (denying transfer when facts underlying plaintiff's claim occurred in present forum); *Wells Fargo*, 2009 WL 2137094, at *5-7 (transfer denied where events giving rise to plaintiffs' claim occurred in the forum).

For precisely such reasons, in cases such as this, the location of Company headquarters carries less weight, and courts routinely ***deny*** transfer to the company's "home district." *See, e.g.*, *Anschutz Corp*, 2010 WL 1464375, at *5 (litigating in the same district as an issuer's headquarters is only a "minimal added convenience," which is "mitigated" where "defendant has offices distributed throughout the country"); *Rafton v. Rydex Series Funds*, 2010 WL 2629579, at *3 (N.D. Cal. June 29, 2010) (denying transfer as defendants chose "to market and sell shares . . . nationwide" and "Plaintiff's reliance" on defendants' false statements was outside of defendants' state of headquarters); *see also Purdessy v. Bojangles', Inc.*, 2019 WL 2461805, at *1 (S.D.N.Y. May 24, 2019) (refusing to "adopt a rule that would tend to make the defendant's headquarters the presumptive venue for securities class actions").[8]

### 3.    The Location Of Documents Is No Grounds For Transfer

The location of discoverable documents provides no reason to transfer this action. Many courts have recognized that while this factor might have been significant years ago, producing documents from one forum into another is now nearly effortless given the advent of electronic databases and communication technology. *See, e.g.*, *LRN*, 2015 WL 13285086, at *4 (noting that the age of modern

---

[8] Moreover, in truth, Defendants' misstatements occurred in several locations, including Massachusetts where they touted the benefits of the Cianna transaction. ¶45 (referencing Wells Fargo conference); Kaplan Decl. ¶13 & Ex. I (Wells Fargo conference occurred in Boston, Massachusetts). In addition, the false statements included in Merit's SEC filings are filed in Washington D.C. and are published there by the SEC. *See In re Geopharma, Inc.*, 2005 WL 1123883, at *2 (S.D.N.Y. May 11, 2005) (denying transfer where defendants' statements were "spread across many districts").

imaging and copying methods "often renders documents' physical locations unimportant"); *Kondo*, 2015 WL 7710301, at *5 (recognizing that in the Ninth Circuit the location of documents and witnesses is "no longer weighed heavily given the modern advances in communication and transportation").

Here, Defendants have failed to meet their heavy burden to proffer "competent evidence as to the quality or quantum of evidence located in [Utah] that would justify a transfer there." *Forte Cap. Partners v. Harris Cramers*, 2007 WL 1430052, at *7 (N.D. Cal. May 14, 2007).  Indeed, the Frost Declaration merely states that Merit "expects" that the relevant documents may be "stored either in hard copy *or* electronically in Utah."  Frost Decl. ¶11.  There is no quantification of relevant documents in hard copy as opposed to electronic form, nor any mention of the ease with which any hard copy documents can be scanned, nor – more importantly – any discussion of how easily electronic documents (surely the most substantial of the documents to be produced) can be almost instantaneously transferred to Lead Counsel in this District over the Internet.  Defendants do not and cannot assert that the records are unavailable in this District; and fail to explain how producing the documents in this District would be at all inconvenient, let alone so inconvenient as to justify transfer.  *See Cal. Writer's Club v. Sonders*, 2011 WL 4595020, at *15 (N.D. Cal. Oct. 3, 2011) ("general allegations that transfer is needed for the ease of obtaining records and books are not enough," as they "fail[] to explain … how [defendant] might suffer any hardship by having to move the[] documents").

In sum, at the convenience of the parties supports denying the transfer motion and allowing this action to be maintained in this District.  And, in any case, Defendants' attempt to move this litigation to a jurisdiction where they would prefer to defend themselves and shift their perceived inconveniences onto Lead Plaintiffs and the Class "is not a proper basis for transfer." *Eliminator Custom Boats v. Am. Marine Holdings, LLC*, 2006 WL 4941830, at *15 (C.D. Cal. Aug. 31, 2006).

**B.    Witness Convenience Weighs Against Transfer**

**1.    Numerous Material Witnesses Reside In This District And Elsewhere In California**

The convenience of the witnesses weighs against transfer. It is indisputable that numerous highly relevant fact witnesses, who are current and former employees of Cianna and Merit, reside in this District. Transfer of this case would not only inconvenience the many relevant witnesses located here, but also risk prejudicing Lead Plaintiffs' ability to prosecute the case through the presentation of testimony of such witnesses. Should this case be transferred to the District of Utah, Lead Plaintiffs would risk losing the live testimony at trial of these important non-party witnesses as they would be beyond the District of Utah's subpoena powers. *See Dexcom, Inc. v. AgaMatrix, Inc.*, 2017 WL 3433543, at *10 (C.D. Cal. Feb. 3, 2017) (denying transfer to Oregon where plaintiff "has introduced evidence demonstrating that significant evidence and witnesses are located in the State of California").

