PAUL R. BESSETTE (Bar No. 139675)
  *pbessette@kslaw.com*
MICHAEL J. BILES (Bar No. 186600)
  *mbiles@kslaw.com*
JOSEPH N. AKROTIRIANAKIS (Bar No. 197971)
  *jakro@kslaw.com*
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Telephone:   (213) 443-4355
Facsimile:   (213) 443-4310

Attorneys for Defendants

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| BUCKS COUNTY EMPLOYEES RETIREMENT FUND, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MERIT MEDICAL SYSTEMS, INC., FRED P. LAMPROPOULOS, and RAUL PARRA,<br><br>Defendants. | Case No. 8:19-cv-02326-DOC-ADS<br><br>**DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>Date:       May 11, 2020<br>Time:      8:30 a.m.<br>Place:     Courtroom 9D<br>Judge:    Hon. David O. Carter |

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

# TABLE OF CONTENTS

Introduction..................................................................................................................1

Argument .....................................................................................................................2

I.    Plaintiffs' choice of forum is not entitled to substantial deference because this is a class action and the operative facts all occurred in Utah. ................................2

II.    The District of Utah is a more convenient forum for the parties...........................4

III.    The witnesses will be inconvenienced in this forum............................................7

IV.    The remaining factors are neutral or weigh in favor of transfer...........................9

Conclusion ...................................................................................................................9

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*City of N. Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*,
No. SAV 19-06468 AG, 2019 WL 7900030 (C.D. Cal. Nov. 19, 2019)..................3

*Disi v. Merit Medical Sys., Inc.*,
No. BC707011 (Sup. Ct. Cal.).......................................................................7

*Ezieme v. Ward Int'l Trading, Inc.*,
No. CV 08-6748 PSG JWJX2009 WL 2818394 (C.D. Cal. Aug. 31, 2009) ...............................................................................................................8

*Gerin v. Aegon USA, Inc.*,
No. C06-5407 SBA, 2007 WL 1033472 (N.D. Cal. Apr. 4, 2007)...........................4

*In re Horseshoe Entm't*,
337 F.3d 429 (5th Cir. 2003) .........................................................................4

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .........................................................................1

*Lou v. Belzberg*,
834 F.2d 730 (9th Cir. 1987) .........................................................................2

*Merit Med. Sys. v. SCT Medicath*,
No. 06-cv-00536-CJC-AN (C.D. Cal. Jun. 6, 2006) ..................................7

*Merit Pharms. v. Merit Med. Sys.*,
No. 2:14-cv-04280 (C.D. Cal. 2014)..........................................................7

*Pralinsky v. Mut. of Omaha Ins.*,
No. C08-03194MHP, 2008 WL 4532563 (N.D. Cal. Oct. 9, 2008) ......................4

*In re Yahoo! Inc.*,
No. CV07-3125CAS(FMOX), 2008 WL 707405 (C.D. Cal. Mar. 10, 2008) ......................................................................................2, 3, 5, 7

**Statutes**

28 U.S.C. § 1404(a) ................................................................................................*passim*

15 U.S.C. § 78aa ...............................................................................................................2

**Other Authorities**

Fed. R. Civ. P. 45 ...............................................................................................................8

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

**INTRODUCTION**

A court may transfer any civil action to any other district where the case might have been brought if the transfer serves "the convenience of parties and witnesses" and it is in the interests of justice. 28 U.S.C. § 1404(a). This case could have and should have been brought in the District of Utah, as Merit is based there, Mr. Lampropoulos and Mr. Parra both reside there, the most relevant witnesses are located there, and all the alleged statements and financials at issue in this case were made there from Merit's headquarters. A transfer to the District of Utah would serve the convenience of parties and witnesses and is in the interest of justice.

The Central District of California is not the most convenient forum for this litigation. Plaintiffs' choice of forum is often given significant deference, but it is not given nearly the same deference when Plaintiffs themselves do not reside there, the case is brought as a class action, and the operative facts did not occur in the forum—all of which are present here. Plaintiffs attempt to distract the Court from the heart of the 28 U.S.C. § 1404(a) analysis by focusing on the location of counsel and listing every possible person they could find in California that may know something about Merit or the Cianna acquisition. But the Court should not stray from the relevant legal factors that govern this issue.

