UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | Case No. 8:19-02326 DOC (ADSx)<br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable David O. Carter, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.   __INTRODUCTION__

Lead Plaintiffs Atlanta Police Pension Fund, City of Atlanta Firefighters' Pension Fund, Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge (collectively, "Lead Plaintiffs" or "Plaintiffs") filed the Consolidated Class Action Complaint ("CAC") stating two claims for putative securities fraud under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and

the rules and regulations promulgated thereunder, including 15 U.S.C. § 78j(b) and 78t(a), and Rule 10b-5, 17 C.F.R. § 240.10b-5.  [Dkt. No. 53, ¶¶ 13, 17-20].  The putative class consists of persons who purchased the common stock of Merit Medical Systems, Inc. ("Merit") between February 26, 2019 and October 30, 2019, inclusive ("the "Class Period"), and were damaged thereby (the "Class").  [Id., p. 5[1]].  Plaintiffs allege defendants Fred P. Lampropoulos, Merit's Chief Executive Officer, and Raul Parra, Merit's Chief Financial Officer (together, the "Individual Defendants"), and Merit (collectively, "Defendants") made multiple misrepresentations to investors, resulting in substantial losses to members of the Class.  [Id. ¶¶ 1-12].

On August 14, 2020, Defendants filed a Motion to Dismiss Consolidated Class Action Complaint ("Motion"), seeking to dismiss the entire CAC pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Dkt. No. 56].  On September 28, 2020, Plaintiffs filed an Opposition to Defendants' Motion to Dismiss the Consolidated Class Action Complaint ("Opposition").  [Dkt. No. 58].  Defendants filed a Reply Brief in Support of their Motion to Dismiss the Consolidated Class Action Complaint ("Reply") on October 22, 2020.  [Dkt. No. 60].

The Motion has been referred to the undersigned Magistrate Judge for determination by Report and Recommendation.  [Dkt. No. 67].  Having reviewed the Motion, Opposition, and Reply, the CAC, and considered the parties' arguments, for the reasons discussed below, the Court recommends the Motion be denied.

---

[1] All citations to electronically filed documents refer to the CM/ECF pagination.

**II.**   **SUMMARY OF THE COMPLAINT AND ARGUMENTS IN THE MOTION**

The CAC contains extensive allegations supporting the claims against Merit and the Individual Defendants.  By way of summary, Merit is a medical device company that historically acquired companies that created "medical accessory" products and in recent years began to acquire companies that create therapeutic devices.  [Dkt. No. 53, CAC, ¶¶ 1, 34].  On October 1, 2018, Merit announced it was acquiring Cianna, a company that sells SCOUT, a therapeutic device designed to treat breast cancer, for $200 million.  [Id. ¶¶ 36, 37].  On December 17, 2018, Merit announced it acquired Vascular Insights, along with its product line ClariVein, which is marketed to treat varicose veins, for $60 million.  [Id. ¶ 47].  The one hundred-page CAC alleges, generally, that Defendants made false statements regarding Merit's acquisitions of Cianna and ClariVein during investor calls and in press releases, SEC forms, and letters to investors in February, March, April, and July 2019.  The Section 10(b) claim is stated against all Defendants and the Section 20(a) claim is against the Individual Defendants only.

**A.**   **Cianna Acquisition**

Lead Plaintiffs argue Defendants misrepresented how well they transitioned and integrated Cianna into Merit's business, Cianna product sales numbers, and that Merit retained Cianna's entire sales force.

**1.**   **February 2019 Investor Call**

According to the CAC, on February 26, 2019, Defendants held a conference call with investors and investment analysts (the "February 2019 Investor Call").  [Id. ¶ 148].  While leading the call, Lampropoulos noted the acquisition of Cianna was "the largest acquisition Merit has ever made."  [Id. ¶ 149].  He stated, "we are very pleased with the transition" and "the integration I think is going as well as could be expected."  [Id.].  In

response to a request for more information "about the integration there, [and] sales force retention," Lampropoulos stated, "[o]n the Cianna business, the integration . . . is going as well as could be expected"; "everything is working quite nicely"; and "we've managed this correctly." [Id.].

### 2. April 2019 Press Release and Investor Call

According to the CAC, on April 23, 2019, Defendants issued a press release that quoted Lampropoulos as stating, "The Cianna transition is complete and sales continue to grow according to our expectations." [Id. ¶ 162]. That day, Merit also held a conference call with investors and investment analysts, led by Lampropoulos and Parra. [Id. ¶ 165]. When asked about Cianna's integration, Lampropoulos stated:

> I think with Cianna there's a couple of things I think are important. We, as you will recall, . . . we maintained their sales force. And we think that was a critical thing to do.
>
> But I guess the bottom line is, it's probably a good of a transaction and transition that we have done. I think it may be the best one. I mean we've done a lot of small deals. But I think that speaks volumes to Jill Anderson and her team. And just the way that our team has worked. We kept all the R&D people, we kept the salespeople, we've done, I think they fit into the family actually quite easily. I've been down there several times. I'm going to head down there again soon. So I think all in all, it was a transaction and a business that – I don't know how you could do it any better, to be honest with you. I think we've done it well.

[Id. ¶ 166 (emphasis in CAC)]. In response to a question about Merit's 2019 and 2020 guidance, Lampropoulos stated, "I don't see anything that has changed," and that "[t]here are always headwinds but I think there are more tailwinds. We're feeling the breeze to our back." [Id. ¶ 170].

### 3. July 2019 Investor Call

On July 26, 2019, Defendants held a conference call with investors and investment analysts. [Id. ¶ 172]. During the call, Lampropoulos stated there was "a little bit of

attrition but not much" attrition of Cianna's sales force.  [Id. ¶ 173].  At this time, over 20% of the sales force had quit, including top performers responsible for 22% of the Cianna's total sales in 2018.  [Id. ¶¶ 67-84, 198].

