Paul R. Bessette (Bar No. 139675)
pbessette@kslaw.com
Michael J. Biles (Bar No. 186600)
mbiles@kslaw.com
Joseph N. Akrotirianakis (Bar No. 197971)
jakro@kslaw.com
KING & SPALDING LLP
633 West Fifth Street, Suite 1600
Los Angeles, CA 90071
Tel: (213) 443-4355

S. Saliya Subasinghe (*pro hac vice*)
ssubasinghe@kslaw.com
KING & SPALDING LLP
500 W. 2nd Street, Suite 1800
Austin, TX 78701
Tel: (512) 457-2000

*Counsel for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | Case No. 8:19-cv-02326-DOC-ADS<br>*[Honorable David O. Carter]*<br><br>DEFENDANTS' WRITTEN OBJECTIONS TO THE MARCH 16, 2021 REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE AUTUMN D. SPAETH<br><br>Date: None Set<br>Time: Under Submission<br>Place: Courtroom 9D<br><br>Complaint Filed: June 30, 2020<br>Trial Date: None Set |

# **TABLE OF CONTENTS**

POINTS AND AUTHORITIES ................................................................................................ 1

INTRODUCTION ............................................................................................................... 1

LEGAL STANDARD ........................................................................................................... 3

ARGUMENT ..................................................................................................................... 3

I.      THE CHALLENGED STATEMENTS ABOUT THE ACQUISITIONS OF CIANNA
        AND CLARIVEIN ARE NOT ACTIONABLE BECAUSE THE MISSED SALES
        FROM THESE PRODUCTS WERE IMMATERIAL TO MERIT'S 2019 REVENUE. ............ 3

II.     PLAINTIFFS HAVE FAILED TO PLEAD A STRONG INFERENCE OF SCIENTER
        BECAUSE THE CAC IS DEVOID OF ANY PARTICULARIZED FACTS ABOUT
        LAMPROPOULOS'S OR PARRA'S STATE OF MIND. ....................................................... 6

CONCLUSION ................................................................................................................... 13

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Apple Computer, Inc.*,
127 F. App'x 296 (9th Cir. 2005) .................................................................................4, 7, 9

*Avratin v. Bermudez*,
420 F. Supp. 2d 1121 (S.D. Cal. 2006) .............................................................................3

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988)...........................................................................................................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)...........................................................................................................3

*In re Convergent Techs. Sec. Litig.*,
948 F.2d 507 (9th Cir. 1991)..............................................................................................4

*In re Cutera Sec. Litig.*,
610 F.3d 1103 (9th Cir. 2010)..........................................................................................11

*In re Daou Sys., Inc.*,
411 F.3d 1006 (9th Cir. 2005).............................................................................................7

*Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*,
896 F.2d 507 (11th Cir. 1990)............................................................................................3

*Gompper v. VISX, Inc.*,
298 F.3d 893 (9th Cir. 2002)..............................................................................................6

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007)............................................................................12

*Metzler Inv. GMBH v. Corinthian Colleges, Inc.*,
540 F.3d 1049 (9th Cir. 2008)............................................................................................7

*Nathanson v. Polycom, Inc.*,
87 F. Supp. 3d 966 (N.D. Cal. 2015) ...............................................................................10

*In re NVIDIA Corp. Sec. Litig.*,
768 F.3d 1046 (9th Cir. 2014)............................................................................................7

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

*Patel v. Parnes,*
    253 F.R.D. 531 (C.D. Cal. 2008) ............................................................................................ 5

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.,*
    759 F.3d 1051 (9th Cir. 2014) ..................................................................................... 6, 9, 10

*Ronconi v. Larkin,*
    253 F.3d 423 (9th Cir. 2001) ................................................................................................ 12

*In re Silicon Graphics Inc. Sec. Litig.,*
    183 F.3d 970 (9th Cir. 1999) .................................................................................................. 7

*South Ferry LP, No. 2 v. Killinger,*
    542 F.3d 776 (9th Cir. 2008) .................................................................................................. 7

