**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone:   (858) 997-0860
Facsimile:    (858) 369-0096

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (SBN 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Class*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### SOUTHERN DIVISION

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | No. 8:19-cv-2326-DOC-ADS **LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE** Hearing Date and Time: None Set Courtroom: 9D Judge: David O. Carter |

## **Table of Contents**

I.   INTRODUCTION ...................................................................................1

II.  SUMMARY OF ALLEGATIONS .........................................................5

    A.   The Cianna and ClariVein Acquisitions ................................................5

    B.   Defendants Misrepresented Cianna's Integration and Sales Force Retention....................................................................................6

    C.   Defendants Misrepresented ClariVein's Performance and Sales ...........................................................................................................7

    D.   The Truth Emerges.................................................................................8

III. Judge Spaeth Correctly Found that Plaintiffs Sufficiently Plead Facts Demonstrating that Defendants' Misrepresentations and Omissions about the Cianna and ClariVein Acquisitions Were Material........................9

IV.  Judge Spaeth Correctly Found that the Complaint Pleads Particularized Facts Giving Rise to a Strong Inference of Scienter ...................................12

VI. CONCLUSION ...........................................................................................18

## Table of Authorities

**Page(s)**

**CASES**

*Baker v. SeaWorld Ent., Inc.*,
423 F. Supp. 3d 878 (S.D. Cal. 2019) ....................................................... 10, 11, 12

*Brown v. China Integrated Energy, Inc.*,
875 F. Supp. 2d 1096 (C.D. Cal. 2012)..................................................... 14, 15, 18

*In re Coinstar Inc. Sec. Litig.*,
2011 WL 4712206 (W.D. Wash. Oct. 6, 2011) ..................................................... 17

*Gammel v. Hewlett-Packard Co.*,
2013 WL 1947525 (C.D. Cal. May 8, 2013)......................................................... 14

*Ganino v. Citizens Utils. Co.*,
228 F.3d 154 (2d Cir. 2000) ................................................................................. 11

*Karinski v. Stamps.com, Inc.*,
2020 WL 281716 (C.D. Cal. Jan. 17, 2020)................................................... 13, 15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ............................................................................... 11

*Litwin v. Blackstone Grp., L.P.*,
634 F.3d 706 (2d Cir. 2011) ................................................................................ 11

*Longo v. OSI Sys., Inc.*,
2021 WL 1232678 (C.D. Cal. Mar. 31, 2021) ..................................................... 10

*New Mexico State Inv. Council v. Ernst & Young LLP*,
641 F.3d 1089 (9th Cir. 2011) ............................................................................. 15

*No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W.*
*Holding Corp.*,
320 F.3d 920 (9th Cir. 2003) ............................................................................... 10

*Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*,
380 F.3d 1226 (9th Cir. 2004)............................................................................. 14

*Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*,
759 F.3d 1051 (9th Cir. 2014)............................................................................. 16

*In re Qualcomm Inc. Sec. Litig.*,
    2019 WL 1239301 (S.D. Cal. Mar. 18, 2019) ........................................................ 13

*In re Quality Sys., Inc. Sec. Litig.*,
    865 F.3d 1130 (9th Cir. 2017) .............................................................................. 16

*Reese v. Malone*,
    747 F.3d 557 (9th Cir. 2014) overruled on other grounds by *City of
    Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech.,
    Inc.*, 856 F.3d 605 (9th Cir. 2017) ...................................................................... 13

*Ronconi v. Larkin*,
    253 F.3d 423 (9th Cir. 2001) ................................................................................ 17

*S. Ferry LP, No. 2 v. Killinger*,
    542 F.3d 776 (9th Cir. 2008) .......................................................................... 14, 17

*S.E.C. v. Yuen*,
    2006 WL 1390828 (C.D. Cal. Mar. 16, 2006) ...................................................... 11

*In re Scholastic Corp. Sec. Litig.*,
    252 F.3d 63 (2d Cir. 2001) ................................................................................... 13

*Schueneman v. Arena Pharms., Inc.*,
    840 F.3d 698 (9th Cir. 2016) .......................................................................... 16, 17

*In re Sipex Corp. Sec. Litig.*,
    2005 WL 3096178 (N.D. Cal. Nov. 17, 2005) ...................................................... 11

*Siracusano v. Matrixx Initiatives, Inc.*,
    585 F.3d 1167 (9th Cir. 2009), *aff'd*, 563 U.S. 27 (2011) ................................... 11

*Sudunagunta v. NantKwest, Inc.*,
    2017 WL 8810760 (C.D. Cal. Sept. 20, 2017) ...................................................... 15

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
    551 U.S. 308 (2007) ........................................................................................ 12, 16

*Turocy v. El Pollo Loco Holdings, Inc.*,
    2017 WL 3328543 (C.D. Cal. Aug. 4, 2017) ........................................................ 10

*In re VeriFone Holdings, Inc. Sec. Litig.*,
    704 F.3d 694 (9th Cir. 2012) ................................................................................ 13

*Webb v. Solarcity Corp.*,
 884 F.3d 844 (9th Cir. 2018) ................................................................................ 15

*Zucco Partners, LLC v. Digimarc Corp.*,
 552 F.3d 981 (9th Cir. 2009) ................................................................................ 16

LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTIONS TO REPORT AND RECOMMENDATION
CASE NO. 8:19-CV-2326-DOC-ADS

## I.    INTRODUCTION

This case arises from Defendants' numerous false and materially misleading statements about two of the most important acquisitions in the history of Merit Medical Systems Inc. ("Merit"). In a thoughtful and well-reasoned 29-page Report and Recommendation (the "Report"), Magistrate Judge Autumn D. Spaeth reviewed the Complaint's particularized allegations, including detailed accounts of sixteen former employees, thoroughly analyzed Defendants' arguments for dismissal, and found that Lead Plaintiffs' Complaint meets the applicable pleading standards for all elements of a securities fraud claim under Section 10(b) and SEC Rule 10b-5, including the PSLRA's and Rule 9's heightened pleading standards for falsity and scienter.

First, Judge Spaeth concluded that the Complaint sufficiently pleads numerous materially false and misleading statements and omissions, finding actionable statements concerning the integration of both Cianna and Vascular Insights. Report at 18-23. Judge Spaeth found statements such as "[t]he Cianna transition is complete" and "[w]e've maintained the sales force … [which] was a critical thing to do" were materially false and misleading, stating, "Plaintiffs have sufficiently met [the] heightened pleading standard" for falsity. *Id.* at 18-19. Similarly, Judge Spaeth found that Plaintiffs' alleged statements about "Merit's acquisition of Vascular Insights and the projected sales of ClariVein" were false and misleading, rejecting Defendants' various contentions in favor of dismissal, including that such statements were immaterial as a matter of law or taken out of context. *Id.* at 19-23.

Second, Judge Spaeth found that the Complaint's "extensive allegations provide a strong, cogent inference of scienter" and that "Defendants do not proffer any other opposing inference that could be drawn from the alleged facts." *Id.* at 26. These allegations include: (i) the importance of the acquisitions to Merit's "'growth strategy'"; (ii) the Executive Defendants' receipt of "real-times sales information" and attendance at meetings where the sales problems were discussed; and (iii) the

LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTIONS TO REPORT AND RECOMMENDATION
CASE NO. 8:19-CV-2326-DOC-ADS

Executive Defendants' awareness of "serious" regulatory and reimbursement issues that presented a roadblock to ClariVein sales. *Id.* at 25-26. Judge Spaeth rejected Defendants' attempt to "pinpoint holes" in the "extensive" allegations, finding scienter adequately pleaded when "[v]iewed holistically and considering all reasonable inferences." *Id.* at 26.

Third, Judge Spaeth concluded that the Complaint adequately pleads loss causation by "successfully plead[ing] a causal connection between Defendants' allegedly deceptive acts and the injury suffered by Plaintiffs." *Id.* at 28. Judge Spaeth noted that Merit's stock price plunged over 25% after "Defendants disclosed Merit had not received any orders for ClariVein and Cianna's sales force suffered attrition," and fell another 29% after Defendants disclosed that "Cianna and Vascular Insights were not performing as expected," finding that the Complaint adequately pleads that Plaintiffs' resulting losses were the "'direct result' of Defendants' alleged misrepresentations being revealed." *Id.*

Based on those detailed findings, Judge Spaeth recommended that this Court enter an order accepting the Report and denying, in large part, Defendants' motion to dismiss. *Id.* at 29. On March 29, 2021, this Court entered an Order adopting Judge Spaeth's recommendations and findings in their entirety. Notwithstanding Judge Spaeth's thoughtful Report—and this Court's adoption of it—Defendants filed an "objection" to certain portions of the Report. This Court should again adopt Judge Spaeth's well-reasoned findings and deny Defendants' baseless objection.

As a threshold matter, Defendants do not contest Judge Spaeth's findings as to the core elements of falsity and loss causation, thereby conceding that the Complaint adequately alleges that Defendants misled investors and that those misrepresentations were a proximate cause of investors' losses. Defendants instead urge the Court to reject Judge Spaeth's detailed findings regarding the elements of materiality and scienter. The Court should decline to do so for multiple reasons.

As for materiality, Defendants' challenge is founded on the plainly untrue

notion that "[a]ll the challenged statements in the CAC concern the impact of the Cianna and ClariVein sales on 2019 revenue." Obj. at 5:20-21. However, as Judge Spaeth easily concluded, "Plaintiffs challenged statements alleged in the CAC are much broader than simply statements about 2019 revenue guidance." Report at 23. Indeed, only 5 of the 27 alleged false statements are tethered to guidance. *Id.* at 16. Among the alleged false statements that Defendants ignore are concrete misrepresentations about Merit's failed efforts to integrate Cianna and ClariVein, including Defendant Lampropoulos' false assurance that "we kept the [Cianna] sales force in place" and "we haven't lost anybody" (¶¶39, 53), when, in truth, Merit had suffered heavy sales-force attrition, including top performers responsible for *22%* of Cianna's total revenues and many of its largest accounts. Defendants also falsely assured investors that the Cianna integration was complete when, in truth, over *50%* of the items planned for integration remained incomplete at the time, including its most important systems and platforms. And Defendants also assured investors that its acquisition of ClariVein sales were driving the Company's overall growth when the truth was that Merit had *not received a single new order* for ClariVein during the *entire first half of 2019* due to fundamental regulatory and insurance roadblocks. Judge Spaeth correctly found that the Complaint sufficiently alleges these misstatements about purported then-existing facts concerning these two critical integrations were material. Report at 23.