The relevance of ***non-party*** testimony is clearly the most important witness convenience consideration. *See Oswald*, 2012 WL 12952741, at *4 (non-party witnesses are the "more important" factor; denying transfer to Nevada where "non-party witness testimony" of witnesses residing in the Central District "weighs in favor of denying the transfer"); *Catch Curve*, 2006 WL 4568799, at *3 (denying transfer to Florida as the convenience of "key non-party witnesses" who reside in the Central District is a "more important factor than the convenience of party witnesses"); *CES Grp., LLC v. DMG Corp.*, 2015 WL 457405, at *3 (N.D. Cal. Feb. 3, 2015) ("transfer would not be significantly more convenient for certain party witnesses and would in fact inconvenience key non-party witnesses").

The importance of non-party testimony from residents in this District cannot seriously be questioned in this case. Defendants' misstatements at issue concern in significant part the acquisition, integration, and performance of the Cianna business—the ***majority*** of whose employees are no longer with the Company.

Kaplan Decl. ¶¶5, 7; Frost Decl. ¶8. Many of those employees experienced firsthand the issues that plagued the business – including high expenses, weak sales pipeline, and deficient integration – which Defendants concealed and ultimately led to steep investor losses. As such, these non-party witnesses are likely to have relevant information concerning the core elements of Plaintiffs' claims, including the falsity of Defendants' misstatements, and Defendants' knowledge or reckless disregard thereof.

Lead Plaintiffs have, through investigation of publicly available materials, discovered that many such pertinent non-party witnesses reside in California – and in this District specifically.[9] At the time of the acquisition, Cianna had approximately 80 employees. Kaplan Decl. ¶7 & Ex. C. Forty-seven former Cianna employees (including half of the employees who worked at the Aliso Viejo facility at the time of the Cianna acquisition) no longer work for Merit, but continue to reside in this District or elsewhere in California. *Id.* ¶5; *see* Frost Decl. ¶8. Many of these former Cianna employees, as well as former Merit employees based in California, have relevant information concerning the claims asserted in this lawsuit, including the following former management-level personnel:

| Name | Residence | Company | Title | Description of Testimony |
|------|-----------|---------|-------|--------------------------|
| Gordon H. Busenbark | Irvine, California | Cianna | Former Chief Financial Officer (January 2014 – December 2018) | Information about pre-acquisition operations, expenses, and projections of Cianna, as well its integration into Merit. |
| Diana Smith | Mission Viejo, California | Cianna | Director of Human Resources (2017 -2018) | Information about Cianna's personnel, lines of reporting, and interactions with senior executives pre- and post-acquisition. |

[9] Lead Plaintiffs' ability to determine precisely how many pertinent witnesses reside in this District, and how many such witnesses should be deposed or appear at trial, is limited given that this case is in its earliest stages and discovery has not yet commenced. In addition, during the meet-and-confer process related to the instant transfer motion, Lead Plaintiffs requested limited discovery concerning the factual basis for Defendants' intended motion. Defendant did not agree to the request.

| Name | Residence | Company | Title | Description of Testimony |
|---|---|---|---|---|
| Tamara McArthur | Orange, California | Cianna | Former Senior Accountant (2018 – 2019) | Information about pre-acquisition operations, expenses, and projections of Cianna, as well its integration into Merit. |
| Brian C. Aukshunas | Irvine, California | Cianna | Former Controller (November 2014 – September 2019) | Information about pre-acquisition operations, expenses, and projections of Cianna, as well its integration into Merit. |
| Mike Numamoto | Irvine, California | Merit | Former Vice President of Marketing (October 2018 – August 2019) | Information about how the Cianna acquisition and other acquisitions fit into Merit's overall marketing strategy, as well as information on sales, pipeline, and performance issues. |
| Linda Lechner | San Jose, California | Merit | Former Vice President Business Continuity | Information about how the Cianna acquisition and other acquisitions fit into Merit's overall marketing strategy, as well as information on sales, pipeline, and performance issues. |
| Erik Purcell | Sacramento, California | Merit | Former Regional Director (2016 – 2019) | Information about how the Cianna acquisition and other acquisitions fit into Merit's overall marketing strategy, as well as information on sales, pipeline, and performance issues. |
| Danny Lira | San Jose, California | Merit | Former Territory Sales Manager (2018-2019) | Information about how the Cianna acquisition and other acquisitions fit into Merit's overall marketing strategy, as well as information on sales, pipeline, and performance issues. |

Kaplan Decl. ¶5.   There are also numerous non-party witnesses whose residency outside of California and Utah does not favor transfer.  As Defendants concede (Mot. at 5), this case also regards Merit's acquisitions concerning Vascular Insights and

Becton Dickinson – companies headquartered in Massachusetts and New Jersey, respectively.  Defendants do not and cannot show that the location of those non-parties favors transfer to the District of Utah.