Plaintiffs do not dispute that venue is proper in the District of Utah, nor can they dispute that Defendants have significant contacts there, all Defendants reside there, and the Company is headquartered there. Instead, Plaintiffs argue that they have connections to the Central District of California, but that is not true. That is simply where their counsel resides, which is not a factor under the 1404(a) transfer analysis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000) (discussing the factors courts consider). The parties' real contacts with the forum clearly weigh in favor of transfer. Plaintiffs also call the Court's attention to a handful of California-based witnesses with minimal importance to this case, but that is a red herring. This is a securities case that centers on Defendants' conduct and scienter, and the most

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

important witnesses by far are located in Utah.  The overall balance of the 1404(a) factors weighs strongly in favor of transfer to Utah, and the Defendants respectfully request that this Court transfer this matter to the District of Utah.

## ARGUMENT

**I.      Plaintiffs' choice of forum is not entitled to substantial deference because this is a class action and the operative facts all occurred in Utah.**

While a plaintiff's choice of forum is usually entitled to significant deference, that is not the case here.  The Ninth Circuit has held that "when an individual brings a derivative suit or represents a class, the named plaintiff's choice of forum is given less weight." *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987).  Further, "[i]f the operative facts have not occurred within the forum and the forum has no interest in the parties or the subject matter, [the plaintiff's] choice is entitled only to minimal consideration." *Id.* Plaintiffs bring this lawsuit on behalf of a nationwide class and the operative facts all occurred in Utah.  This Court should therefore give their choice of venue little weight.

Plaintiffs' reliance on the special venue provision in the Exchange Act is also misplaced.  "Nothing in § 78aa prevents the Court from determining whether this action should be transferred under § 1404(a)." *In re Yahoo! Inc.*, No. CV07-3125CAS(FMOX), 2008 WL 707405, at *7 (C.D. Cal. Mar. 10, 2008).  Most of the decisions that have considered the Exchange Act's venue provision against the line of cases that reject deference to a plaintiff's choice of forum in derivative and class actions have held that "where the class plaintiffs are not residents of the chosen forum, their chosen forum deserve no special treatment." *Id.* (collecting cases).  Like in those actions, Plaintiffs in this class action do not reside in this forum, so their choice of forum is only entitled to minimal weight notwithstanding the special venue provision in the Exchange Act.

This class action is strikingly similar to *In re Yahoo! Inc.*, No. CV07-3125CAS, 2008 WL 707405 (C.D. Cal. Mar. 10, 2008) and should be decided the same way.  In *Yahoo!*, the plaintiffs brought a securities class action that alleged the defendants made

false and misleading statements about its acquisition and integration of Overture Services, a company located in the Central District of California. *Id.* at *1. Defendants filed a motion to transfer the case to Yahoo!'s headquarters in the Northern District of California. Plaintiffs argued that their choice of forum in the Central District should control because their claims relating to the acquisition and integration of Overture Services involved "facts that occurred in the Central District and . . . employees who worked in the Central District." *Id.* at *5. The court rejected those arguments and held that the plaintiffs' choice of forum was not afforded any special deference. *Id.* Instead, the court held that, consistent with Ninth Circuit law, even though some of the relevant facts may have occurred in the Central District, "many other relevant facts relating to plaintiffs' claims undisputedly occurred" where the company was headquartered. *Id.* The court emphasized that the plaintiffs' choice of forum was entitled minimal deference "[b]ecause plaintiffs [did] not reside in this forum and because [the] case is a class action." *Id.* at *6.

Like in *Yahoo!*, Plaintiffs' choice of venue in this securities class action should not be afforded any special deference because they do not reside in California, and the alleged misstatements and omissions were made in Utah. Moreover, the facts favoring Plaintiff's choice of venue in *Yahoo!* were more compelling than those here. In *Yahoo!*, the allegations centered on Yahoo!'s acquisition of a company based in the Central District of California. *Id.* at *1. But here, Plaintiffs allege that Merit provided inflated quarterly and annual 2019 results because it knew about problems with the integration of ***three*** recently acquired companies (largely based in Massachusetts, New Jersey, and California). *See* Compl. ¶4; *see also* Decl. of Ron Frost ¶ 7. The fact that one of the three acquisitions at issue concerns California-based Cianna does not support venue in this District because most of the relevant facts "undisputedly occurred" in Utah, where Merit is headquartered. *See id.* at *5–6; *see also City of N. Miami Beach Police Officers' and Firefighters' Ret. Plan v. Nat'l Gen. Holdings Corp.*, No. SAV 19-06468 AG, 2019 WL 7900030, at *3 (C.D. Cal. Nov. 19, 2019) (rejecting the plaintiff's