### 4.    Alleged Materially False and Misleading Statements

The CAC alleges Defendants' statements, above, regarding Merit's integration of Cianna into its business were materially false and misleading, and omitted facts.  See, e.g., [id. ¶¶ 150, 152].  It alleges that by April 23, 2019, 50% of the items planned for integration were not integrated, including customer relationship management platforms, marketing platforms, and meeting platforms.  [Id. ¶ 87].  This integration failure resulted in inefficiencies and operational setbacks, as well as the over 20% of the sales force quitting.  [Id. ¶¶ 85-100, 141-142].  The departure of top sales performers in the Western region resulted in a decline of 25% to 30% in the region.  [Id. ¶¶ 68-81].  Eventually, Merit expressed, "Cianna . . . just caught up with us."  [Id. ¶ 141].  Merit further admitted, "[c]learly, they didn't perform the way we wanted to," and that "it's taken a lot more time and we've had to learn some painful lessons."  [Id. ¶ 141].

### 5.    Defendants' States of Mind

The CAC further alleges that at the time Defendants made the above-noted statements, Defendants knew or were deliberately reckless in not knowing that the statements were false or misleading.  [Id. ¶ 181].  During an October 1, 2018 investor call, Defendants claimed personal knowledge of Cianna and its sales force.  [Id. ¶ 38].  Lampropoulos stated the Cianna acquisition would bring Merit within the therapeutic device market.  [Id. ¶¶ 34-43].  He also stated that Merit's financial "models . . . and the [financial] returns reflect the maintenance of the sales force."  [Id. ¶ 39].  Lampropoulos said he spoke to salespeople every day.  [Id. ¶¶ 40, 44, 54, 186].  During a February 26,

2019 earnings call with investors, Lampropoulos expressed he "did due diligence" on Cianna and "did a lot of work on the operations, the manufacturing, [and the] sales force." [Id. ¶¶ 53-54]. In reality, by the April 2019 Investor Call, three of Cianna's top four salespeople left Merit. [Id. ¶¶ 57, 57-84, 134, 188]. Those top performers generated 75% of sales for Cianna's Western region and over 20% of sales in 2018. [Id. ¶¶ 67-84, 188]. As a result of their departures, Cianna sales declined 25% to 30%, as reflected in sales reports. [Id. ¶¶ 80-84]. Furthermore, Lampropoulos attended meetings during which he was provided with information on Cianna's sales and marketing systems. [Id. ¶¶ 86, 90].

### B.   ClariVein Acquisition

Lead Plaintiffs argue Defendants misrepresented the strength of Merit's sales of ClariVein, whether there were issues with insurance reimbursements of ClariVein, and other reasons for low sales of the product.

### 1.   February 2019 Investor Call and Press Release

The CAC alleges that during the February 26, 2019 Investor Call, Lampropoulos told investors, "we're generally satisfied with the overall business." [Id. ¶ 151]. Parra told investors that the 2019 guidance for ClariVein is "$10 million to $11 million" and "[w]e haven't changed the guidance." [Id. ¶ 154]. In response to a question asking why Merit provided financial guidance for 2020 in addition to 2019, Lampropoulos stated, "We've had 2 or 3 months now of Cianna. Our confidence is built there. I would say the same thing about Vascular Insights [the company from which that Merit purchased ClariVein]." [Id. ¶ 151].

On February 26, 2019, Merit issued a press release stating:

> '2018 was an important and very positive year for the company and included . . . the acquisitions of Cianna Medical and Vascular Insights, and the execution of our global growth and profitability plan,' said Fred P.

Lampropoulos, Merit's Chairman and Chief Executive Officer.  <u>Integration of these new businesses and sales of our core products continue to drive growth</u> . . . .

[<u>Id.</u> ¶ 155 (emphasis in CAC)].

### 2.    March 2019 Form 10-K and Letter to Investors

The CAC alleges that on March 1, 2019, Merit filed its Form 10-K with the SEC for the year that ended on December 31, 2018.  [<u>Id.</u> ¶ 157].  In that Form 10-K, Defendants claimed it was a potential "risk factor" that "limits on reimbursement . . . may adversely affect the ability of hospitals and others to purchase our products, which could adversely affect our business and results of operations."  [<u>Id.</u>].  This statement was incorporated in Merit's Forms 10-Q filed with the SEC on May 3, 2019, for the first quarter of 2019, and on August 9, 2019, for the second quarter of 2019.  [<u>Id.</u> ¶ 159].

It is further alleged that on March 1, 2019, Defendants issued a letter to Merit shareholders that was attached to its 2018 Form 10-K.  The letter, authored by Lampropoulos, stated:

2018 was an important and very positive year for our company.  It included . . . the acquisitions of Cianna Medical and Vascular Insights, and the execution of our global growth and profitability plan.  <u>Integration of these new businesses and sales of our core products . . . continue to drive growth</u>.

[<u>Id.</u> ¶ 155 (emphasis in CAC)].

### 3.    April 2019 Investor Call

The CAC alleges that during the April 23, 2019 Investor Call, Parra told investors that Merit had "strong sales in stand-alone products," which included ClariVein.  [<u>Id.</u> ¶ 168].  Also, in response to a question about Merit's 2019 and 2020 guidance, Lampropoulos stated, "I don't see anything that has changed," and that "[t]here are

always headwinds but I think there are more tailwinds.  We're feeling the breeze to our back." [Id. ¶ 170].

### 4.    July 2019 Investor Call

It is further alleged that on July 26, 2019, Defendants held a conference call with investors and investment analysts.  [Id. ¶ 172].  During the call, when describing "short-term" "shortfalls", Lampropoulos stated, "[w]e haven't had an order all year because of pipeline filling from the former customer or fear by the distributor that somehow they wouldn't be able to keep it." [Id. ¶ 175].  He further stated, "if you look at all the events that took place, I think we have explained them.  They are short term or these storms are over." [Id.]