*Tabak v. Canadian Solar Inc.,*
    549 F. App'x 24 (2d Cir. 2013) .......................................................................................... 5, 6

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.,*
    551 U.S. 308 (2007) ............................................................................................................. 6, 7

*In re Vantive Corp. Sec. Litig.,*
    283 F.3d 1079 (9th Cir. 2002) ............................................................................................... 7

*In re Vantive,*
    110 F. Supp. 2d 1209, 1216 N.D. Cal. 2000 .................................................................... 12

*Webb v. SolarCity Corp.,*
    884 F.3d 844 (9th Cir. 2018) ............................................................................................. 7, 8

*Wenger v. Lumisys, Inc.,*
    2 F. Supp. 2d 1231 (N.D. Cal. 1998) .................................................................................. 4

*Wietschner v. Monterey Pasta Co.,*
    294 F. Supp. 2d 1102 (N.D. Cal. 2003) ............................................................................. 9

*Zucco Partners, LLC v. Digimarc Corp.,*
    552 F.3d 981 (9th Cir. 2009) ................................................................................... 9, 10, 12

**Statutes**

28 U.S.C. § 636(Jurisdiction, powers, and temporary assignment) ...................................... 3

15 U.S.C. § 78u-4(b) (PSLRA) ................................................................................................ 3, 7, 12

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

15 U.S.C. § 78j(n) (Section 10(b)) ............................................................................................... 1

**Other Authorities**

Fed. R. Civ. P. 72(b)(2) ............................................................................................... 1

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

**POINTS AND AUTHORITIES**

Defendants Merit Medical Systems, Inc., Fred P. Lampropoulos, and Raul Parra (collectively, "Defendants") respectfully submit these written objections to the March 16, 2021 Report and Recommendation of Magistrate Judge Autumn D. Spaeth (the "Report") (Dkt. No. 69) under Federal Rule of Civil Procedure 72. *See* Fed. R. Civ. P. 72(b)(3) (requiring the district court make a de novo determination upon the record of any portion of the magistrate judge's disposition to which specific written objection has been made). Although the Court entered an Order Accepting the Report on March 29, 2021 (Dkt. No. 69), Defendants had until March 30, 2021 to file and serve these written objections under the Notice of Filing of the Report. *See* Dkt. No. 68; *see also* Fed. R. Civ. P. 72(b)(2) ("Within 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.").

**INTRODUCTION**

The Report *correctly* found that about 40% of Defendants' statements challenged in the Consolidated Class Action Complaint ("CAC") (Dkt. No. 53) are inactionable puffery.

Defendants *object* to certain of the Report's conclusions and recommendations that are plainly contrary to well-settled Ninth Circuit law and based on allegations that are plainly contrary to the public record. These objections focus on two elements of Section 10(b), as to which the Report contains errors of law: materiality and scienter.

*Errors with Respect to Materiality*

1.    Plaintiffs allege that Defendants made false statements about Merit's acquisitions of Cianna and ClariVein between February and July 2019, causing Merit to miss its annual revenue guidance of $1.01 billion to $1.03 billion by a mere $6.2 million (0.6%). These alleged statements are *immaterial* as a matter of law. Report at 23. The only relevance to investors of information concerning the Cianna and ClariVein acquisitions was their potential impact on Merit's financial performance. The record plainly shows that the missed sales from Cianna and ClariVein products were immaterial to Merit's financial performance, given that Merit essentially met its projected 2019 sales of Cianna products

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

and missed projected ClariVein sales by a mere $2.5 million. *See id.* at 22. This represents **0.2%** of Merit's projected revenue for 2019—a miniscule figure that under binding Ninth Circuit law is *immaterial* as a matter of law.

2.    The Report is also erroneous in that it *fails* to recognize that Merit disclosed in its SEC filings that it recorded $3.2 million in ClariVein sales in the first six months of 2019. *See id.* at 20–21. Because Plaintiffs' materiality argument concerning the ClariVein acquisition is based almost entirely on the false allegation that Merit did not record any ClariVein sales in the first half of 2019, the Court should find that Plaintiffs failed to plead materiality as a matter of law.