The materiality of such statements cannot seriously be questioned. The Cianna and ClariVein acquisitions and integrations into Merit were responsible for *half* of Merit's projected 2019 growth and were the foundation of Merit's entry into the highly lucrative therapeutic device market. And the misstatements came at a time when analysts and investors were keenly focused on whether Merit's "growth-by-acquisitions" strategy was sustainable and could continue to drive the Company's stock price higher, including Merit's ability to retain Cianna's critical sales force of just 19 highly trained individuals. Indeed, analysts routinely asked Defendants

LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTIONS TO REPORT AND RECOMMENDATION
CASE NO. 8:19-CV-2326-DOC-ADS

pointed questions about the acquisitions and the progress of their integration into the "fabric" of Merit's overall business and issued numerous reports to investors on those very subjects. And when the truth was revealed about these failed integrations, Merit's stock price plummeted 29% in a single day, and analysts excoriated the Company for a "management credibility issue," calling for the termination of its top executives—all unquestionably demonstrating the fact-intensive issue of materiality. ¶¶143, 146.

Next, the Complaint amply supports a strong scienter inference. Among other things, Defendants themselves stressed their direct and personal involvement in these key transformative acquisitions and held themselves out as fully informed on the subjects of which they spoke, providing detailed facts about "the full, combined, scaled sales force hitting the ground running from day one" that alleviated investor concerns. ¶41. Lead Plaintiffs' Complaint further details how Defendants Lampropoulos, Merit's CEO, and Defendant Parra, its CFO, closely tracked the disappointing performance of the acquisitions in *real-time* on a variety of devices and contemporaneous reports, including *60-inch monitors* stationed outside each of their offices that displayed the daily, monthly, and quarterly orders for ClariVein, as well as on their mobile devices, personal computers, and in regular internal written reports and presentations. Given the Complaint's extraordinarily detailed factual allegations, Judge Spaeth had little difficulty rejecting Defendants' contention that the Complaint is "devoid of any particularized facts" about the Executive Defendants' culpable states of mind. Report at 25-26 (noting the Complaint's "extensive factual allegations" and Defendants' failure to "proffer any other opposing inference"). And while motive is not required to state a claim for securities fraud, here, Defendant Lampropoulos' highly unusual stock sales reinforce the scienter inference. Indeed, Lampropoulos unloaded over $6 million worth of his personal holdings of Merit stock in a *single week*—more than the prior 13 years *combined*—shortly before the full truth emerged and Merit's stock price plummeted.

LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION CASE NO. 8:19-CV-2326-DOC-ADS

## II.   SUMMARY OF ALLEGATIONS

As they did in their motion to dismiss, Defendants ignore critical facts and allegations throughout their Objection. Plaintiffs briefly highlight some of them, which are further set forth in the Complaint and the Report.

### A.   The Cianna and ClariVein Acquisitions

Merit is a medical device company whose growth has depended almost entirely on corporate acquisitions. ¶25. While the Company's "growth-by-acquisition" strategy succeeded in growing the Company, it caused securities analysts to question whether the strategy was sustainable. ¶¶26-30. To quell those concerns, Defendants launched two of the most important acquisitions in Merit's history—Cianna and ClariVein.

Analysts were intently focused on these acquisitions to see whether Merit's acquisition strategy remained viable. Specifically, analysts were focused on whether Merit would retain Cianna's highly specialized sales force. Analysts were particularly focused on this issue because, as they noted in their analyst reports, Merit's earlier acquisition of the entity DFINE was a colossal failure due to the Company's failure to retain DFINE's sales force. *Id.*

When Defendants announced Merit's acquisition of Cianna in October 2018, the critical importance of retaining Cianna's highly specialized sales force was front and center. ¶¶37-44. Not only was Cianna the Company's largest acquisition ever, but Cianna sold highly complex devices that were far more sophisticated than the non-surgical "accessory" products Merit traditionally sold. ¶¶34-35. To effectively sell these devices, Merit needed to retain Cianna's sales force, which was thoroughly trained in the niche devices and had longstanding relationships with purchasers. ¶¶35-36, 39, 77, 79. Defendant Lampropoulos repeatedly stressed to investors that Merit understood the importance of retaining Cianna's sales force after the acquisition, claiming he was personally "lead[ing Cianna's] efficient integration" and repeatedly emphasizing that Merit would keep "in place" Cianna's "entire sales

force" of 19 highly trained and educated professionals because Merit had "learned lessons from our situations in the past." ¶¶38-40, 53. He stressed the critical importance of doing so, explaining that the "returns" from the acquisition and, indeed, Merit's financial models, depended on the "maintenance of their sales force." ¶39. Analysts reported that Lampropoulos' assurances on this "key" issue "lessen[ed] the risk profile." ¶¶41-43.

Not long after announcing the Cianna acquisition, Merit announced that it had completed another major acquisition—this time, of Vascular Insights' ClariVein product. ¶47. Defendants claimed that the acquisition positioned Merit to exploit a $700 million market. ¶48. Analysts again credited Defendants' assertions. ¶49.