Finally, there are at least 14 party witnesses with relevant knowledge located in California, including in this District.  Kaplan Decl. ¶5.  Indeed, in Merit's October 1, 2018 press release announcing the acquisition of Cianna, Defendants announced their plan (later abandoned) "to keep substantially all" of Cianna's commercial, sales, and R&D teams *in place* in order to "maintain the momentum" of the business after the acquisition.  Kaplan Decl. ¶14 & Ex. J.

### 2. Defendants' Contentions Regarding The Convenience Of Witnesses Fail

Defendants' contentions regarding the convenience of witnesses miss the mark.  Although the convenience of non-party witnesses is a "more important" consideration than the convenience of party witnesses (*Oswald*, 2012 WL 12952741, at *4), Defendants' Motion offers no genuine analysis of the convenience of non-party witnesses – merely making the conclusory assertion that "***not all***" non-party witnesses are located in this District. Mot. at 8.  To be sure, Defendants do not dispute that former Cianna employees have relevant knowledge; Defendants do not contest that more Cianna employees are located in this District than any other district; and, critically, Defendants do not make any argument that these or any other non-party witnesses would be inconvenienced by maintaining the action here as opposed to the District of Utah.  Indeed, Merit concedes that it does not know where many non-party fact witnesses reside, and cannot dispute that the majority of former Cianna employees at the Aliso Viejo facility reside in this District.  Frost Decl. ¶8.

As for party witness convenience, Defendants' assertions are limited and unsubstantiated.  Defendants merely submit a declaration by a Merit executive who states that a certain subset of current Merit employees reside in this District but, in

Merit's view, they are not "***critical*** witnesses."[10]  Defendants identify a handful of Merit senior executives who they would prefer to have as witnesses.  Frost Decl. ¶10. Lead Plaintiffs strongly disagree that Defendants' hand-picked witness list bears any resemblance to discovery's necessary scope in this case or the expected score of trial witnesses, or provides any basis for transfer.  Indeed, Merit's identification of these individuals cannot favor transfer, as Merit could easily allow these executives to make the short flight to California and compel them to testify as part of their duties as employees.  *Amini*, 497 F. Supp. 2d at 1111 ("The court accords less weight to the inconvenience of *party* witnesses, however, as they can be compelled to testify regardless of the forum in which the lawsuit is ultimately litigated.") (emphasis in original).  Moreover, as noted above, if the case is maintained in this District, Lead Plaintiffs will agree to depose Merit's witnesses where they are located.

### C.  Transfer Is Not In The Public Interest

The public interest factors also favor allowing this action to proceed in this District, and certainly do not assist Defendants in meeting their heavy burden of establishing a need to transfer this case.

The public interest factors governing a transfer motion include the relative efficiency and practicality of one forum over another.  *See Fed. Deposit Ins. Corp. for BankUnited, FSB v. First Priority Fin., Inc.*, 2015 WL 13357439, at *8 (C.D. Cal. Nov. 10, 2015) ("interest[s] of justice include … ensuring speedy trials … and having a judge … familiar with the applicable law").  In considering judicial economy, courts "seek to avoid duplicative litigation and to prevent waste of time and money."  *Catch Curve*, 2006 WL 4568799, at *3.

Defendants fail to demonstrate that this action would be less efficient or more

_____

[10] Frost Decl. ¶8.  Defendants' Motion makes the blanket, clearly incorrect assertion that "all the potential witnesses in this matter reside in the District of Utah."  Mot. at 8.  Such an unsubstantiated assertion is the opposite of the "strong showing required to upset plaintiff's chosen forum."  *Abundancia, LLC V. R.D.T. Bus. Enters., Inc.*, 2015 WL 3533213, at *4 (C.D. Cal. June 3, 2015); *see Rumble*, 2018 WL 5099708, at *3.  Indeed, Defendants list a Chicago resident as a relevant witness, expressly contradicting the hyperbole.  Frost Decl. ¶10.