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

argument that the "underlying misconduct substantially occurred" in California because "in a securities action, the alleged misstatements and omissions are the heart of the action and outweigh the importance of the underlying misconduct"); *Gerin v. Aegon USA, Inc.*, No. C06-5407 SBA, 2007 WL 1033472, at \*6 (N.D. Cal. Apr. 4, 2007) ("Most importantly, however, the prospectuses and marketing materials about which Plaintiffs complain, and which are the centerpiece of this litigation, were drafted, reviewed, edited and approved in Florida, and thus, the operative facts on which the complaint is based transpired in Florida."). Even if this class action was solely about Merit's acquisition and integration of Cianna—which it is not—all the statements and decisions about the acquisition and its integration were made in Utah.

Because the operative facts in this class action occurred in Utah, Plaintiffs' choice of forum should be given minimal consideration.

## II.     The District of Utah is a more convenient forum for the parties.

Plaintiffs do not reside in this District, nor do they reside anywhere in the Ninth Circuit. Plaintiffs live in Baton Rouge, Louisiana and Atlanta, Georgia. Plaintiffs downplay this fact and instead point to their counsel's location in this District, but "convenience of counsel is not considered in ruling on a section 1404(a) transfer motion." *See, e.g.*, *Pralinsky v. Mut. of Omaha Ins.*, No. C08-03194MHP, 2008 WL 4532563, at \*2 (N.D. Cal. Oct. 9, 2008) ("The person for whom the northern California forum is particularly convenient is the plaintiff's current attorney, but convenience of counsel is not considered in ruling on a section 1404(a) transfer motion."). Accordingly, Plaintiffs' argument—that this District is a more convenient forum—is not persuasive because Plaintiffs do not live in this District and the location of counsel is an "irrelevant and improper . . . consideration in determining the question of transfer of venue." *See In re Horseshoe Entm't*, 337 F.3d 429, 434 (5th Cir. 2003).

Moreover, "the location of defendants is a weighty consideration in deciding whether this securities class action [should be] transferred because plaintiffs' allegations focus on defendants' conduct and do not appear to implicate involved

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

questions of fact regarding plaintiffs' behavior." *See In re Yahoo! Inc.,* 2008 WL 707405, at *3 (citing *In re Hanger Orthopedic Grp., Inc.*, 418 F. Supp. 2d 164, 169 (E.D.N.Y. 2006)).  It is undisputed that Defendants in this case are all located in the District of Utah, Merit is headquartered there and the Individual Defendants all reside there.[1]  The statements at the heart of Plaintiffs' Complaint all originated in Utah, including SEC filings, financial statements, earnings calls, and investor materials.  Decl. of Ron Frost ¶ 5, 11.  Thus, the District of Utah is a more convenient location for Defendants.

Plaintiffs also overstate Defendants' connections to California.  Merit did acquire Cianna, an Aliso Viejo-based company, and Merit still has some connections to this District.  *See* Mot. at 5; Decl. of Ron Frost ¶ 7–8.  But the Cianna acquisition was only one of a long line of acquisitions that Merit has undertaken in the past decade, and it is only one of three acquisitions that Plaintiffs make allegations about in their Complaint.  *See* Compl. ¶ 4; Supp. Decl. of Ron Frost ¶ 3–4.  Merit employs only 19 individuals at its Aliso Viejo facility and employs additional salespeople throughout this District who work from their homes.[2]  Decl. of Ron Frost ¶ 8.  And at the time of the Cianna acquisition, the Aliso Viejo facility employed only 26 individuals.[3]  *Id.*  In contrast,

---

[1] Plaintiffs' reference to Fred Lampropoulos' vacation home in Newport Beach (Opp. at 2), does not change the "convenience" analysis.  He lives in Utah, owns another vacation home in Utah, and spends only a few weeks each year at his vacation home in California.  Supp. Decl. of Ron Frost ¶ 9.

[2] Plaintiffs incorrectly argue that Merit's "only sales office" is in Aliso Viejo, California.  While Merit does have sales activities, including employees working from their homes, in California, the sales are directed from Merit's Executive Vice President of Sales, Marketing, and Strategy located at its headquarters in Utah.  Supp. Decl. of Ron Frost ¶ 4–5.