The CAC alleges that during the July 2019 Investor Call, Parra also attributed the "sales shortfall for ClariVein" to "pipeline filling." [Id. ¶ 177].  Parra stated ClariVein's lackluster sales were "the result of excess inventory of some of the distributors prior to our acquisition." Id.  Regarding issues adversely impacting sales, Parra stated, "We believe we have made it past that, and sales are ramping to our expectations." [Id.].  At the time, Defendants reaffirmed their 2019 revenue guidance of $10 million to $11 million for ClariVein.  [Id. ¶¶ 177, 179].

### 5.    Alleged Materially False and Misleading Statements

The CAC alleges Defendants' above-noted statements about Merit's sales of ClariVein were materially false and misleading, and omitted facts.  See, e.g., [id. ¶¶ 152, 154].  Plaintiffs allege that Merit had not received a single order for ClariVein during the first half of 2019.  [Id. ¶¶ 102-112, 152].  Also, insurance payors were not providing reimbursements for ClariVein, and Defendants knew this.  [Id. ¶¶ 113-123].  In addition, by February 2019, Merit had already determined that it could not market ClariVein for its

primary purpose—the treatment of varicose veins—because Varicose Insights had marketed the product in a manner that exceeded ClariVein's FDA approval. [Id. ¶¶ 124-128]. In July 2019, Merit reported to investors that "sales are ramping to our expectations." [Id. ¶¶ 129-136]. But on October 30, 2019, Merit reported that it was "9 or 10 months behind" schedule for ClariVein. [Id. ¶ 140-146]. It later reported sales of Vascular Insights were 30% below the previous guidance. [Id. ¶ 192].

The CAC alleges Lampropoulos and Parra had access to and received real-time ClariVein sales information. [Id. ¶ 193]. It alleges that outside of Lampropoulos' office was a video screen that streamed daily sales information for each of Merit's products, including ClariVein. [Id. ¶¶ 104-107]. Also, the Individual Defendants had access to Domo, Merit's platform that tracks sales and orders, and Lampropoulos checked the sales numbers frequently and used the Domo system on his smartphone. [Id. ¶¶ 80, 106-111, 194]. Lampropoulos received ClariVein sales numbers over email daily and asked for financial reports over prior quarters and years. [Id. ¶¶ 108-109]. Merit's VP of Business Continuity said Lampropoulos "knew everything about sales" and was "aware every day of how sales were going." [Id. ¶ 111].

The CAC also alleges the Individual Defendants knew that insurance payors were not providing reimbursements for ClariVein, since they were specifically and directly informed of this by multiple former Vascular Insights employees. [Id. ¶¶ 113-123, 196]. Also, Lampropoulos was specifically informed that Vascular Insights improperly marketed ClariVein as a treatment for varicose veins. [Id. ¶¶ 124-128, 197].

## C.    Additional Scienter Allegations

The CAC alleges that between August and September 2019, Lampropoulos sold $6.5 million of his personal shares of Merit within three weeks. [Id. ¶¶ 137-139]. The

9

proceeds from the sale of these shares was greater than any he made in the preceding six years, and exceeded the numbers of shares he sold during the prior thirteen years combined. [Id. ¶ 138]. By selling these shares, which was done through open market transactions, Lampropoulos avoided the 29% decline in Merit's stock after its corrective disclosures on October 30, 2019. [Id. ¶ 200].

### D. Loss Causation

The CAC alleges that during the Class Period, Defendants' materially false and misleading statements and omissions artificially inflated the price of Merit common stock and maintained existing inflation in the stock price. [Id. ¶ 202]. Merit's stock reached a price of $62.60 on April 11, 2019, the peak of the Class Period. [Id. ¶ 203]. At the end of the Class Period, Merit's stock price was $20.66, losing approximately 67% of its value. [Id.].

### III.   RELEVANT LAW

Under Federal Rule of Civil Procedure 12(b)(6), a complaint must be dismissed when a plaintiff's allegations fail to set forth a set of facts which, if true, would entitle the complainant to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 55 (2007); Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009) (holding that a claim must be facially plausible in order to survive a motion to dismiss). The pleadings must raise the right to relief beyond the speculative level; a plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)). On a motion to dismiss, the court accepts as true a plaintiff's well-pleaded factual allegations and construes all factual inferences in the light most favorable to the plaintiff. See Manzarek v. St. Paul Fire &

Marine Ins. Co., 519 F.3d 1025, 1031 (9th Cir. 2008).  The court is not required to accept as true legal conclusions couched as factual allegations.  Iqbal, 556 U.S. at 678.

The Securities and Exchange Commission's Rule 10b-5, which implements Section 10(b) of the Securities Exchange Act, prohibit securities fraud.  See 17 C.F.R. § 240.10b-5.  An allegation of "fraud or mistake must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  The "circumstances" are required by Rule 9(b) are the "who, what, when, where, and how" of the fraudulent activity.  Vess v. Ciba-Ceigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003); Neubronner v. Milken, 6 F.3d 666, 672 (9th Cir. 1993) ("[Rule 9(b) requires] the times, dates, places, benefits received, and other details of the alleged fraudulent activity.").  In addition, the allegation "must set forth what is false or misleading about a statement, and why it is false."  Vess, 317 F.3d at 1106 (quoting In re Glenfed, Inc. Secs. Litig., 42 F.3d 1541, 1548 (9th Cir. 1994)).  This heightened pleading standard ensures "allegations of fraud are specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong."  Semegen v. Weidner, 780 F.2d 727, 731 (9th Cir. 1985).

Under the heightened pleading standards of the Private Securities Litigation Reform Act ("PSLRA"), a securities fraud complaint must identify each alleged misrepresentation, specify the reasons it is misleading, and state with particularity facts giving rise to a strong inference that the defendant who made the misrepresentation acted with fraudulent intent.  Tellabs, Inc. v. Makor Issues & Rights Ltd., 551 U.S. 308, 321 (2007).  Courts consider "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard."  Id. at 322-23 (citations omitted).