*Errors with Respect to Scienter*

3.    The Report is also erroneous in that it accepts Plaintiffs' *conclusory* interpretation of Lampropoulos's statement that the "Cianna transition is complete" as evidence that Defendants misstated the progress of the Cianna acquisition. *Id.* at 4.  The Report ignores the full context of the statement, in which Lampropoulos explained exactly what he meant by "transition"—namely, that Merit was now shipping and billing for Cianna's products from its own facilities.  Lampropoulos never stated that all the work necessary to fully integrate Cianna's employees, controls and processes was complete. There was no misstatement at all, much less a material one.

4.    Finally, well settled Ninth Circuit law makes clear Plaintiffs have failed to plead *facts* raising a strong inference of scienter.  Plaintiffs do not identify *any* internal documents or witness statements that show that each defendant knew (or was severely reckless in not knowing) that each challenged statement was false or misleading when made.  Rather, the Report's "holistic" approach amalgamates insufficient allegations that have been rejected repeatedly by courts in the Ninth Circuit—namely, general allegations that the Cianna and ClariVein mergers were important and that Defendants were involved and closely monitored sales. *See id.* at 24–26. A "holistic" approach must recognize that the CEO and CFO of an international corporation with hundreds of products, thousands of employees and a billion dollars in revenue cannot possibly know all the details of business

units that comprise less than 5% (Cianna) and 1% (ClariVein) of total sales. The facts alleged in the CAC do not raise a compelling and cogent inference that Lampropoulos and Parra knew that their statements were false or misleading when made.

## LEGAL STANDARD

After conducting a careful and complete review of the findings and the recommendation, a district judge may accept, reject, or modify a magistrate judge's report and recommendation. *Avratin v. Bermudez*, 420 F. Supp. 2d 1121, 1122 (S.D. Cal. 2006). A district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(c). This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party." *Jeffrey S. ex rel. Ernest S. v. State Bd. of Educ. of Ga.*, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. Rep. 94-1609, at 6163 (1976), *reprinted in* 1976 U.S.C.C.A.N. 6162).

The Report should be vacated and the motion to dismiss granted because Plaintiffs have failed to allege facts sufficient to satisfy the heightened pleading requirements of the Private Securities Litigation Reform Act. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (Where a complaint does not contain factual allegations adequate to raise a right to relief above the speculative level—that is, to plead a plausible entitlement to relief—it must be dismissed.).

## ARGUMENT

**I. The challenged statements about the acquisitions of Cianna and ClariVein are not actionable because the missed sales from these products were immaterial to Merit's 2019 revenue.**

The Court should dismiss the CAC because it fails to plead that Defendants made *material* misstatements concerning Merit's 2018 acquisitions of Cianna and Vascular Insights' ClariVein product line. Plaintiffs claim that Defendants knew that Merit's 2019 revenue guidance in the range of $1.01 billion to $1.03 billion was unattainable because of alleged undisclosed problems with these acquisitions. *See* CAC ¶¶ 154, 171, 180. But Merit

3

missed the low-end of its 2019 revenue projection by only $16 million or 1.58%.[1] Missing revenue projections by a few percentage points is immaterial as a matter of law under binding Ninth Circuit precedent. *See In re Apple Computer, Inc.*, 127 F. App'x 296, 304 (9th Cir. 2005) (internal quotation marks and alterations omitted) (collecting cases) ("The law recognizes that companies should be given leeway when their forecasts are evaluated because by their very nature, forecasts are imprecise. We held that projections which are missed by 10% or less are not generally actionable. Indeed, we have held that a revenue estimate that was missed by approximately 10% was immaterial as a matter of law."); *see also In re Convergent Techs. Sec. Litig.*, 948 F.2d 507, 514 (9th Cir. 1991).