### B.    Defendants Misrepresented Cianna's Integration and Sales Force Retention

On February 26, 2019, the first day of the Class Period, Lampropoulos updated investors on the Cianna integration, specifically assuring investors that "we kept the [Cianna] sales force in place" and "we haven't lost anybody." ¶53. Lampropoulos reiterated that it was "critical" that Cianna's "highly trained, clinical personnel" were still employed in the sales force because "as our products get more complicated, we need to have these folks who know how to sell, interface with surgeons, and have a strong knowledge of physiology and anatomy." ¶52. In hailing the perfect integration of Cianna on April 23, Lampropoulos again claimed that Merit had "maintained the sales force" of Cianna, adding that it was "a critical thing to do." ¶¶57, 166-167. Analysts credited Defendants' statements, reporting that Merit had "completed the integration of Cianna." ¶58.

Unbeknownst to investors at the time, the integration was an abject failure and Cianna's sales force had already suffered significant departures. ¶¶66-100. By the time of Defendants' April 23 false statements, (i) *nearly 25%* of Cianna's sales force had quit; and (ii) Merit had lost *60%* of Cianna's sales force in the critical Western region, including the region's veteran top performers who were single-handedly

responsible for *75%* of the region's sales and *22%* of Cianna's total sales. ¶¶66-84. Those departures resulted in a sales decline of *25-30%* in 2019 and caused the Western region to go from Cianna's strongest performing region to recording the least sales of all of Merit's regions. ¶81.

Defendants' statements claiming that Cianna's integration was complete were also false because, in truth, there was a wholesale lack of integration encompassing (i) Cianna's most important information systems and platforms, including its customer relationship management systems ("CRMs") (¶¶85-93); (ii) its critically important marketing platforms (¶¶94-96); (iii) its medical meeting planner (¶¶97-98); and (iv) its sales force that experienced heavy sales force attrition (¶¶67-84, 99-100). Defendants' integration failures resulted in needless expenses and inefficiencies, delayed and misdirected orders, and lost opportunities. ¶¶91-93, 96-99.

**C.   Defendants Misrepresented ClariVein's Performance and Sales**

Throughout the Class Period, Defendants also assured investors that their newly acquired ClariVein was "driv[ing] growth." ¶¶59-64. In truth, the ClariVein acquisition was a disaster from the outset. At the same time Defendants were touting purportedly strong ClariVein's performance in Q1 and Q2 2019, the truth was precisely the opposite: *Merit did not have a single order for ClariVein during the entire first half of 2019*. ¶102.

Multiple former high-level Merit employees have confirmed that Merit could not sell the product because of two basic, undisclosed roadblocks preventing any meaningful sales. ¶¶112-128. *First*, the country's largest commercial insurers, Medicare, and other government programs uniformly declined to cover ClariVein, prompting doctors to refuse to place new orders for ClariVein. ¶¶113-114. *Second*, Merit discovered that it could not market ClariVein for its intended purpose of treating varicose veins due to federal regulations, rendering it impossible to sell ClariVein to lucrative vein treatment centers. ¶¶124-128.

Defendants were well aware of the dearth of ClariVein orders. ¶¶103-111, 193-

LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTIONS TO REPORT AND RECOMMENDATION
CASE NO. 8:19-CV-2326-DOC-ADS

197. Lampropoulos and Parra received and closely monitored a steady stream of ClariVein sales data, as multiple former Merit employees attested. *Id.* Both executives (i) had 60" monitors outside each of their offices that displayed in real-time the daily, monthly, and quarterly orders for ClariVein (¶¶104-105); (ii) had this same information on their mobile phones (¶107) and (iii) on their computers through Merit's "Domo" real-time software system (¶¶106, 111); and (iv) received highly detailed ClariVein sales information through regular written reports and presentations, including daily email updates (¶¶108-110).

### D.     The Truth Emerges

When the truth about the disastrous Cianna and ClariVein acquisitions began to emerge on July 25, 2019, Merit's stock price plummeted by over 25% in a single trading session. ¶¶132-133. Defendants, however, prevented the full truth from being revealed with several additional false statements that dampened the market's response to the news. That allowed Lampropoulos to unload significant holdings of his Merit stock at inflated prices before the full truth was revealed, selling more shares in a week than he had sold in the previous thirteen years combined. ¶¶137-139, 199-200.

Just weeks after Lampropoulos' insider trades, Merit finally admitted that sales for ClariVein and Cianna had lagged so far behind expectations that Merit was forced to slash year-end revenue guidance and withdraw its guidance for 2020 entirely. ¶¶140-142. Lampropoulos also finally acknowledged that Merit had made little progress in integrating ClariVein, admitting that the integration was "nine or ten months behind" ¶141. The two debacles were so material that they completely halted Merit's growth-by-acquisitions strategy, with Lampropoulos forced to admit that the Company *"fell on [its] face"* and was forced to go *"back to basics."* ¶143. Merit's stock price tumbled an additional 29% in a day, wiping out over $450 million in market capitalization. ¶144.