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE NO. 8:19-CV-2326-DOC-ADS

expensive in this District than in the District of Utah. *See Celestial Mechanix, Inc. v. Susquehanna Radio Corp.*, 2005 WL 4715213, at *4-5 (C.D. Cal. Apr. 28, 2005) (denying transfer as defendants made no accurate assessment of "court congestion" in the Central District of California compared to the proposed transfer forum). In fact, trial in this District is likely to be speedier according to recent statistics showing that the median time from filing to disposition of civil cases through trial is considerably shorter in this District (21.4 months) than in the District of Utah (37.3 months). Kaplan Decl. ¶15 & Ex. K. Defendants may prefer transfer to a venue where their liability could be adjudicated at a reduced pace, but that is no basis for transfer. *See LRN*, 2015 WL 13285086, at *2 ("[Defendant] focuses on the gross number of cases in each district, but, as the Ninth Circuit observed, [t]he real issue is not . . . a court's congestion but whether a trial may be speedier in another court because of its less crowded docket"). Defendants' cases are inapt.[11]

Transfer of this case would also increase attorneys' fees and expenses for the Class (and for Defendants or their insurers). All litigation counsel are located near this Courthouse, not in Utah. Transfer to Utah would result in increased travel costs, including flights and accommodation, for both sides. *See LRN*, 2015 WL 13285086, at *3 (denying transfer where plaintiffs "would likely incur additional costs in hiring local counsel and litigating far away from its main offices"). These costs may not

___

[11] Unlike in *In re AtheroGenics Sec. Litig.*, 2006 WL 851708, at *4 (S.D.N.Y. Mar. 31, 2006), where four other securities class action complaints were filed in the district that the company was based in, there is no similar securities class action against Defendants in the District of Utah. In *Allstar Mktg, Grp., LLC v. Your Store Online, LLC*, 666 F. Supp. 2d 1109 (C.D. Cal. 2009), the court denied transfer as the parties did not present "evidence regarding the relative congestion of court dockets here and in the Eastern District Wisconsin." *Id.* at 1134. Here, Lead Plaintiffs have demonstrated that the median time interval from filing to disposition of a civil case is shorter in this District than in the District of Utah. *See LRN*, 2015 WL 13285086, at *2 (transfer denied where median time from filing to disposition was shorter in the Central District compared to defendant's forum choice). In *Davis v. Social Serv. Coordinators, Inc.*, 2013 WL 4483067, at *3 (E.D. Cal. Aug. 19, 2013), transfer was granted primarily because the parties failed "to specifically identify any third party witnesses they may seek to depose or call at trial, the nature of the witnesses' testimony, and the materiality of that testimony to the issues in the case." Here, in contrast, Lead Plaintiffs have identified third-party witnesses and articulated the nature and materiality of those witnesses' testimony.

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE NO. 8:19-CV-2326-DOC-ADS

matter to Merit, which likely has D&O insurance policies to cover such costs and, as a corporation, is in any event "better-equipped … to absorb increased litigation costs" – but they matter to the Class and weigh against transfer. *In re Ferrero Litig.*, 768 F. Supp. 2d 1074, 1081 (S.D. Cal. 2011).

Finally, while the District of Utah and this District are equally capable of applying the federal securities laws, courts in this District, including this Court, are among the most experienced courts in the country at handling securities cases. *See* Kaplan Decl. ¶16 & Ex. L (showing that from 2010 to 2020, many more securities cases were filed in this District than in the District of Utah); *see also, e.g.*, *In re Allergan, Inc. Proxy Violation Sec. Litig.*, No. 8:14-cv-02004-DOC-KESx (C.D. Cal.) (securities class action arising from coordinated insider selling by one of the world's largest hedge funds and pharmaceutical companies relating to contemplated takeover attempt of second multinational pharmaceutical company; settled for $250 million) (Carter, J.).

## IV.    CONCLUSION

In sum, Merit has not met its heavy burden of showing that transfer is warranted. Lead Plaintiffs respectfully request that the Court deny Defendants' Motion.

Dated: April 13, 2020                    Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ David R. Kaplan*
David R Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Brandon Marsh (SBN 268316)
bmarsh@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER CASE NO. 8:19-CV-2326-DOC-ADS

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Class*

## CERTIFICATE PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULE 5-4.3.4(A)(2)(1)

I, David R. Kaplan, am the ECF User whose ID and password are being used to file the foregoing document.  In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby attest that Jonathan D. Uslaner concurs in this filing's content and has authorized the filing.

Dated: April 13, 2020

*/s/ David R. Kaplan*
David R. Kaplan

LEAD PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
CASE NO. 8:19-CV-2326-DOC-ADS

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I HEREBY CERTIFY that, on April 13, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 13, 2020.

*/s/ David R. Kaplan*
David R. Kaplan

LEAD PLAINTIFFS' OPPOSITION TO
DEFENDANTS' MOTION TO TRANSFER
CASE NO. 8:19-CV-2326-DOC-ADS