[3] Plaintiffs are incorrect in their assertion that the *majority* of the Cianna employees are no longer with the Company. Opp. at 19–20; *see* Decl. of Ron Frost ¶ 8 (noting that 13 of the original 26 individuals employed at Cianna's Aliso Viejo facility are still employed); Supp. Decl. of Ron Frost ¶ 4 (noting that at the time of the Cianna acquisition, the Company moved all senior control to Utah and maintained Cianna's approximately 50-person national sales force).

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

Merit employs over 2,000 individuals at its Utah headquarters. *Id.* ¶ 5. Even assuming that Merit employed 80 individuals in this District at one time, as Plaintiffs contend, those employees would account for less than 4% of Merit's workforce in Utah.[4] The central allegation in the Complaint is whether Defendants knowingly provided inflated guidance for quarterly and annual results for 2019. Revenue from Cianna accounted for only 4.97% of Merit's total revenue in 2019—Cianna was not a significant driver of Merit's 2019 financial results that will be at the heart of this litigation. Supp. Decl. of Ron Frost ¶ 6.

Plaintiffs overstate Merit's connections to this District by pointing to the cost of the Cianna acquisition, but the cost of the other two non-California acquisitions total nearly the same amount. *See* Complaint ¶ 4 (alleging that Merit completed the Cianna acquisition for up to $200 million; the Becton, Dickinson acquisition for up to $100 million; and the Vascular Insights acquisition for up to $60 million). The significance of these acquisitions to Merit is not based solely on the amount Merit paid. Assessing their significance requires considering other factors such as how much debt Merit took on as part of the acquisition; the resources required to negotiate the deal; the resources required to integrate the new acquisition; and the impact of the acquisition on Merit's revenues and other financial metrics. Simply because Cianna was the "largest" of the three acquisitions at issue does not mean that it was Merit's most significant acquisition.

Plaintiffs' contention that Merit has "substantial operations" and "recently expanded its presence" in California is also misleading. While Merit did acquire Cianna, DFINE, and Brightwater (all previously California-based companies), these were only three of a long line of Merit's acquisitions around the world in the last decade. Supp. Decl. of Ron Frost ¶ 4. These acquisitions were hardly a move to expand Merit's

---

[4] Plaintiffs cite to a conference call where Mr. Lampropoulos noted that Cianna had 80 employees at the time of the acquisition, but many of these were sales employees who worked from home, did not work in the Aliso Viejo facility, and are unlikely to be relevant, let alone important, witnesses in this litigation. Supp. Decl. of Ron Frost ¶ 4.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

presence in California.  To the contrary, upon acquiring Brightwater, Merit moved Brightwater's operations from California to Utah and Texas and completely wound down the Brightwater facility in California, further undermining Plaintiffs' supposition that Merit was increasing its presence in California.[5]  Supp. Decl. of Ron Frost ¶ 4.

The convenience of the parties weighs in favor of transfer to Utah because Defendants reside in Utah, Defendants' alleged misconduct occurred in Utah, and Plaintiffs do not reside in or have any legally relevant contacts with California.

### III.    The witnesses will be inconvenienced in this forum.

Although a few witnesses in this class action may be in California, the Court "must consider 'not simply how many witnesses each side has and the location of each, but also the importance of the witnesses.' "  *See In re. Yahoo! Inc.*, 2008 WL 707405, at *3 (quoting *Costco Wholesale Corp. v. Liberty Mut. Ins. Co.*, 472 F. Supp. 2d 1183, 1193 (S.D. Cal. 2007)).  Because this is a securities class action, the most relevant witnesses are Merit's top executives who made the challenged statements and the decisions about its policies, management, decision making, and accounting practices. *See In re Yahoo! Inc.*, 2008 WL 707405, at *5 ("[I]t appears from plaintiffs' allegations that the state of mind and the actions of Yahoo!'s senior officers regarding Yahoo!'s policies, management, decision-making, and accounting practices will be prominent issues.").  In its transfer analysis, the Court should weigh the convenience of Merit's employees (including Merit's top executives who undoubtedly have significant