11

## IV.   INCORPORATION BY REFERENCE AND JUDICIAL NOTICE

Defendants request that the Court take judicial notice of the documents attached to the Motion to Dismiss, which are submitted in support of the Motion.  [Dkt. No. 56, p. 11 n.2].  These fourteen exhibits include transcripts of Defendants' investor calls and copies of their Forms 10-K, 10-Q, and 8-K filed with the U.S. Securities and Exchange Commission.  See [Dkt. No. 56-2].  Defendants argue that Plaintiffs expressly reference the contents of Exhibits 1–14 in the CAC, thus incorporated by reference in the CAC and, therefore, properly subject to judicial notice.  [Dkt. No. 56, p. 11 n.2].  Plaintiffs contend the request for judicial notice is improper, citing Khoja v. Orexigen Therapeutics, Inc., 899 F.3d 988, 998, 1014 (9th Cir. 2018) ("The incorporation-by-reference-doctrine does not override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage."), cert. denied, ___ U.S. ___, 139 S. Ct. 2615 (2019).  [Dkt. No. 58, p. 11 n.2].

In evaluating a Rule 12(b)(6) motion, the Court's review is ordinarily limited to the contents of the complaint and material properly submitted with the complaint.  Van Bushkirk v. Cable News Network, Inc., 284 F.3d 977, 980 (9th Cir. 2002); Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  Under the incorporation by reference doctrine, the court may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  Branch v. Tunnell, 14 F.3d 449, 454 (9th Cir. 1994), overruled on other grounds by Galbraith v. County of Santa Clara, 307 F.3d 1119, 1121 (9th Cir. 2002).  The court may treat such a document as "part of the complaint, and thus may assume that its contents are true for the purposes of a motion to dismiss under Rule 12(b)(6)."  United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).  A court may

incorporate a document into a complaint "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." Khoja, 899 F.3d at 1002 (quoting Ritchie, 342 F.3d at 907 (9th Cir. 2003)).

Here, Plaintiffs allege Defendants made false and misleading statements during investor calls and in their Forms 10-K. Those investor calls and SEC forms are referred to extensively throughout the CAC and the statements made therein form much of the basis of Plaintiffs' claims. Therefore, the transcripts of those calls and copies of Defendants' Forms 10-K are incorporated by reference in the CAC.

Second, the court may take judicial notice of certain items without converting the motion to dismiss into one for summary judgment. Barron v. Reich, 13 F.3d 1370, 1377 (9th Cir. 1994). For instance, the court may take judicial notice of facts "not subject to reasonable dispute" because they are either: "(1) [] generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201; see also Harris v. Cnty. of Orange, 682 F.3d 1126, 1132 (9th Cir. 2012) (noting that the court may take judicial notice of "undisputed matters of public record," including "documents on file in federal or state courts," as well as "documents not attached to a complaint . . . if no party questions their authenticity and the complaint relies on those documents"). In deciding a motion to dismiss, courts can consider securities offerings and corporate disclosure documents that are publicly available. See Metzler Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1064 n.7 (9th Cir. 2008) (finding judicial notice of publicly available financial documents, including SEC filings, was proper). Here, the CAC relies on the transcripts of Defendants' calls with investors and on their SEC filings. Also, no party

questions the authenticity of the Exhibits.  Therefore, the Court GRANTS Defendants' request for judicial notice of the Exhibits to the Motion to Dismiss.

## V.      DISCUSSION

Defendants move to dismiss Plaintiffs' entire CAC for failure to state a claim. Defendants move to dismiss Plaintiffs' first claim under Section 10(b) of the Securities Exchange Act for the following reasons: (1) Plaintiffs fail to plead that Defendants made a false or misleading statement; (2) the challenged statements are immaterial; (3) Plaintiffs fail to plead a strong inference of scienter; and (4) Plaintiffs fail to adequately plead loss causation.  [Dkt. No. 56].   In addition, Defendants seek to dismiss Plaintiffs' second claim under Section 20(a) because Plaintiffs fail to plead control-person liability against the Individual Defendants.  [Id.].  The Court addresses each of Defendants' arguments in turn.

### A.      Claim One: Securities Fraud (Section 10(b))

Plaintiffs' first claim is based on Section 10(b) of the Securities Exchange Act.  The Securities and Exchange Commission's Rule 10b-5 prohibits making any material misstatement or omission in connection with the purchase or sale of a security.  See 17 C.F.R. § 240.10b-5.  To state a claim for securities fraud under Section 10(b), a complaint must allege: "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation."  Halliburton Co. v. Eric. P. John Fund, Inc., 573 U.S. 258, 267 (2014) (citations omitted); Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1057 (9th Cir. 2014).

### 1.     False or Misleading Statement

First, Defendants argue the alleged false or misleading statements identified by Plaintiffs are not actionable.  Defendants argue they are not actionable for the following reasons:  (1) they are protected under the PSLRA's safe harbor provision as "forward-looking" statements; (2) the CAC does not allege any false or misleading statement about the acquisition and integration of Cianna; and (3) the CAC does not allege any false or misleading statement about the acquisition of Vascular Insights or the projected sales of ClariVein.  [Dkt. No. 56, pp. 16-24].

### a.     PSLRA Safe Harbor Provision

Defendants argue that certain of the identified statements are protected as "forwarding-looking" statements under the PSLRA's safe harbor provision.  The PSLRA provides a "barrier at the pleading stage in the form of a safe harbor for 'forward-looking statements.'"  In re Cutera Sec. Litig., 610 F.3d 1103, 1111 (9th Cir. 2010).  A "forward-looking" statement includes, among other things, "a statement containing a projection of revenues, income (including income loss), earnings (including earnings loss) per share, capital expenditures, dividends, capital structure, or other financial items."  15 U.S.C. § 78u-5(i)(1)(A).  Such a statement falls within the PSLRA's safe harbor provision if: (1) it is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement," or (2) "the plaintiff fails to prove that the forward-looking statement" was made with "actual knowledge by that person that the statement was false or misleading."  Id. § 78u-5(c)(1).  A statement about current or past facts is not protected by the safe harbor.  In re Quality Sys., Inc. Sec. Litig., 865 F.3d 1130, 1142 (9th Cir. 2017).

The Motion identifies certain enumerated paragraphs in the CAC as containing allegations of non-actionable "forward-looking" statements that fall within the safe harbor. [Dkt No. 56, p. 17 (referencing CAC ¶¶ 62, 64, 170, 183, 192 (2019 revenue guidance); ¶¶ 38, 50, 182 (2019 Cianna sales), ¶¶ 3, 48, 49, 61, 101, 151, 153, 154, 171, 179, 180, 183, 209 (2019 ClariVein sales))]. Defendants argue Merit's statements were forward-looking projections accompanied by meaningful cautionary language and point to transcripts of those calls and Merit's 2018 Form 10-K as evidence. Defendants argue Merit's 2018 Form 10-K provides investors with an exhaustive list of meaningful and specific risk factors. [Dkt. No. 56, pp. 17-18; Dkt. No. 56-2, pp. 42-45].

In their Opposition, Plaintiffs contend Defendants' statements that were false were "non-forward-looking". [Dkt. No. 58, p. 26-27]. Plaintiffs argue only 5 of the 27 alleged false statements are tethered to guidance. [Id., p. 25]. Of those, the statements related to ClariVein, Plaintiffs argue "was at all times false and misleading due to undisclosed pre-existing sales impediments resulting in zero ClariVein order in the first half of 2019". [Id.]. Plaintiffs cite to CAC paragraphs 153, 177, and 179 and argue the safe harbor does not apply where the statement omitted material facts or were made with actual knowledge. [Id., p. 26]. Plaintiffs also argue the "statement in April 2019 that nothing had changed regarding 2019 revenues" was false because "Cianna revenues continued to decline and there had been zero ClariVein orders thus far," citing to CAC paragraph 170. [Id.]. Plaintiffs further argue that the safe harbor does not apply to allegations where the falsehood relates to non-forward -looking aspects of the statements. [Id.]. Finally, they argue the cautionary language used never disclosed omitted facts and are actionable. [Id.].

In reply, Defendants stand on their argument that the safe harbor precludes this action. Defendants argue that Plaintiffs are incorrect because "forward-looking" statements are not limited only to those regarding "guidance" but also include those concerning the future benefits of the Cianna acquisition and the future potential of ClariVein. Defendants also argue that Plaintiffs admit cautionary language was included in the Form 10-K, which Defendants assert omitted nothing material and contained disclosures that were "both copious and detailed."

Defendants indeed provided cautionary language with at least some of the challenged statements. The transcripts of the quarterly calls reflect Merit expressly stated, "Please be aware that statements made in this call which are not purely historical may be considered forward-looking statements. We caution you that all forward-looking statements involve risks, unanticipated events and uncertainties that could cause our actual results to differ materially from those anticipated in such statements." [Dkt. No. 56-2, (February 26, 2019 Investor Call Transcript), p. 2]. Defendants directed investors to their annual report and SEC filings available on their website for discussions of the risk factors. [Id.].

Despite the warnings about forward-looking statements, a review of the transcripts, and the CAC, reflect the statements were made about current or past facts. Merit's February, April, and July 2019 Investor Calls included statements that the Cianna transition was "going as well as could be expected," "working quite nicely," managed "correctly," "complete"; that "sales continue to grow"; and Merit "maintained their sales force." The investor calls also included statements that integration of Cianna and ClariVein "continue to drive growth," and there were "strong sales in stand-alone products," and there was a "sales shortfall" for ClariVein. All of these statements are

17

about current or past facts; they are not forward-looking statements.  Therefore, these statements made during the February, April, and July Investor Calls investor calls do not fall within the PSLRA safe harbor.

b.    Acquisition of Cianna

Plaintiff sufficiently identified statements that are allegedly false or misleading related to the acquisition of Cianna.  The CAC alleges Lampropoulos made false and misleading statements about Merit's acquisition of Cianna.  First, Plaintiffs allege Lampropoulos' statement in the April 23, 2019 press release that, "[t]he Cianna transition is complete," was false and misleading because half of the integration plans were not yet complete.  [Dkt. No. 53, ¶¶ 162-63].  Defendants argue this statement was not false or misleading because during the April 2019 Investor Call, he clarified the "transition period" referred to shipping and billing efforts.  [Dkt. No. 56, p. 19].  Second, Plaintiffs allege Lampropoulos' statement that Cianna "sales continue to grow according to our expectations," published in the April 23, 2019 press release, was false and misleading because he failed to disclose that 20% of Cianna's sales force had quit.  [Dkt. No. 53, ¶¶ 162, 164].  Defendants argue there is no factual support for the assumption that the loss of three salespeople who were responsible for 22% of Cianna's 2018 sales meant Merit would lose 22% of its 2019 sales.  [Dkt. No. 56, pp. 20-21].  Defendants also argue Merit's Cianna product sales in the first quarter of 2019 were on track to meet their guidance for the year.  [Id., p. 21].  Third, Plaintiffs allege that during the April 2019 Investor Call, Lampropoulos stated, "[w]e've maintained the sales force.  And we think that was a critical thing to do," and this was false and misleading given that over 20% of the sales force quit.  [Dkt. No. 53, ¶¶ 166-67].  Defendants counter that that Lampropoulos provided context to this statement when he immediately thereafter referred to "a couple of issues or things that we

had to make some changes," and that a reasonable investor would understand this to mean that a few salespeople had left. [Dkt. No. 56, pp. 19-20]. In their Opposition, Plaintiffs respond that the statements were false and misleading because they gave the impression that the members of Cianna's sales force remained at Merit. [Dkt. No. 58, p. 19].

Pursuant to Rule 9(b) and the PSLRA, falsity must be pled with particularity. Fed. R. Civ. P. 9(b); In re Arrowhead Pharm., Inc. Sec. Litig. 782 F. App'x 572, 574 (9th Cir. 2019) (citation omitted). As to Plaintiffs' allegations regarding Defendants' statements about the acquisition and integration of Cianna, Plaintiffs specifically identify the allegedly false statement, when it was made, by whom, and why it was misleading. Therefore, Plaintiffs have sufficiently met this heightened pleading standard for their allegations regarding the acquisition of Cianna.

c.   Acquisition of Vascular Insights/ClariVein Projected Sales

The CAC sufficiently alleges Lampropoulos made statements alleged to be false and misleading about Merit's acquisition of Vascular Insights and the projected sales of ClariVein. First, Plaintiffs allege Merit's 2019 sales guidance for ClariVein was materially false and misleading since there were no ClariVein orders for the first half of 2019. [Dkt. No. 53, ¶¶ 129, 130, 169, 192]. Defendants argue the allegation is based on a statement that Plaintiffs take out of context, and instead Merit reported approximately $3.2 million in ClariVein sales during the first half of 2019. [Dkt. No. 56, pp. 21-22]. Defendants also clarify that Lampropoulos' stated, "[w]e haven't had an order all year because of pipeline filling from the former customer," referring to one large customer. [Id., p. 22]. Plaintiffs respond that Lampropoulos attributed the lack of orders to both customers and distributors, and the reference to a large customer was made at another point in the July

2019 Investor Call. [Dkt. No. 58, p. 23]. Second, as to Plaintiffs' allegation that "the integration of Vascular Insights . . . 'continued to drive growth,'" Defendants argue Lampropoulos stated instead, "Integration of these new businesses and sales of our core products continue to drive growth . . . ." [Dkt. No. 56, p. 22]. Defendants aver Merit investors understood that ClariVein sales would not drive 2019 revenue, noting Merit's forecasted ClariVein sales was 1% of Merit's total sales forecast. [Id.]. In their Opposition, Plaintiffs reply that Defendants improperly interject their own interpretation of investors' understanding. [Dkt. No. 58, p. 24]. Third, Defendants argue Plaintiffs mischaracterize Parra's statement during the April 2019 Investor Call that Merit had "strong sales in stand-alone products," which included ClariVein, was not false or misleading given that ClariVein was one of many Merit products, and Merit in fact reported a 14.6% increase in stand-alone product sales from 2018 to 2019. [Dkt. No. 56, p. 23]. Plaintiffs contend that since Defendants touted strong sales in ClariVein as a stand-alone product, they were required to inform investors that there were no new ClariVein orders and continuing impediments to sales. [Dkt. No. 58, p. 24]. Fourth, whereas Plaintiffs allege that Parra told investors in July 2019 that "sales are ramping to our expectations," Defendants argue this statement is not false or misleading since Parra lowered Merit's 2019 ClariVein sales expectations, and ClariVein sales increased 34% during the second half of 2019. [Dkt. No. 56, p. 23]. Plaintiffs respond that Defendants never said they lowered full-year guidance for ClariVein and it was never reported by analysts. [Dkt. No. 58, p. 24].

For each of these allegations, Plaintiffs specifically identify the allegedly false statement, when it was made, by whom, and why it was misleading. Therefore, as to their ClariVein allegations, Plaintiffs have sufficiently met the heightened pleading standards

20

under Rule 9(b) and the PSLRA.  See Fed. R. Civ. P. 9(b); In re Arrowhead Pharm., Inc. Sec. Litig. 782 F. App'x 572, 574 (9th Cir. 2019) (citation omitted).  Accordingly, the allegations concerning statements made in the February 2019 press release, March 2019 Form 10-K and letter to investors, and April 2019 press release, are sufficiently pled as false or misleading.

### 2.    Materiality of Challenged Statements

Next, Defendants argue the challenged statements are immaterial because (1) Cianna and ClariVein products were immaterial to Merit's 2019 revenue; and (2) vague statements of corporate optimism are immaterial as a matter of law.  [Dkt. No. 56, pp. 24-26].  "To meet the materiality requirement of Rule 10b-5, the complaint must allege facts sufficient to support the inference that there is a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  Police Ret. Sys. of St.  Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1060 (9th Cir. 2014) (quoting Basic Inc. v. Levinson, 485 U.S. 224, 231-32 (1988) (internal quotation marks omitted).

### a.   Merit's 2019 Revenue

First, Defendants contend the challenged statements are immaterial as a matter of law based on their revenue projections.  Defendants argue they missed their 2019 revenue projections by 1.58% to 3.5% and this is immaterial as a matter of law, citing In re Apple Computer, Inc., 127 F. App'x 296, 304 (9th Cir. 2005).  [Dkt. No. 56, p. 25].  Defendants argue Merit missed the low-end of its February 2019 projections for Cianna and ClariVein by only $3 million, constituting only 0.3% of Merit's projected and actual 2019 revenue. [Id., pp. 25-26].  Defendants also argue that Cianna and ClariVein products accounted for

approximately 5% and 1% of Merit's actual 2019 revenue, respectively; a small amount of Merit's actual 2019 revenue of approximately $995 million.  [Id., p. 26].

In response, Plaintiffs aver ClariVein's sales were so poor that Merit missed its 2019 revenue guidance for the product by 30%, demonstrating materiality.  [Dkt. No. 58, p. 24].  Plaintiffs also argue that the revenue shortfall was highly material as evidenced by Merit's slashed guidance.  In addition to the drop in its stock price, the CAC alleges, "As a result of Merit's failed Cianna and Vascular Insights deals, Merit (i) slashed its 2019 revenue guidance by approximately $27 million at the midpoint; (ii) cut its revenue guidance for "non-core" products, which included ClariVein and Cianna, by approximately 20%; and (iii) withdrew entirely its guidance for 2020."  [Dkt. No. 53, ¶ 142].

Defendants are correct that the Ninth Circuit has held that revenue projections that are missed by 10% or less are not generally actionable.  In re Apple, 127 F. App'x at 304; In re Convergent Techs. Sec. Litig., 948 F.2d 507, 514 (9th Cir. 1991) (noting quarter revenues declined "but only by approximately 10%").  Here, during a February 26, 2019 investor call, Parra gave annual revenue guidance of $1.01 billion to $1.03 billion for the company.  [Dkt. No. 56-2, p. 4].  As reported in Defendants' Form 10-K, their net sales for 2019 were $994.9 million.  [Id., pp. 223-224].  Looking to the two product lines at issue, Defendants gave revenue guidance for Cianna of $50 million to $56 million for 2019, and later reported net sales of $55.8 million, meeting their revenue guidance.  [Id., pp. 14, 227].  On the other hand, having given ClariVein revenue guidance of $10 million to $11 million and eventually reporting $7.5 million in net sales for Vascular Insights products, Defendants missed their revenue guidance for ClariVein by 25% to 32%.  [Id., pp. 14, 226].

22

Importantly, Plaintiffs challenged statements alleged in the CAC are much broader than simply statements about 2019 revenue guidance.  This Court cannot find, on this record, that the entirety of Plaintiffs challenged statements are immaterial as a matter of law based on 2019 revenues.

> b.      Statements of Corporate Optimism

Next, Defendants aver that certain of the challenged statements were corporate optimism that are immaterial as a matter of law.  [Dkt. No. 56, pp. 24-25 (listing eleven specific statements)].  Defendants contend that "[s]tatements of mere corporate puffery, vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers, are not actionable because professional investors, and most amateur investors as well, know how to devalue the optimism of corporate executives."  Id. (citing In re Cutera Securities Litigation, 610 F.3d 1103, 1111 (9th Cir. 2010)) (internal quotation marks omitted).  Defendants argue that many of Plaintiffs' claims are "classic corporate puffery," including statements that Defendants were "pleased with the transition," the integration was "going as well as could be expected," "everything is working quite nicely," among other challenged statements.  [Dkt. No. 56, pp. 24-25].  In turn, Plaintiffs contend courts regularly sustain such statements as highly material to investors, citing cases in which district courts in California found similar statements were not puffery.  [Dkt. No. 58, p. 22].

The Court agrees with Defendants that these challenged statements were corporate optimism.  Defendants point to statements such as, "We are very pleased", "Everything is working quite nicely", and "We're generally satisfied with the overall business", as mere statements of corporate optimism.  [Dkt. No. 56, pp. 24-25].  The eleven identified statements, of which these are examples, are all similar.  A "mildly optimistic, subjective

23

assessment" is insufficient to meet the materiality requirement of Rule 10b-5. Cutera, 610 F.3d at 1111; see also Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc., 759 F.3d 1051, 1060 (9th Cir. 2014). Indeed, a reasonable investor could have understood Defendants' statements, by the CEO and CFO of the company, as optimistic and subjective assessments. Plaintiffs do not allege facts showing otherwise, and do not provide binding authority to find otherwise. Moreover, the cases cited by Plaintiff are distinguishable on their facts. See Union Asset Mgmt. Holding AG v. SanDisk LLC, 2017 WL 3097184, at *1-2 (N.D. Cal. June 22, 2017) (stating that investors would want to know the defendant company missed its internal sales forecast by a "wide margin, with sales coming in 34 to 50% lower than projected," given that the company tried to assure investors it would bounce back from certain negative events); Roberts v. Zuora, Inc., 2020 WL 2042244, at *9-10 (N.D. Cal. Apr. 28, 2020) (noting plaintiffs specifically alleged that defendants did not have a reasonable basis to believe their optimistic statements because they were aware of undisclosed facts). Therefore, the alleged statements were corporate puffery that are not actionable.

### 3. Strong Inference of Scienter

Defendants also seek dismissal of the CAC on the basis that Plaintiffs failed to plead a strong inference of scienter. The PSLRA requires that the complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). This requirement means plaintiffs must plead the defendants engaged in knowing or intentional misconduct, or reckless conduct that is deliberate. South Ferry LP, No. 2 v. Killinger, 542 F.3d 776, 782 (9th Cir. 2008). In determining whether there is a "strong inference" of scienter, "a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences

favoring the plaintiff." <u>Tellabs</u>, 551 U.S. at 323-24.  The inference of scienter must be more than "merely reasonable . . . it must be cogent and compelling, thus strong in light of other explanations." <u>Id.</u> at 324.  "Omissions and ambiguities count against inferring scienter," but the court must "not scrutinize each allegation in isolation." <u>Id.</u> at 326.  Instead, the court must view the complaint "holistically." <u>Id.</u>  A complaint survives a motion to dismiss, "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." <u>Id.</u> at 324.

Defendants argue the CAC is devoid of any particularized facts about the Individual Defendants' states of mind.   To support a strong inference of scienter, the CAC alleges facts related to the following: (1) the importance of the Cianna and Vascular Insights acquisitions to Merit's "growth strategy"; (2) Lampropoulos and Parra's access to and receipt of real-times sales information, and their attendance at meetings providing relevant sales information; and (3) that Lampropoulos and Parra were informed that insurance companies were not providing reimbursements for ClariVein and regulations prevent Merit from marketing ClariVein for treatment of varicose veins.  [Dkt. No. 53, ¶¶ 182-201].  Defendants assert, despite these allegations, Plaintiffs have failed to plead sufficiently particularized facts about the Individual Defendants' states of mind and argue that Lampropoulos' stock sales do not support scienter.  [Dkt. No. 56, pp. 26-33].  Defendants contend the CAC fails to allege facts showing that Lampropoulos and Parra knew at the time they made any alleged misstatements that it was false.  [Dkt. No. 56, p. 26].

The Court disagrees.  The CAC, when viewed holistically, contains sufficient allegations to support a strong inference of scienter.  The CAC contains extensive factual

25

allegations that the two acquisitions were an important part of Merit's business strategy to grow revenue; that Merit and the Individual Defendants were actively and regularly made award of sales data and sales problems; that the ClariVein insurance reimbursement and regulatory/marketing issues were sufficiently serious and directly communicated to Merit's executive sales force; and that Lampropoulos was so actively involved with the sales force and data that there is no way he did not know there were two significant barriers to ClariVein sales.  The CAC alleges that when the accurate information was disclosed, Defendants' stock price tumbled and Merit was forced to slash its 2019 guidance and withdrew the guidance for 2020.  [Dkt. No. 53, CAC, ¶¶ 53, 62, 111, 142, 199)].

Though Defendants parse the extensive allegations to pinpoint holes, however, a complaint survives a motion to dismiss as to scienter, "if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." Tellabs, 551 U.S. at 323-24.  Defendants do not proffer any other opposing inference that could be drawn from the alleged facts.  Here, the extensive allegations provide a strong, cogent inference of scienter.  Because Plaintiff adequately alleges facts sufficient to state a strong inference of scienter, the Court need not make any determination regarding whether the specific insider stock sales alleged in this case are sufficient, alone, to allege scienter.  Viewed holistically and considering all reasonable inferences, as required on a motion to dismiss, the CAC sufficiently pleads a strong inference of scienter.

### 4.     Loss Causation

The Motion seeks dismissal of the CAC on the basis that Plaintiffs fail to adequately plead loss causation as required by Section 10(b).  [Dkt. No. 56, pp. 33-35].  To

successfully plead loss causation, a plaintiff must demonstrate a causal connection between the deceptive acts that form the basis of the complaint and the injury suffered by the plaintiff.  In re Daou Systems, Inc., 411 F.3d 1006, 1022-23 (9th Cir. 2005).   The misrepresentation need not be the sole reason for the decline in value of the securities, but it must be a "substantial cause."  Id.  Courts have found that it is normally inappropriate to rule on loss causation at the pleading stage.  In re Gilead, 536 F.3d 1049, 1057 (9th Cir. 2008).  So long as the complaint alleges facts that plausibly establish loss causation, a Rule 12(b)(6) dismissal is inappropriate.  Id.  This is not a "probability requirement . . . it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of loss causation."  Id. (citing Bell Atl., 127 S. Ct. at 1965).

Defendants argue the CAC fails to properly allege loss causation because Merit's corrective disclosures, on July 25, 2019 and October 30, 2019, did not reveal the truth of the alleged false and misleading statements.  [Dkt. No. 56, p. 33].  Defendants focus on whether the disclosure "revealed the truth" of the statements at issue, relying on Metzler, Inv. GMBH v. Corinthian Colleges, Inc., 540 F.3d 1049, 1062 (9th Cir. 2008).  [Dkt. No. 56, p. 33]; id. ("[T]he complaint must allege the defendants share price fell significantly after the truth became known." (citation and internal quotation marks omitted)).  On a motion to dismiss, however, the Court does not consider whether the alleged corrective disclosures revealed "the truth", but rather whether the complaint sufficiently sets forth allegations that "if assumed true, are sufficient to provide [the defendant] with some indication the drop in [defendant's] stock price was causally related to [the defendant's] financial misstatement[s]."  Metzler, 540 F.3d at 1062 (quoting Daou, 411 F.3d at 1026).

27

The CAC sufficiently pleads loss causation with respect to Defendants' allegedly misleading statements.  Plaintiffs allege Merit's stock price dropped by 25.25% after the July 25, 2019 Investor Call in which Defendants disclosed Merit had not received any orders for ClariVein and Cianna's sales force suffered attrition.  [Dkt. No. 53, ¶¶ 204, 207].  Moreover, Plaintiffs allege Merit's stock fell by 29% following the October 30, 2019 disclosures that Cianna and Vascular Insights were not performing as expected.  [Id. ¶¶ 211-12].  The CAC alleges the decline in Merit's stock price were a "direct result" of Defendants' alleged misrepresentations being revealed, and Lead Plaintiffs and other class members would not have purchased Merit's securities had Defendants disclosed truthful information regarding the acquisitions of Cianna and Vascular Insights.  [Id. ¶ 215].  Plaintiffs successfully plead a causal connection between Defendants' allegedly deceptive acts and the injury suffered by Plaintiffs.  Therefore, the CAC adequately pleads loss causation.

Although the CAC includes some allegations related to inactionable corporate optimism and puffery, it contains sufficient allegations to state a claim for securities fraud against all Defendants.  The Motion, as it relates to Claim One, should be denied.

### B.     Claim Two: Control Person Liability (Section 20(a))

The Motion also seeks dismissal of the CAC on the basis that Plaintiffs insufficiently allege control-person liability against the Individual Defendants, as required by Section 20(a) of the Exchange Act.  [Dkt. No. 56, p. 35].  Section 20(a) of the Exchange Act provides that: "Every person who, directly or indirectly, controls any person liable under any provision of this chapter . . . shall also be liable jointly and severally with and to the extent as such controlled person to any person to whom such controlled person is liable . . . ."  15 U.S.C. § 78t.  Thus, a successful prima facie case under Section 20(a)

alleges (1) a primary violation of federal securities laws and (2) that the defendant exercised actual power or control over the primary violator.  Howard v. Everex Systems, 228 F.3d 1057, 1065 (9th Cir. 2000).  "Section 20(a) claims may be dismissed summarily . . . if a plaintiff fails to adequately plead a primary violation of section 10(b)."  Zucco Partners, LLC v. Digimarc Corp., 552 F.3d 981, 990 (9th Cir. 2009), as amended (Feb. 10, 2009).

Defendants contend Plaintiffs have failed to adequately allege a primary violation of the securities laws, for the reasons described throughout the Motion, and thus the control-person claim must be dismissed.  [Dkt. No. 56, p. 35].  Because the Court disagrees and has determined that Plaintiffs have sufficiently pled a 10(b) claim, Plaintiffs' Section 20(a) claim also is sufficiently pled.  The Motion, as it relates to Claim Two, should be denied.

## VI.   RECOMMENDATION

For the reasons stated, it is recommended that the District Judge issue an Order, as follows: (1) accepting this Report and Recommendation; and (2) denying Defendants' Motion to Dismiss.

Dated:  March 16, 2021

_____/s/ Autumn D. Spaeth_____
THE HONORABLE AUTUMN D. SPAETH
United States Magistrate Judge

29