The impact of Cianna and ClariVein products on Merit's 2019 revenue is immaterial for two reasons. *First*, Merit missed the low-end of its February 2019 projections[2] for these products by *only* $3 million combined (Cianna by $470,000 and ClariVein by $2.5 million).[3] This shortfall constitutes *only* **0.3%** of Merit's projected and actual 2019 revenue.[4] *See Wenger v. Lumisys, Inc.*, 2 F. Supp. 2d 1231, 1249 (N.D. Cal. 1998) ("These projections are not actionable because Lumisys' results were pretty much what Lumisys had allegedly predicted. The difference between the projected sales of $25 million and actual sales of

---

[1] Ex. 15, 2019 10-K at 40. Merit missed the high-end of its 2019 revenue projection by only $36 million or 3.5%. "Ex. __" refers to documents attached to the Bessette Declaration (Dkt. Nos. 56–1, 56–2).

[2] Merit projected 2019 sales of Cianna products between $50 million to $55 million, and sales of Vascular Insights products between $10 million to $11 million. Merit's actual 2019 sales of Cianna products was approximately $49.5 million and its sales of Vascular Insights products was $7.5 million. Br. at 1:22–25. "Br." refers to Defendants' Memorandum of Points and Authorities in support of their Motion to Dismiss (Dkt. No. 56).

[3] Although Parra stated that "[b]oth Cianna and ClariVein fell behind by $4 million and $3 million, respectively" (Ex. 10, Oct. 30, 2019 Earnings Call at 2), Cianna and ClariVein sales in 4Q19 appear to have picked up considerably for these products and the ultimate shortfall for 2019 was only $3 million, not the $7 million Parra estimated in October 2019 (Ex. 15, 2019 10-K at 70–71).

[4] Merit missed its July 2019 guidance for these products by only $970,000, which constitutes a shortfall of *only* **0.1%** of Merit's 2019 total revenue. Ex. 7, July 25, 2019 Earnings Call at 2.

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

$23,002,000 million is insignificant."); *see also Patel v. Parnes*, 253 F.R.D. 531, 548 (C.D. Cal. 2008) (For an alleged misrepresentation to be "material, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the total mix of information made available.") (internal quotation marks omitted) (quoting *Basic Inc. v. Levinson*, 485 U.S. 224, 231–32 (1988)). *Second*, Cianna and ClariVein products contributed such a small portion of Merit's total annual sales—Cianna and ClariVein products accounted for approximately 5% and 1% respectively of Merit's actual 2019 revenue of approximately $995 million. *See Tabak v. Canadian Solar Inc.*, 549 F. App'x 24, 27 (2d Cir. 2013) (holding alleged misrepresentations "immaterial as a matter of law" because they pertained to "only a small portion of [the company's] total operations").

The Report notes "Defendants are correct that the Ninth Circuit has held that revenue projections that are missed by 10% or less are not generally actionable." Report at 22:12–13. The Report also acknowledges that Merit essentially met its revenue guidance for Cianna,[5] while missing its low-end revenue guidance for ClariVein by $2.5 million. *Id.* at 22:19–23. Nevertheless, the Report finds that "Plaintiffs['] challenged statements alleged in the CAC are much broader than simply statements about 2019 revenue guidance," and then holds that it "cannot find, on this record, that the entirety of Plaintiffs challenged statements are immaterial as a matter of law based on 2019 revenues." *Id.* at 23:1–4. This conclusion is simply wrong. All the challenged statements in the CAC concern the impact of the Cianna and ClariVein sales on 2019 revenue. *See, e.g.*, CAC ¶¶ 148–80. Plaintiffs' central theory is that Defendants knew that Merit could not meet its 2019 revenue guidance because of undisclosed problems with the Cianna and ClariVein acquisitions that impeded sales of these products. *See* CAC ¶¶ 2–12. Defendants' statements concerning the retention of Cianna's salesforce and the progress of the integration of the Cianna acquisition were

---

[5] The Report makes a typographical error noting that Merit reported net sales of $55.8 million for Cianna products. Report at 22:19–20. Merit reported approximately $49.5 million in net sales for Cianna products in 2019. Br. at 6:15-16.

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

only relevant to shareholders because they had the potential to adversely impact Merit's financial results. But as the Report correctly notes, this did not happen—Merit essentially met its projected sales for Cianna products in 2019. Report at 22. Thus, the record before the Court is clear: any problems with the retention of Cianna salespeople or the integration of Cianna did not have a material impact on Merit. Accordingly, the challenged statements concerning Cianna are immaterial as a matter of law under Ninth Circuit law.

While it is true that Merit missed its projected 2019 sales of ClariVein products by $2.5 million, this represents a tiny fraction (**0.2%**) of the low-end of Merit's projected 2019 revenue of $1.01 to $1.03 billion. Report at 22. Magistrate Spaeth viewed this as material because "Defendants missed their revenue guidance for ClariVein by 25% to 32%." *Id.* But this fails to place these numbers in context—ClariVein was anticipated to contribute just 1% of Merit's total sales. Plaintiff is a shareholder of Merit—not Vascular Insights–and ClariVein is one of more than 16,000 separate product SKUs Merit currently offers. It is Merit's financial performance that is the relevant benchmark for materiality—not the isolated sales of ClariVein. The Report cited no authority, because there is none, to justify deviating from controlling Ninth Circuit authority. *See id.* at 22–23.

II. **Plaintiffs have failed to plead a strong inference of scienter because the CAC is devoid of any particularized facts about Lampropoulos's or Parra's state of mind.**

The Court should independently dismiss the CAC because Plaintiffs have failed to plead the necessary strong inference that each defendant acted with scienter.[6] To plead a

---

[6] A "strong inference" of scienter is one that is "more than merely plausible or reasonable"—it must be "powerful," "cogent," "and at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007). Under this comparative approach, the Court must weigh all competing facts and inferences, including those that are unfavorable to plaintiffs because they undercut or suggest alternatives to an inference of fraud. *Id.*; *Gompper v. VISX, Inc.*, 298 F.3d 893, 897 (9th Cir. 2002). Allegations that "at best establish mere recklessness or a motive to commit fraud and opportunity to do so [are] not independently sufficient" to raise "a strong inference of scienter." *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1062 (9th Cir.

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

strong inference of scienter, Plaintiffs must allege specific facts for each Individual Defendant that indicate what, how and when he knew the relevant information. *See In re Apple*, 127 F. App'x at 303 (Plaintiffs cannot plead a CEO's scienter when "they fail to allege with specificity when [CEO] learned this information, exactly what information was conveyed to [CEO] or that [CEO] knew the extent of the problems."). The PSLRA requires "specifics or corroborating details of time, persons, places and subjects." *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1091 (9th Cir. 2002), abrogation on other grounds recognized in *South Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 784 (9th Cir. 2008).

Here, the CAC fails to allege facts showing that Lampropoulos and Parra knew at the time they made any alleged misstatement that it was false. Plaintiffs do not marshal particularized contemporaneous facts showing that either Defendant had any information—whether via internal documents, meetings, or otherwise—indicating that he knew or recklessly disregarded that any challenged statement was false or misleading when made.[7] Plaintiffs do not identify a single document or witness that puts Lampropoulos or Parra on notice that any of their statements was false or misleading when made.[8] Instead,

---

2014). The "**bar set by *Tellabs* is not easy to satisfy**[.]" *Webb v. SolarCity Corp.,* 884 F.3d 844, 855 (9th Cir. 2018) (emphasis added).

[7] *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970 (9th Cir. 1999); *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1053 (9th Cir. 2014) (defining recklessness "as a highly unreasonable omission, involving . . . an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers . . . that is either known to the defendant or is so obvious that the actor must have been aware of it").

[8] Although Plaintiffs rely on more than a dozen anonymous sources, not one of these individuals states that he or she had a conversation or shared a document with an Individual Defendant that placed him on notice that he made a false statement. While Ninth Circuit precedent does not require a "smoking gun," it does *require* plaintiffs to identify *specific facts* that present a cogent and compelling inference that a defendant knew that his statement was materially misleading. *See Metzler Inv. GMBH v. Corinthian Colleges, Inc.*, 540 F.3d 1049, 1065–66 (9th Cir. 2008). It is the quality, not the quantity, of the sources that matter. Here, Plaintiffs' sources merely provide generalized facts that would apply to every diligent CEO and CFO (*i.e.*, regularly attended meetings, closely monitored sales, and the like). This is plainly insufficient. *See In re Daou Sys., Inc.*, 411 F.3d 1006, 1022 (9th Cir. 2005) ("General allegations of defendants' 'hands-on' management style, their interaction with other

---

7

Plaintiffs make only a series of inadequate, generalized scienter allegations. CAC ¶¶ 104, 122, 119-20, 141, 184–85, 188, 190-97.

But the Report found that the "CAC, when viewed holistically, contains sufficient allegations to support a strong inference of scienter" because the "CAC contains extensive factual allegations that": (1) "the two acquisitions were an important part of Merit's business strategy to grow revenue"; (2) "Merit and the Individual Defendants were actively and regularly made award of sales data and sales problems"; (3) "the ClariVein insurance reimbursement and regulatory/marketing issues were sufficiently serious and directly communicated to Merit's executive sales force"; and (4) "Lampropoulos was so actively involved with the sales force and data that there is no way he did not know there were two significant barriers to ClariVein sales." Report at 25:23–26:7.  The Report also notes the "CAC alleges that when the accurate information was disclosed, Defendants' stock price tumbled and Merit was forced to slash its 2019 guidance and withdrew the guidance for 2020. Report at 26:7–9.  These findings are contrary to Ninth Circuit law.

*First*, Ninth Circuit law is clear that the CAC's allegations about the "importance of the Cianna and Vascular Insights acquisitions to Merit's 'growth strategy,'" *id.* at 25:11–12, do not raise an inference of scienter that Individual Defendants were "deliberately reckless in falsely presenting the businesses performance," CAC ¶¶ 184–85, 191.  Plaintiffs do not and cannot allege facts supporting the inference that the impact of the sales of Cianna or ClariVein products on Merit's financials was so dramatic that it would be *absurd* to think that either Individual Defendant did not know that something was wrong. *See Webb v. SolarCity Corp.*, 884 F.3d 844, 857 (9th Cir. 2018) ("SolarCity's sales division is a relatively minor portion of the company's overall business. In 2012 and 2013, for example, cash sales accounted for less than 10% of installations per year."). As previously established, Cianna (5%) and Vascular Insights (1%) products were forecasted to contribute just 6% of Merit's 2019 revenue.

officers and employees, their attendance at meetings, and their receipt of unspecified weekly or monthly reports are insufficient" to show scienter.).

*Second*, Ninth Circuit law is also clear that the CAC's generalized allegations that Individual Defendants attended meetings and had access to and received real-time sales information is insufficient because having access to or receiving reports with sales data or attending meetings does not raise a strong inference of scienter (Br. at 20:16–21:12). *See Intuitive Surgical*, 759 F.3d 1063 ("Mere access to reports containing undisclosed sales data is insufficient to establish a strong inference of scienter."); *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 1000 (9th Cir. 2009) (finding "allegations that senior management ... closely reviewed the accounting numbers generated ... each quarter ... and that top executives had several meetings in which they discussed quarterly inventory numbers" insufficient to establish scienter); *cf. Apple*, 127 F. App'x at 301 ("Mere access to contradictory information is insufficient to allege the deliberate recklessness required.").

*Third*, the Report's finding—that "the ClariVein insurance reimbursement and regulatory/marketing issues were sufficiently serious and directly communicated to Merit's executive sales force"—lacks factual support. Report at 26:3–5. As an initial matter, the communication of any such issues "directly . . . to Merit's executive sales force" does not— *as a matter of law*—impute such knowledge to the Individual Defendants. *See id.* at 26:4–5; *see also Wietschner v. Monterey Pasta Co.*, 294 F. Supp. 2d 1102, 1115 (N.D. Cal. 2003) (Dismissal is warranted where plaintiffs fail to "allege[] any particular facts . . . which could impute any knowledge or deliberate recklessness to the individual Defendants."). Plaintiffs claim that Lampropoulos and Parra knew the challenged statements about ClariVein products were false because they were informed that insurance companies were not providing reimbursements for ClariVein and that regulations prevented Merit from marketing ClariVein for the treatment of varicose veins. CAC ¶¶ 196–97. These conclusory allegations fail because Plaintiffs do not identify a single witness that "specifically and directly told" Lampropoulos or Parra that "payors were not reimbursing doctors for using ClariVein," despite their bold assertion. *See id.* ¶ 196 (citing ¶¶ 113–123). Plaintiffs merely allege that a witness explained that "Lampropoulos cannot credibly claim ignorance of these matters." *Id.* ¶ 122; *cf.* ¶¶ 119–120. But such a conclusory allegation does not meet

Plaintiffs' burden to raise a strong inference of scienter. *See Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 980 (N.D. Cal. 2015) (internal alterations and quotation marks omitted) (citing *Intuitive Surgical*, 759 F.3d at 1063) (rejecting scienter allegations that merely repeated "impressions from witnesses who lacked direct access to the CFOs but claim that the CFOs must have known of [the alleged misconduct] . . . without providing any first-hand knowledge regarding what the CFOs knew").

The CAC is also devoid of specific facts to support Plaintiffs' allegation that Lampropoulos "was specifically told about [the marketing] issue." CAC ¶¶ 128, 197 (A witness "reported that Lampropoulos met with … Merit's Chief Regulatory Officer and the Vice President of Regulatory and Clinical Affairs at Merit… to discuss the issue … [and] that Lampropoulos knew that Merit determined that it could not market ClariVein for its intended purpose, varicose veins, by February or March 2019."). This witness's statement lacks foundation because she does not state that she attended this meeting or provide any details about how she learned what was discussed in the meeting. Plaintiffs also fail to allege the critical details of when and where the alleged meeting took place and precisely what information was communicated to Lampropoulos. *See Zucco*, 552 F.3d at 995 ("[C]onfidential witnesses whose statements are introduced to establish scienter must be described with sufficient particularity to establish their reliability and personal knowledge," and all statements "reported by confidential witnesses with sufficient reliability and personal knowledge must themselves be indicative of scienter.").

*Fourth*, Plaintiffs' scienter allegations are substantially based on allegations that are demonstrably false.  For example, Plaintiffs allege that Merit did not have any ClariVein sales in the first six months of 2019. *See* CAC ¶¶ 129, 130, 169, 192 (alleging that Merit's 2019 sales guidance for ClariVein of $10 million to $11 million was materially false and misleading because "the Company disclosed zero ClariVein orders for the first half of 2019"); *cf.* Report at 19. This allegation is false and is based on a statement by

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

Lampropoulos that Plaintiffs take out of context.[9] *See In re Cutera Sec. Litig.*, 610 F.3d 1103, 1108 (9th Cir. 2010) (internal quotation marks and citation omitted) ("Although determining materiality in securities fraud cases should ordinarily be left to the trier of fact, conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim."). Merit reported approximately $3.2 million in ClariVein sales during the first half of 2019, and thus clearly received first half orders. *See* Ex. 9, 2Q19 10-Q at 12 (disclosing approximately $1.7 million and $3.2 million in ClariVein sales during the three and six-month periods that ended on June 30, 2019); *see also* Ex. 6, 1Q19 10-Q at 12.  Lampropoulos's statement—"[w]e haven't had an order all year because of pipeline filling from the former customer"—was in reference to a lack of orders from one large customer in South Korea.[10] Lampropoulos did not say that Merit failed to receive any ClariVein orders from any customer in the first half of 2019. *See* Report at 16–18.

Similarly, the Report improperly accepts as true Plaintiffs' allegation that Lampropoulos's statement that "[t]he Cianna transition is complete" was materially false and misleading because "50% of the items planned for the integration were not integrated by … April 2019." CAC ¶¶ 162–63 (citing Merit's April 23, 2019 8-K); Report at 18–19. Plaintiffs mischaracterize Lampropoulos's statement by taking it out of context and excluding his clarifying remarks. Lampropoulos did not say that Merit had fully "integrated" Cianna's processes and software into Merit. During the April earnings call,

---

[9] Plaintiffs allege that Lampropoulos "misrepresented and downplayed the true causes for the dearth of ClariVein orders during the first half of 2019" when he stated "[w]e haven't had an order all year because of pipeline filling from the former customer or fear by the distributor that somehow they wouldn't be able to keep it." CAC ¶ 175; Ex. 7, July 25, 2019 Earnings Call at 5.

[10] Ex. 7, July 25, 2019 Earnings Call at 9 ("One of the things that we have seen is like for instance -- and these with the smaller ones, but if you go to the Vascular Insights of the *ClariVein product.* In one situation Matt, *we just received an order from South Korea.* I mean, remember we close this deal in November-December, near the end of last year. And unfortunately, and I want to be careful about how I say this because there are other things that we have to do. But we just got our *first order* in one of *the largest franchises of that business*, and *that's because they took*—or *inventory was filled.*") (emphasis added).

---

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

Lampropoulos explained what he meant by the phrase "transition period": "So we're excited about, Cianna, we continue to believe it's a great opportunity and the fact that we are in fact through the transition period. By that I mean we are shipping inventory out of Salt Lake City and out of Richmond. We're doing all the billing." There are no facts that suggest Merit was not, in fact, shipping and billing for Cianna products in April 2019. [11]

*Finally*, the Report's reliance on a stock drop and hindsight allegations to support its scienter finding (Report at 26:7–9) is *contrary* to binding Ninth Circuit precedent, which establishes that hindsight allegations cannot raise a strong inference of scienter. *See Ronconi v. Larkin*, 253 F.3d 423, 430 (9th Cir. 2001); *see also In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1152 (C.D. Cal. 2007) (quoting *In re Vantive,* 110 F. Supp. 2d 1209, 1216 N.D. Cal. 2000)) (explaining that the PSLRA guards "against pleading fraud by hindsight because it forces plaintiffs to reveal whether they base their allegations on an inference of earlier knowledge drawn from later disclosures or from contemporaneous documents or other facts"). Moreover, the Report improperly conflates Loss-Causation analysis with its scienter analysis by referencing a stock drop to support its scienter finding. *See* Report at 28.

Accordingly, Plaintiffs' individual allegations do not raise the necessary strong inference of scienter, nor do they do so when viewed collectively and holistically. *See Zucco*, 552 F.3d at 1005, 1000 (affirming dismissal of securities-fraud complaint and rejecting plaintiffs' circumstantial evidence of scienter, which included stock sales by executives and the fact that the company revised its earnings statement). There is no plausible motive (as the alleged stock sales negate an inference of scienter due to their relative small size), and

---

[11] *See* Ex. 4, Apr. 23, 2019 Earnings Call at 3. Nowhere do Plaintiffs allege that Merit was not billing for Cianna's products or shipping them from Merit's facilities in Salt Lake City and Richmond at the end of April. Accordingly, they have not adequately alleged that Lampropoulos's statement about the "transition" of Cianna into Merit was false when made. *Cf.* Report at 3–6.

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION

Plaintiffs do not identify a contemporaneous document or witness demonstrating that Lampropoulos or Parra knew that any of their challenged statements was false when made.

## CONCLUSION

For the foregoing reasons and the reasons set forth in Defendants' motion-to-dismiss briefing (Dkt. Nos. 56, 60), the Court should grant Defendants' motion to dismiss.

Dated: March 30, 2021                    Respectfully submitted,

                                         /s/ Paul R. Bessette
                                         Paul R. Bessette
                                         Michael J. Biles
                                         Joseph N. Akrotirianakis
                                         S. Saliya Subasinghe
                                         King & Spalding LLP

                                         *Counsel for Defendants*

DEFENDANTS' OBJECTIONS TO THE REPORT AND RECOMMENDATION