**III.   Judge Spaeth Correctly Found that Plaintiffs Sufficiently Plead Facts Demonstrating that Defendants' Misrepresentations and Omissions about the Cianna and ClariVein Acquisitions Were Material**

In the Report, Judge Spaeth considered and rejected Defendants' argument that their false statements were immaterial as a matter of law because Cianna and ClariVein had a relatively small impact on Merit's 2019 revenues, explaining that Defendants' misstatements and omissions "are much broader than simply statements about 2019 revenue guidance." Report at 23. Judge Spaeth further correctly found that the Company missed its guidance for ClariVein revenues by 25-32%, which was plainly not "immaterial as a matter of law" to investors under Ninth Circuit precedent. *Id.* at 21-23.

Defendants rehash their materiality challenge in their Objections, once again falsely asserting that "[a]ll the challenged statements in the CAC concern the impact of the Cianna and ClariVein sales on 2019 revenue." Obj. at 5:20-21. Defendants' argument distorts the allegations of Lead Plaintiffs' Complaint and also fails for multiple other reasons.

*First*, as Judge Spaeth found, the false statements alleged in the Complaint go far beyond statements about Cianna's and ClariVein's sales and impacts on 2019 revenue. For example, in regards to the Cianna acquisition, the Complaint alleges that Defendants falsely represented that "we kept the [Cianna] sales force," "we haven't lost anybody" and Merit had "maintained [Cianna's] sales force" because "that was a critical thing to do" when, in fact, key salespeople responsible for 22% of Cianna's company-wide sales and all sales in 15 states had left. ¶¶52-53, 57, 66-100. Defendants also falsely told investors that the Cianna integration was complete when in truth the Company never completed half of the items planned for integration, resulting in inefficiencies, operational setbacks, and lagging performance. ¶¶85-99. The statements, and similar concrete assertions of purported fact regarding the Vascular Insights acquisition, are completely untethered to 2019 revenue guidance.

*Second*, Defendants' misrepresentations concerned Cianna, which was the

Company's ***largest acquisition ever*** and expected to drive up to ***40%*** of the entire Company's growth. The Cianna integration was the cornerstone of the Company's strategic shift to sell higher margin products by breaking into the larger and more lucrative therapeutic device market. ¶¶33-36. Given the importance of Cianna, analysts repeatedly asked about the progress of the Cianna integration, issued nearly a dozen reports addressing the subject, and grasped onto and repeated Defendants' material statements in analyst reports. ¶¶40-44, 50-58, 185. Against that backdrop, Defendants' statements were plainly material. *See Turocy v. El Pollo Loco Holdings, Inc.*, 2017 WL 3328543, at \*14 (C.D. Cal. Aug. 4, 2017) (Carter, J.) (materiality "evidenced by the repeated questions posed by analysts"); *Baker v. SeaWorld Ent., Inc.*, 423 F. Supp. 3d 878, 941-42 (S.D. Cal. 2019) (extensive analyst questions and coverage of subject of defendants' statements and omissions supports materiality).

*Third*, Defendants themselves have recognized the materiality of their misstatements and omissions. When the truth was revealed, they frankly admitted that "[s]ome will say we fell on our face" (¶143) and that Merit's failure to successfully integrate these two critical acquisitions was so great that it necessitated a complete halt of the Company's historical "growth-by-acquisitions" strategy.

*Fourth*, analysts' and investors' reaction to the revelation of the truth further highlights the materiality of the misstated and omitted facts, confirming analysts' fears that Merit's growth strategy was not sustainable. In a matter of a day, the revelations drove Merit's stock price down almost 30%—an immediate and substantial stock-price decline that supports the materiality of Defendants' false statements. *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 935 (9th Cir. 2003) (stock-price decline of 31% after truth revealed, even if slightly delayed, supports a finding of materiality); *Longo v. OSI Sys., Inc.*, 2021 WL 1232678, at \*7 (C.D. Cal. Mar. 31, 2021) (finding that nearly 30% one-day stock-price drop following disclosure of omitted facts supported materiality).

LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS'
OBJECTIONS TO REPORT AND RECOMMENDATION
CASE NO. 8:19-CV-2326-DOC-ADS

*Fifth*, ClariVein's sales were so poor that the Company ultimately missed its 2019 revenue guidance for ClariVein by 30% (¶¶141, 192), a magnitude that amply shows materiality. *Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166 (2d Cir. 2000) (statements about 1.7% of revenues not immaterial); *In re Sipex Corp. Sec. Litig.*, 2005 WL 3096178, at *2 (N.D. Cal. Nov. 17, 2005) (2% of revenue "cannot be said to be immaterial as a matter of law at the pleading stage"). Defendants ignore that significant miss and focus instead only on Merit's total, Company-wide revenue miss. But the law is plain that even if, as Defendants contend, the sales shortfalls were "quantitatively small" (and they were not) on a Company-wide basis, they were "significan[t] to a particularly important segment of" the Company's business and, for this additional reason, were material. *Litwin v. Blackstone Grp., L.P.*, 634 F.3d 706, 720 (2d Cir. 2011); *see also S.E.C. v. Yuen*, 2006 WL 1390828, at *37 (C.D. Cal. Mar. 16, 2006).

*Finally*, contrary to Defendants' suggestions, there is no bright-line test on materiality. As the Ninth Circuit has explained, "[t]he Supreme Court has eschewed brightline tests for materiality." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1009 (9th Cir. 2018). Rather, "[q]uestions of materiality . . . involv[e] assessments peculiarly within the province of the trier of fact." *Siracusano v. Matrixx Initiatives, Inc.*, 585 F.3d 1167, 1178 (9th Cir. 2009). Such evaluations require an assessment of both qualitative and quantitative factors to determine whether the misrepresented information is important to investors, as even quantitatively small amounts can be material. *See Baker*, 423 F. Supp. 3d at 942 ("'[T]he concept of 'materiality' is not limited to a percentage of a company's total profits, but rather requires assessment of qualitative and quantitative factors so that even quantitatively small amounts can still present a materially misleading picture of a company's health.'"). Defendants have not—and cannot—demonstrate that their misstatements were immaterial as a matter of law at the pleading stage.

**IV.     Judge Spaeth Correctly Found that the Complaint Pleads Particularized Facts Giving Rise to a Strong Inference of Scienter**

Defendants argued in their motion to dismiss that the Complaint was devoid of particularized allegations about Defendants' scienter—*i.e.*, that Defendants made their misrepresentations knowingly or, at a minimum, with deliberate recklessness. Judge Spaeth soundly rejected that argument, finding that the Complaint contains "extensive factual allegations" that, when viewed holistically, "support a strong inference of scienter." Report at 25. Moreover, Judge Spaeth explained—and Defendants do not dispute—that they have offered no opposing, non-culpable inference that could be drawn from the facts alleged. *Id.* at 25-26. Instead, Defendants merely "parse[d] the extensive allegations to pinpoint holes," which Judge Spaeth correctly concluded ignored the Supreme Court's instruction that scienter allegations must be viewed "holistically." *Id.* at 24, 26 (citing *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 324-26 (2007)). Indeed, Judge Spaeth concluded that the scienter inference here is so strong that "the Court need not make any determination" regarding the Complaint's extensive motive allegations—including large, unusual, and suspiciously-timed insider stock sales. *Id.* at 26.

Defendants now repeat to no avail their parsing of the Complaint's allegations while again failing to offer a competing innocent inference that is more compelling than the "strong, cogent inference of scienter" that Judge Spaeth correctly determined were supported by the Complaint's extensive factual allegations. As detailed in the Complaint, and underscored in the Report, the Complaint includes a plethora of facts that amply support the scienter inference.

*First*, Defendants made specific misrepresentations about Cianna's integration and sales force, including that Merit had maintained Cianna's sales force, had not lost anybody, and had kept the Cianna sales force in place. In making these statements, Lampropoulos assured investors that he did "a lot of work [in reviewing] the operations, the manufacturing, sales force," including visiting Cianna's Aliso Viejo headquarters and attending meetings with the sales force in Southern

California. ¶¶38-40, 53-54, 186-187, 189-190. Defendants' specific misstatements about specific matters they purportedly knew about strongly support scienter. *Reese v. Malone*, 747 F.3d 557, 572 (9th Cir. 2014); *see In re VeriFone Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 708 (9th Cir. 2012) ("public statements celebrating the merger as an unprecedented success" support scienter); *Karinski v. Stamps.com, Inc.*, 2020 WL 281716, at *15 (C.D. Cal. Jan. 17, 2020) (that defendants "regularly referenced [relevant] conversations they had" supports scienter). Indeed, as the Ninth Circuit has made plain, where defendants make specific misstatements about specific matters they purport to know, "[i]t is unclear what further facts plaintiffs would need to plead to create a stronger inference that [they] had access to [the] information [they] discussed publicly." *Reese*, 747 F.3d at 572.

*Second*, Lampropoulos' misstatements were made in response to analyst inquires and designed to quell serious concerns about integration risk. *E.g.*, ¶¶34-65, 185; *see In re Qualcomm Inc. Sec. Litig.*, 2019 WL 1239301, at *11 (S.D. Cal. Mar. 18, 2019) (that defendants "issued specific [statements] … in response to questions from analysts and investors" contributed to a strong scienter inference). And when Defendants were forced to reveal the truth, analysts called for their removal, questioned their "credibility," and stated it would take "years" for investors to regain their trust. ¶¶146, 213; *see In re Scholastic Corp. Sec. Litig.*, 252 F.3d 63, 76 (2d Cir. 2001) (analyst criticism and questioning of management's credibility after truth emerged contributed to a strong inference of scienter).

*Third*, Defendants received and had access to reports and information that contradicted their statements. Multiple former Merit and Cianna employees have explained that Lampropoulos and Parra received weekly, monthly, and quarterly sales reports with performance figures broken out by region that clearly showed the dramatic revenue decline in the critical Western region; had access on all their devices to the Company's centralized DOMO software that tracked sales by region; and were told directly before each earnings call about the Western region's

deteriorating sales. ¶¶80, 82-83, 106-111, 188, 194. In the Ninth Circuit, "[t]he most direct way" to show scienter is through allegations such as those here of "contemporaneous reports or data, available to the party, which contradict the statement." *Nursing Home Pension Fund, Loc. 144 v. Oracle Corp.*, 380 F.3d 1226, 1230 (9th Cir. 2004). In fact, allegations of "actual access to the disputed information" "may independently satisfy the PSLRA." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 786 (9th Cir. 2008).

Moreover, Lampropoulos and other Merit executives were promptly advised that, immediately after closing the acquisition, Merit's regulatory team independently determined that the Company was totally prohibited from marketing ClariVein for its intended use of treating varicose veins. ¶¶124-128; *see Gammel v. Hewlett-Packard Co.*, 2013 WL 1947525, at *21 (C.D. Cal. May 8, 2013) ("It is far from implausible that a corporate executive who had spent months building excitement and momentum around important, new technology products might recklessly misrepresent the inability to deliver on those promises.").

*Finally*, Defendants' attempts to cover up the truth further reinforces their scienter. For example, when Defendants were forced to disclose the absence of any new ClariVein orders, they continued to mislead investors by falsely blaming "pipeline filling" (*i.e.*, excess orders ahead of the acquisition) while assuring that the issues had resolved quickly and sales were now "ramping" up. ¶¶129-136, 192, 198. Similarly, when Defendants were forced to admit to "attrition" in Cianna's sales force, they continued to mislead investors by falsely stating that there had only been a "little bit" of attrition "but not much." *See Brown v. China Integrated Energy, Inc.*, 875 F. Supp. 2d 1096, 1124 (C.D. Cal. 2012) ("evidence of concealment is strongly indicative of scienter").

Viewed collectively, as they must be, these facts and the numerous additional facts alleged in the Complaint establish a strong inference of scienter. And Defendants' failure to offer a more compelling inference that explains how they

misled investors only innocently is, by itself, fatal to their argument. *New Mexico State Inv. Council v. Ernst & Young LLP*, 641 F.3d 1089, 1099 (9th Cir. 2011) (reversing dismissal where defendant "fails to suggest a more compelling innocent inference"); *China Integrated*, 875 F. Supp. 2d at 1124 ("China Integrated offers no scenario under which the alleged facts would be suggestive of non-fraudulent intent.").

Defendants' challenges to scienter were easily rejected by Judge Spaeth, in a Report already adopted by this Court, and may be easily rejected once again.

*First,* Defendants' claim that Cianna's and ClariVein's impact on Merit's overall revenue was not "dramatic" enough to support an inference of scienter fails for the simple reason that revenue from these two critical acquisitions was to comprise 50% of Merit's entire 2019 revenue growth. ¶¶53, 62, 183. The revenue shortfall that followed was so severe that Defendants slashed their 2019 guidance substantially and entirely withdrew their guidance for 2020. ¶¶142, 145-146. Thus, the shortfall was highly material.[1]

*Second,* Lampropoulos' insider stock sales do not "negate" a scienter inference, as Defendants contend. To begin, "insider trading is not required to establish scienter." *Sudunagunta v. NantKwest, Inc.*, 2017 WL 8810760, at *12 (C.D. Cal. Sept. 20, 2017). Here, however, Lampropoulos' highly unusual and suspicious stock sales reinforces a strong inference of scienter. After not selling a single share on the open market for over three years, Lampropoulos drew the "ire" of investors by unloading $6.5 million worth of his shares over a three-week period in summer 2019—more shares than in the prior 13 years combined—just weeks before disclosing the truth and causing Merit's stock price to plummet 29%. ¶¶137-139, 199-200; *see Stamps.com*, 2020 WL 281716, at *16 (suspicious stock sales support

---

[1] Defendants attempt to rely on *Webb v. Solarcity Corp.*, but the 10% sales impact there that was "so subtle that it appears that even the company's specialized accounting division and professional auditors missed it" stands in stark contrast to the 50% of expected revenue growth at issue here. 884 F.3d 844, 857 (9th Cir. 2018).

LEAD PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTIONS TO REPORT AND RECOMMENDATION CASE NO. 8:19-CV-2326-DOC-ADS

scienter "even if the sales would alone be insufficient").

*Third,* Defendants incorrectly assert (Obj. at 7:14-15; 9:23-26) that Plaintiffs must allege how Defendants were specifically "told" about ClariVein's reimbursement denials and marketing roadblock or show a "document or witness" that put Defendants "on notice." [2] The Supreme Court directly rejected these assertions in *Tellabs,* when it held that no "smoking-gun" is required to show scienter. *Tellabs,* 551 U.S. at 324-26. Rather, "deliberate recklessness" is the standard. *Schueneman v. Arena Pharms., Inc.*, 840 F.3d 698, 705 (9th Cir. 2016). Defendants' assertion is without merit in any event: five witnesses "establish that members of executive-level management, including individual defendants, had access to and used reports documenting in real time" the lack of ClariVein orders. *See In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1145 (9th Cir. 2017) (reports automatically delivered to executives and "habit of 'continually monitor[ing] the Company's" financials supported scienter). [3] Further, ClariVein's 80% reimbursement denials were of such concern that Merit hired a lobbyist to sway the insurance industry. ¶123; *Schueneman*, 840 F.3d at 708 ("Defendants' own response to the issue contributes to an inference of scienter.").

Additionally, contrary to Defendants' assertion (Obj. at 9:23-10:16), the Complaint details a reliable account of when Lampropoulos was "told" about the

---

[2] Defendants also inject the faulty inference (Obj. at 21:7-12) that "lagging" sales at a particular time would not alert Defendants to the falsity of annual guidance. However, *zero orders* for six months is entirely different from sales "lagging on a particular day, week or month" that "could be offset by sales of other products."

[3] Defendants' citations (Obj. at 20-21 n.24) say nothing to the contrary. For example, in *Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, the plaintiffs offered only "impressions of witnesses." 759 F.3d 1051, 1061-62 (9th Cir. 2014). Here, the Complaint's multiple witnesses all had direct access to Defendants Lampropoulos and Parra, physically saw them access the reports, sent reports directly to them, discussed the reports directly with them, and described the contents of the reports that conflicted with Defendants' statements. *See, e.g.*, ¶¶103-111. Likewise, in *Zucco Partners, LLC v. Digimarc Corp.*, the court found access to a database insufficient to support an inference that defendants knew the data was *manipulated*. 552 F.3d 981, 1000-01 (9th Cir. 2009). Unlike *Zucco*, there is no allegation here about manipulated data; rather, Defendants had access to *unmanipulated* information directly contradicting their statements.

marketing roadblock: that of the Senior Marketing Event Manager who worked for Merit for over 20 years, knew Lampropoulos for over 30 years, saw Lampropoulos every day, had an office on the same floor, was responsible for all of ClariVein's product marketing, and interacted extensively with Merit's regulatory team. ¶¶96, 104, 107, 125-128; *see In re Coinstar Inc. Sec. Litig.*, 2011 WL 4712206, at *9 (W.D. Wash. Oct. 6, 2011) (rejecting argument that former employee, who did not attend meetings, "was not in a position to know the Defendants' personal awareness" because witness was "alleged to be in a position to report on these facts and, on a motion to dismiss, the Court assumes [p]laintiff's allegations are true").

*Fourth*, Defendants' scienter argument focuses almost entirely on citing the higher standard required for demonstrating scienter for "*forward-looking statements*," which requires a showing of "actual knowledge." But, as the Ninth Circuit has specified, for all other statements—such as statements at issue here—plaintiffs may allege scienter through *either* "knowledge" *or* "deliberate recklessness." *Schueneman*, 840 F.3d at 705. Defendants also inexplicably cite the 2002 *Vantive* decision (Obj. at 7:5-8) to make a sweeping statement about what the PSLRA requires, but the Ninth Circuit has clarified that, in light of *Tellabs*, *Vantive* was "too demanding and focused too narrowly in dismissing" individual allegations. *S. Ferry*, 542 F.3d at 784. Contrary to Defendants' contentions, "[i]n assessing the allegations holistically as required by *Tellabs*, the federal courts certainly need not close their eyes to circumstances that are probative of scienter viewed with a practical and common-sense perspective." *Id.*

*Fifth*, the cases Defendants offer to assert "fraud by hindsight" are inapt. Contrary to the "optimistic predictions" in *Ronconi v. Larkin*, 253 F.3d 423, 430, n.12 (9th Cir. 2001), about what "'would' occur in what was then the future," here, Plaintiffs allege contemporaneous facts, including witness accounts and other information, showing Defendants knew their statements were false when made. Many of these facts, like ClariVein's sales roadblocks, preceded the Class Period,

and Defendants learned of them before or right after the start of the Class Period. *E.g.*, ¶¶112-128. Others, like Cianna's sales force departures, began shortly after the acquisitions and hastened during the Class Period, with an immediate, obvious impact. *E.g.*, ¶¶67-84.

*Finally*, Defendants have conceded (by not disputing) that scienter is sufficiently alleged for and imputed to Merit. *See China Integrated*, 875 F. Supp. 2d at 1122 (finding strong inference of corporate scienter "[e]ven absent detailed allegations about the level of detailed knowledge [of] corporate officers and directors").

## VI. CONCLUSION

For each of these reasons, the Court should overrule Defendants' Objections to the Report denying the motion to dismiss.

Dated: April 13, 2021                    Respectfully submitted,

**SAXENA WHITE P.A.**

*/s/ David R. Kaplan*
David R Kaplan (SBN 230144)
dkaplan@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (SBN 299964)

lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

*Attorneys for Lead Plaintiff Baton Rouge and
Co-Lead Counsel for the Class*

**<u>CERTIFICATE PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULE 5-4.3.4(a)(2)(i)</u>**

I, Jonathan D. Uslaner, am the ECF User whose ID and password are being used to file the foregoing document. In compliance with Local Rule 5-4.3.4(a)(2)(i), I hereby attest that David R. Kaplan concurs in this filing's content and has authorized the filing.

Dated: April 13, 2021

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner

CERTIFICATE PURSUANT TO CENTRAL DISTRICT OF
CALIFORNIA LOCAL RULE 5-4.3.4(A)(2)(I)
CASE NO. 8:19-CV-2326-DOC-ADS

**PROOF OF SERVICE VIA ELECTRONIC POSTING PURSUANT TO CENTRAL DISTRICT OF CALIFORNIA LOCAL RULES AND ECF GENERAL ORDER NO. 10-07**

I HEREBY CERTIFY that, on April 13, 2021, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will send a notice of electronic filing to all registered users. I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 13, 2021.

*/s/ Jonathan D. Uslaner*
Jonathan D. Uslaner