---

[5] Plaintiffs also point to Merit's previous litigation in the Central District of California (Opp. at 16), but these cases are inapposite to the transfer analysis because the underlying facts of those cases occurred in California.  For example, in *Disi v. Merit Medical Sys., Inc.*, No. BC707011 (Sup. Ct. Cal.), the plaintiff was a California citizen who filed a personal injury lawsuit.  Supp. Decl. of Ron Frost ¶ 7.  In *Merit Pharms. v. Merit Med. Sys.*, No. 2:14-cv-04280 (C.D. Cal. 2014), the plaintiff was a California company who sued Merit about its trademarks. *Id.  Merit Med. Sys. v. SCT Medicath*, No. 06-cv-00536-CJC-AN, (C.D. Cal. Jun. 6, 2006) was a patent infringement case where the defendant's only contact in the United States was in California. *Id.* at 8. Unlike the current case, the underlying facts in these cases all occurred in California making it the appropriate venue for their disposition.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

relevance to this action) against the convenience of non-party witnesses (who may have limited relevance to this securities class action). *See Ezieme v. Ward Int'l Trading, Inc.*, No. CV 08-6748 PSG JWJX, 2009 WL 2818394, at *5 (C.D. Cal. Aug. 31, 2009) ("This Court is cognizant of the burdens to Defendants' party witnesses, notwithstanding the fact that they are employees of a corporation.").

Plaintiffs seek to persuade this Court to keep this securities class action in this District by naming every single person they could find in LinkedIn searches that were connected to Merit or Cianna in California. *See* Opp. at 20–21; Decl. of David Kaplan ¶ 5 . Plaintiffs' witness list includes former Cianna employees who left shortly after the acquisition and who had minimal information about Cianna's integration with Merit. *Id.* But these purported witnesses are not the people with the most relevant information. Plaintiffs' list conveniently leaves out any individuals who made any of the alleged misstatements, any individual who made the ultimate decisions related to Merit and its acquisitions, any individuals who would have knowledge about any of Merit's acquisitions outside of Cianna, or any individual who prepared Merit's financial information. The omission of these critical witnesses is unsurprising because their inclusion would be an admission that the most important witnesses are located in Utah and that the convenience of the witnesses factor weighs in favor of transferring this class action to Utah.[6]

Because the most relevant witnesses are in Utah, and because Defendants will follow Rule 45 and take non-party depositions in a convenient location, this factor weighs in favor of transfer.

---

[6] Defendants doubt that Plaintiffs will use their resources to depose every single former employee they can find in California to prove a case that is ultimately about statements made in Utah by Utah residents working for a Utah-headquartered company about acquisitions that were made throughout the world. But to the extent these witnesses are relevant to the litigation, Defendants intend to comply with Rule 45 and work with both Plaintiffs and the non-party witnesses to depose them in California or wherever is most convenient for them.

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE

## IV.   The remaining factors are neutral or weigh in favor of transfer.

The remaining factors that courts consider in the Ninth Circuit are neutral or weigh in favor of transfer:

- Merit's corporate books, records, and documents are stored at its headquarters in Utah. Decl. of Ron Frost ¶ 11. While Defendants conceded that most of this information is stored electronically, *see* Mot. at 8, to the extent the Court does consider this factor, it weighs in favor of transfer, or is at worst, neutral.

- Plaintiffs concede that both courts are equally capable of applying federal securities law, so this factor is neutral. *See* Opp. at 25.

- Plaintiffs do not live in California and would need to travel to either California or Utah regardless. In contrast, the cost will be substantial for Defendants if this case proceeds in California instead of its home forum in Utah. Therefore, the factor of costs weighs in favor of transfer, or is at worst, neutral.

- Finally, while Plaintiffs are correct that the median time to disposition is somewhat faster in this District than the District of Utah, the fact remains that this Court has significantly more filings per judgeship than the District of Utah. *See* Mot. at 9–10. Thus, to the extent this Court considers docket congestion, this factor weighs in favor of transfer, or is at worst, neutral.

## CONCLUSION

For all the reasons stated above, the Court should transfer this securities class action to the District of Utah, under 28 U.S.C. § 1404(a), for the convenience of the parties and witnesses.

/ /

/ /

/ /

/ /

/ /

/ /

9

After a careful consideration of these factors, Defendants respectfully request this Court find that transferring this case to the District of Utah is in the interest of justice, would result in the "convenience of parties and witnesses" and use its discretion to transfer this case.


Dated: April 27, 2020                    **KING & SPALDING LLP**


By:  */s/ Paul R. Bessette*
      PAUL R. BESSETTE
      MICHAEL J. BILES
      JOSEPH N. AKROTIRIANAKIS
      Attorneys for Defendants
      MERIT MEDICAL SYSTEMS, INC.;
      FRED P. LAMPROPOULOS; and
      RAUL PARRA

DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE