**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Hani Y. Farah (SBN 307622)
hfarah@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (SBN 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Proposed Settlement Class*

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | Case No. 8:19-cv-2326-DOC-ADS<br><br>**LEAD PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. David O. Carter<br>Courtroom: 9D<br>Date: January 24, 2022<br>Time: 8:30 a.m. |

# TABLE OF CONTENTS

I.      PRELIMINARY STATEMENT .................................................................2

II.     SUMMARY OF THE LITIGATION................................................4

        A.    The Filing of the Action and Appointment of Lead Plaintiffs and Lead Counsel ..............................................................4

        B.    The Motion To Transfer, Filing of the Complaint, and Briefing of Defendants' Motion to Dismiss ...........................................5

        C.    The Parties Conduct Meaningful Discovery ........................................6

        D.    The Settlement Negotiations ...............................................................7

III.    THE PROPOSED SETTLEMENT ...................................................8

IV.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT ...............................................................9

        A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in This Action ..............................11

        B.    The Settlement Was Reached Through Extensive Arm's-Length Negotiations Between Sophisticated Parties Represented By Experienced Counsel, and Achieved with the Assistance of an Experienced Mediator .....................................................................11

        C.    The Proposed Settlement is Within the Range of Possible Approval......................................................................................13

        D.    The Settlement Treats All Settlement Class Members Fairly.............17

        E.    The Settlement Does Not Excessively Compensate Lead Counsel..................................................................................17

        F.    Lead Plaintiffs Have Identified All Agreements Made in Connection With the Settlement .......................................................18

V.      THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23...............................................................................19

        A.    The Proposed Settlement Class Satisfies Rule 23(a) ........................20

        B.    The Proposed Settlement Class Satisfies Rule 23(b)........................22

LEAD PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 8:19-cv-2236-DOC-ADS

VI.    THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS ...................................................................23

VII.   PROPOSED SCHEDULE OF EVENTS ....................................................25

VIII.  CONCLUSION..............................................................................25

LEAD PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 8:19-cv-2236-DOC-ADS

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alfus v. Pyramid Tech. Corp.*,
764 F. Supp. 598 (N.D. Cal. 1991) ......................................................................21

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)................................................................... 19, 21, 23

*Avila v. LifeLock Inc.*,
2020 WL 4362394 (D. Ariz. July 27, 2020)........................................................18

*Blackie v. Barrack*,
524 F.2d 891 (9th Cir. 1975) ...............................................................................20

*Brown v. China Integrated Energy Inc.*,
2015 WL 12720322 (C.D. Cal. Feb. 17, 2015) ....................................................20

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)........................................................9

*Churchill Vill., L.L.C. v. Gen Elec.*,
361 F.3d 566 (9th Cir. 2004) ............................................................. 10, 11

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ...............................................................................9

*Elliott v. Rolling Frito-Lay Sales, LP*,
2014 WL 2761316 (C.D. Cal. June 12, 2014) ......................................................9

*Erica P. John Fund, Inc. v. Halliburton Co.*,
563 U.S. 804 (2011).............................................................................................22

*Garcia v. Harkins Admin. Servs., Inc.*,
2021 WL 2792321 (C.D. Cal. Jan. 4, 2021) .......................................................10

*Gonzales v. Arrow Fin. Servs. LLC*,
489 F. Supp. 2d 1140 (S.D. Cal. 2007)................................................................21

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) ............................................................. 19, 20, 21

*Hefler v. Wells Fargo & Co.*,
2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................................................19

*Hill v. Canidae Corp.*,
2021 WL 4988032 (C.D. Cal. Apr. 2, 2021) .........................................................12

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
2018 WL 4959014 (C.D. Cal. Aug. 13, 2018) .......................................................18

*In re Banc of Cal. Sec. Litig.*,
2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) ..........................................................25

*In re Banc of Cal. Sec. Litig.*,
2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) ........................................................18

*In re Banc of Cal Sec. Litig.*,
326 F.R.D. 640 (C.D. Cal. 2018) ...........................................................................20

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318 (C.D. Cal. Oct. 13, 2015) ......................................................16

*In re Cooper Cos. Inc. Sec. Litig.*,
254 F.R.D. 628 (C.D. Cal. 2009) ...........................................................................22

*In re Heritage Bond Litig.*,
2005 WL 1594403 (C.D. Cal. June 10, 2005) ...................................................9, 13

*In re LDK Solar Sec. Litig.*,
255 F.R.D. 519 (N.D. Cal. 2009) ...........................................................................22

*In re NetSol Techs., Inc. Sec. Litig.*,
2016 WL 7496724 (C.D. Cal. July 1, 2016) ..........................................................20

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................... 16, 18

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ........................................................25

*In re Signet Jewelers Ltd. Sec. Litig.*,
2020 WL 4196468 (S.D.N.Y. July 21, 2020) .........................................................18

*In re Silver Wheaton Corp. Sec. Litig.*,
2017 WL 2039171 (C.D. Cal. May 11, 2017) .........................................................21

*In re Silver Wheaton Corp. Sec. Litig.*,
  2020 WL 4581642 (C.D. Cal. Aug. 6, 2020)......................................................18

*In Re Snap Inc. Sec. Litig.*,
  2021 WL 667590 (C.D. Cal. Feb. 18, 2021) ................................................. 12, 16

*Keegan v. Am. Honda Motor Co, Inc.*,
  2014 WL 12551213 (C.D. Cal. Jan. 21, 2014)......................................................12

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ................................................................................23

*Lerwill v. Inflight Motion Pictures, Inc.*,
  582 F.2d 507 (9th Cir. 1978)..................................................................................21

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) ................................................................................9

*Ma v. Covidien Holding, Inc.*,
  2014 WL 360196 (C.D. Cal. Jan. 31, 2014)..........................................................10

*Milbeck v. TrueCar, Inc.*,
  2019 WL 2353010 (C.D. Cal. May 24, 2019)........................................................20

*Mild v. PPG Indus., Inc.*,
  2019 WL 3345714 (C.D. Cal. July 25, 2019).........................................................21

*Pederson v. Airport Terminal Servs.*,
  2018 WL 2138457 (C.D. Cal. Apr. 5, 2018) .................................................. 10, 13

*Schleicher v. Wendt*,
  618 F.3d 679 (7th Cir. 2010) .................................................................................22

*SEB Inv. Mgmt. AB v. Symantec Corp.*,
  2021 WL 1540996 (N.D. Cal. Apr. 20, 2021)........................................................22

*Thomas v. MagnaChip Semiconductor Corp.*,
  2017 WL 4750628 (N.D. Cal. Oct. 20, 2017) .......................................................18

*Todd v. STAAR Surgical Co.*,
  2017 WL 4877417 (C.D. Cal. Oct. 24, 2017)........................................................12

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014).........................................................13

**STATUTES**

15 U.S.C. § 78u-4(e) .......................................................................................17

**RULES**

Fed. R. Civ. P. 23 ................................................................... *passim*

LEAD PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 8:19-cv-2236-DOC-ADS

**NOTICE OF MOTION AND UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF SETTLEMENT**

TO: THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Court-appointed Lead Plaintiffs Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund (collectively, the "Atlanta Funds") and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("Baton Rouge" and, together with the Atlanta Funds, the "Lead Plaintiffs") hereby move this Court for entry of an Order pursuant to Fed. R. Civ. P. 23(e)(1) that will: (1) preliminarily approve the proposed Settlement of this Action; (2) approve the form and manner of giving notice of the proposed Settlement to the Settlement Class; and (3) schedule a final settlement hearing before the Court ("Settlement Hearing") to determine whether the proposed Settlement, Plan of Allocation, and Lead Counsel's motion for attorneys' fees and litigation expenses should be approved, and whether the proposed Settlement Class should be certified for purposes of the Settlement.[1]

Pursuant to Local Civil Rule 6-1, the motion is noticed for a hearing on January 24, 2022 at 8:30 a.m.  Because the motion is unopposed, however, it may be decided on the papers at this time and without a hearing.  This motion is supported by the following memorandum of points and authorities in support thereof, and the Stipulation and the exhibits thereto, which embody the terms of the proposed Settlement between the Parties, and the previous filings and orders in this case.

---

[1] Unless otherwise indicated, capitalized terms shall have their meaning as defined in the Stipulation and Agreement of Settlement, dated December 21, 2021 (the "Stipulation"), attached as Exhibit 1.  Unless otherwise noted, all internal quotations and citations are omitted herein, and all emphasis is added.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. PRELIMINARY STATEMENT

Lead Plaintiffs are pleased to report that they have reached an agreement to settle this action in exchange for a payment of $18.25 million in cash for the benefit of the Settlement Class (the "Settlement"), subject to the Court's approval. Lead Plaintiffs seek preliminary approval of the Settlement pursuant to Rule 23(e)(1). The motion is unopposed, and Lead Plaintiffs respectfully submit that it may be decided on the papers at this time.

Approval of the Settlement involves a two-step process. *See* Fed. R. Civ. P. 23(e)(1), (2). At this initial stage, Lead Plaintiffs request only that the Court grant preliminary approval of the Settlement. If granted, this would begin the process of considering the proposed Settlement by: (1) allowing notice to be sent to potential Settlement Class Members, and (2) scheduling the proposed final approval hearing (the "Settlement Hearing"). Next, at the Settlement Hearing, the Court will be asked to determine whether the Settlement is fair, reasonable, and adequate based on more detailed final Settlement approval papers filed before that hearing.

To grant preliminary approval, the Court need only find that it "will likely be able to" finally approve the Settlement, Fed. R. Civ. P. 23(e)(1)(A), and "will likely be able to" certify the Settlement Class, Fed. R. Civ. P. 23(e)(1)(B). As detailed further herein, the Settlement, which is set forth in the Stipulation attached hereto as Exhibit 1, satisfies all the standards for preliminary approval. To start, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached. The Settlement is the result of Lead Plaintiffs' vigorous prosecution of this Action over the past two years and extensive pre-suit investigation. Lead Plaintiffs and Lead Counsel conducted an extensive investigation of the claims at issue and defeated Defendants' motion to transfer the case to the United States District Court for the District of Utah. Lead Plaintiffs and Lead Counsel then prepared a detailed 103-page amended complaint

based on their thorough investigation. Lead Plaintiffs and Lead Counsel then substantially defeated Defendants' motion to dismiss, first before Magistrate Judge Autumn D. Spaeth, and then in opposing Defendants' objection to Judge Spaeth's Report & Recommendation before this Court. Thereafter, Lead Plaintiffs and Lead Counsel conducted meaningful fact discovery, obtaining over a half-million pages of documents produced by Defendants and non-parties, as well as Defendants' responses and supplemental responses to Lead Plaintiffs' interrogatories.

The Settlement was negotiated at arm's-length by sophisticated parties that were represented by experienced and able counsel. The settlement negotiations took place through a formal mediation process conducted under the direction of Michelle Yoshida of Phillips ADR, who has served as full-time mediator, arbitrator, and special master since 2007. This process included the exchange of detailed mediation statements, a full-day mediation session, and continuing negotiations for over a month thereafter under Ms. Yoshida's supervision. The Settlement was ultimately based on Ms. Yoshida's mediator's recommendation.

The Settlement is particularly favorable when weighed against the risks and delay to recovery that continued litigation would have entailed, and the possibility of no recovery at all. Defendants would continue to maintain that their statements to investors were neither false nor misleading, and concerned a revenue shortfall and the departure of a few salespersons that had an immaterial impact on the Company's 2019 financial results. Defendants would also continue to maintain that they lacked any fraudulent intent (*i.e.*, scienter) in making the statements at issue, that Lead Plaintiffs' losses and those of the proposed class were not caused by their alleged misstatements, and that even if liability and loss causation could be established at trial, the vast majority of Merit's stock price decline following the alleged corrective disclosure events were unrelated to the alleged fraud and thus any damages were far less than those sought by Lead Plaintiffs. The $18.25 million Settlement represents a substantial portion of the maximum damages that Lead Plaintiffs would likely be

able to establish at trial, and is an excellent resolution for the Settlement Class.

For all the reasons discussed herein, Lead Plaintiffs respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice of the Settlement ("Preliminary Approval Order") attached as Exhibit A to the Stipulation and as Exhibit 2 hereto. The Preliminary Approval Order will, *inter alia*: (1) preliminarily approve the terms of the Settlement as set forth in the Stipulation; (2) approve the form and method for providing notice of the Settlement to the Settlement Class; and (3) schedule the Settlement Hearing at which the Court will consider the request for final approval of (i) the Settlement set forth in the Stipulation; (ii) the plan for allocating the net proceeds of the Settlement among eligible Settlement Class Members; and (iii) Lead Counsel's motion for attorneys' fees and expenses.

## II.    SUMMARY OF THE LITIGATION

### A.    The Filing of the Action and Appointment of Lead Plaintiffs and Lead Counsel

On December 3, 2019, a class action complaint was filed against Merit Medical Systems, Inc. ("Merit" or the "Company"), Merit's Chief Executive Officer, Fred Lampropoulos ("Lampropoulos"), and Merit's Chief Financial Officer, Raul Parra ("Parra") (collectively, "Defendants"), styled *Bucks County Employees Retirement Fund vs. Merit Medical Systems, Inc., et al.*, No. 8:19-cv-02326, alleging violations of the federal securities laws on behalf of purchasers of Merit common stock during the period of February 26, 2019 through October 30, 2019, inclusive (the "Class Period").

On February 3, 2020, the Atlanta Funds and Baton Rouge filed a joint motion for appointment as Lead Plaintiffs on behalf of the proposed class. On February 24, 2020, the Court issued an order appointing the Atlanta Funds and Baton Rouge as Lead Plaintiffs, approved Lead Plaintiffs' selection of Saxena White P.A. and Bernstein Litowitz Berger & Grossmann LLP ("BLB&G") as Lead Counsel for the

class, and recaptioned the case as *In re Merit Medical Systems, Inc. Securities Litigation*, No. 8:19-cv-02326 (the "Action").

### B.   The Motion To Transfer, Filing of the Complaint, and Briefing of Defendants' Motion to Dismiss

On March 23, 2020, Defendants filed a motion to transfer the Action to the United States District Court for the District of Utah.  Lead Plaintiffs filed their opposition brief on April 13, 2020.  Defendants filed their reply on April 27, 2020. On May 11, 2020, the Court denied Defendants' motion to transfer.

On June 30, 2020, Lead Plaintiffs filed the Consolidated Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint").  The Complaint asserted claims against Defendants Merit, Lampropoulos, and Parra under Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, and against Defendants Lampropoulos and Parra under Section 20(a) of the Exchange Act.  Among other things, the Complaint alleged that Defendants made materially false and misleading statements relating to two of Merit's recent acquisitions: (i) Cianna Medical, Inc. ("Cianna"), a manufacturer of devices for the treatment of breast cancer that was the largest acquisition in the Company's history; and (ii) ClariVein, a device for varicose vein treatment.  The Complaint further alleged that the price of Merit common stock was artificially inflated as a result of Defendants' alleged misstatements and declined when the truth was allegedly revealed.

The 103-page Complaint was based on a thorough pre-suit investigation that included interviews of dozens of former employees of Merit, Cianna, and Vascular Insights LLC ("Vascular Insights") (*i.e.*, the entity from which Merit acquired ClariVein), which were conducted by attorneys of Lead Counsel together with highly experienced private investigators.  The Complaint itself included the detailed eyewitness accounts of sixteen such former employees.

On August 14, 2020, Defendants filed their motion to dismiss the Complaint.

Defendants challenged virtually every element of Plaintiffs' securities fraud claims, including that the Complaint failed to sufficiently allege (i) that Defendants made any material misstatements concerning Cianna and ClariVein, that all of the challenged statements were truthful when made, and that many of the statements were non-actionable "puffery"; (ii) that Defendants acted with scienter, for example, because Defendant Lampropoulos's stock sales during the Class Period amounted to just 16% of his overall Merit holdings, an amount purportedly insufficient to support a strong inference of scienter as a matter of Ninth Circuit law; and (iii) that Defendants' conduct caused Plaintiffs' losses as the two alleged corrective disclosures failed to reveal the "truth" about any of the alleged misstatements, and a host of factors unrelated to the alleged fraud caused the subject stock price declines. Lead Plaintiffs filed an opposition to Defendants' motion to dismiss on September 28, 2020. Defendants filed their reply brief on October 22, 2020.

On March 3, 2021 the Court referred the motion to dismiss to Magistrate Judge Spaeth. On March 16, 2021, Judge Spaeth issued a Report & Recommendation (the "R&R") recommending the Court deny the motion in substantial part. Defendants objected to the R&R on March 30, 2021, and Lead Plaintiffs responded to Defendants' objection on April 13, 2021. On May 3, 2021, the Court issued an order accepting the R&R. On May 24, 2021, Defendants served and filed their Answers and Affirmative Defenses to the Complaint.

**C.    The Parties Conduct Meaningful Discovery**

Discovery in this Action commenced in May 2021. Lead Plaintiffs prepared and served initial disclosures, requests for production of documents, and interrogatories on Defendants. In addition, Lead Plaintiffs served document subpoenas on five non-parties, including the investment banks that conducted due diligence in connection with the acquisitions, and Jill Anderson, Cianna's former CEO and current Merit independent director. Lead Plaintiffs' efforts to obtain discovery from Defendants and third parties were highly contested, resulting in

numerous discovery letters and meet-and-confers concerning discovery disputes.

As a result of Lead Plaintiffs' extensive efforts, Defendants and non-parties produced over a half-million pages of documents. Defendants began their document productions on August 20, 2021, and produced documents on a weekly basis through and beyond the time of the Mediation. Lead Plaintiffs conducted a meaningful review of the documents, including through frequent discussions and regular "all-hands" meetings to discuss the progress of the review, to gain a firm understanding of the strengths and weaknesses of the case, and to prepare for mediation and, if necessary, summary judgment and/or trial. For example, Lead Plaintiffs conducted a thorough analysis of the custodial files for each of the Individual Defendants, other key employees, and entities relevant to the claims (e.g., due diligence documents concerning Cianna and Vascular Insights). Lead Plaintiffs' document review focused on numerous key issues underlying the class's claims and Defendants' defenses, including (i) Cianna sales (including by region, product, and individual salesperson), sales force retention, and integration; (ii) ClariVein regulatory approval, reimbursement by third-party payors, marketing efforts, and sales performance; and (iii) Defendant Lampropoulos's stock sales.

**D.    The Settlement Negotiations**

The Parties first began earnestly exploring the possibility of a settlement in the fall of 2021, after Lead Plaintiffs overcame Defendants' motion to dismiss. The Parties agreed to engage in private mediation and retained an experienced mediator, Ms. Yoshida of Phillips ADR. Pursuant to a schedule approved by Ms. Yoshida, the Parties exchanged detailed mediation statements on September 24, 2021, and participated in a full-day mediation session on October 5, 2021. The October 5 mediation did not, however, result in a settlement.

The Parties continued to engage in settlement discussions, under Ms. Yoshida's supervision, for approximately six weeks. When negotiations reached an impasse, Ms. Yoshida made a mediator's recommendation that the Parties settle the

Action for $18,250,000. The mediator's recommendation was made on a double-blind basis, which the Parties accepted on November 16, 2021. On November 24, 2021, the Parties notified the Court that they had reached an agreement in principle to settle the Action, and began drafting the settlement documents.

Thereafter, the Parties negotiated a formal Stipulation of Settlement, executed on December 21, 2021, which sets forth the terms and conditions of the Settlement. The Parties also entered into a confidential Supplemental Agreement, which gives Defendants the right to terminate the Settlement if valid requests for exclusion are received from persons and entities entitled to be members of the Settlement Class in an amount that exceeds a threshold agreed to by Lead Plaintiffs and Defendants.

## III.    THE PROPOSED SETTLEMENT

The Settlement provides that Defendants will cause $18.25 million in cash to be paid into an interest-bearing escrow account. If the Settlement is approved, the Settlement Amount, plus accrued interest, after the deduction of attorneys' fees and litigation expenses awarded by the Court, Notice and Administration Costs, and Taxes (the "Net Settlement Fund"), will be distributed among Class Members who submit valid Claim Forms, in accordance with a plan of allocation to be approved by the Court. The Settlement Class will receive the full benefit of the $18.25 million payment, net of Court-approved fees and expenses. There will be no reversion of funds to Defendants or their insurers once the Settlement becomes final. *See* Stipulation ¶ 13.

In connection with the Settlement, the Parties have stipulated to the certification of the Settlement Class for purposes of the Settlement. The Settlement Class is the same as the proposed class set forth in the Complaint. The Settlement Class includes all persons and entities who purchased Merit common stock from February 26, 2019 to October 30, 2019, inclusive, and who were damaged thereby. *See* Stipulation ¶ 1(qq); ECF No. 53 at ¶ 223. Prior to final approval, members of the Settlement Class will be provided the opportunity to request exclusion from the

Settlement Class.

In exchange for the payment of the Settlement Amount, Settlement Class Members will release the "Released Plaintiffs' Claims." Stipulation ¶ 1(ll). The Settlement's release provision is tailored to the Settlement Class's claims. Specifically, the release is limited to (1) the actual claims asserted in the Complaint; or (2) unasserted claims that could have been brought if they "arise out of or are based upon the allegations, transactions, facts, matters or occurrences, representations or omissions involved, set forth, or referred to in the Complaint" and "relate to the purchase of Merit common stock during the Class Period." *Id*.

## IV.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT

The Ninth Circuit has a strong judicial policy favoring the settlement of class actions. *See, e.g.*, *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1238 (9th Cir. 1998); *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *In re Heritage Bond Litig.*, 2005 WL 1594403, at \*2 (C.D. Cal. June 10, 2005) ("There is an overriding public interest in settling and quieting litigation, and this is particularly true in class action suits."). Settlements of complex cases greatly contribute to the efficient utilization of scarce judicial resources. *See Elliott v. Rolling Frito-Lay Sales, LP*, 2014 WL 2761316, at \*3 (C.D. Cal. June 12, 2014) ("judicial policy favors settlement in class actions … where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation").

Federal Rule of Civil Procedure 23(e) requires judicial approval of class action settlements. The approval of a class action settlement involves a well-established, two-step process. *First*, the court performs a preliminary review of the terms of the proposed settlement to determine whether to send notice of the proposed settlement to the members of the class. *See* Fed. R. Civ. P. 23(e)(1). *Second*, following distribution of the notice and after a hearing, the Court determines whether to grant final approval of the settlement. *See* Fed. R. Civ. P. 23(e)(2); *see also Cheng*

*Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *3 (C.D. Cal. Oct. 10, 2019).

The Federal Rules of Civil Procedure instruct that a court should grant preliminary approval to authorize notice of a settlement upon a finding that it "will likely be able" to finally approve the settlement under Rule 23(e)(2). *See* Fed. R. Civ. P. 23(e)(1)(B). This standard effectively codifies prior case law that provided that courts should grant preliminary approval after considering whether the settlement: "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential treatment to class representatives or segments of the class; and (4) falls within the range of possible approval." *Pederson v. Airport Terminal Servs.*, 2018 WL 2138457, at *7 (C.D. Cal. Apr. 5, 2018); *see also Ma v. Covidien Holding, Inc.*, 2014 WL 360196, at *4 (C.D. Cal. Jan. 31, 2014).

In considering final approval of the Settlement, Rule 23(e)(2) provides that the Court should consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The Court also considers the factors identified by the Ninth Circuit, many of which overlap with the Rule 23(e)(2) factors. *See Churchill Vill., L.L.C. v. Gen Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *Garcia v. Harkins Admin.*

*Servs., Inc.*, 2021 WL 2792321, at *1-2 (C.D. Cal. Jan. 4, 2021).[2] As detailed below, all these factors support preliminary approval of the Settlement.

### A. Lead Plaintiffs and Lead Counsel Have Adequately Represented the Settlement Class in This Action

In determining whether to approve a class-action settlement, the Court should first consider whether Lead Plaintiffs and Lead Counsel "have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). This analysis includes "the nature and amount of discovery" undertaken in the litigation. *See* Fed. R. Civ. P. 23(e)(2)(A), 2018 Advisory Committee Notes.

Here, Lead Plaintiffs and Lead Counsel have vigorously pursued this litigation for over two years, including by: (1) completing an extensive pre-suit and ongoing investigation of the claims at issue, including interviews of dozens of former Merit, Cianna, and Vascular Insights employees; (2) successfully opposing Defendants' motion to transfer the Action; (3) preparing and filing the detailed Complaint; (4) successfully opposing Defendants' motion to dismiss the Complaint before Magistrate Judge Spaeth and this Court; and (5) conducting extensive fact discovery, including seeking and obtaining over a half-million pages of documents from Defendants and five subpoenaed non-parties, conducting a meaningful review of such documents, and serving and obtaining interrogatory responses and supplemental interrogatory responses from Defendants. As a result of these efforts, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims when the Settlement was reached.

### B. The Settlement Was Reached Through Extensive Arm's-Length Negotiations Between Sophisticated Parties Represented By

---

[2] These factors are "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill*, 361 F.3d at 575.

**Experienced Counsel, and Achieved with the Assistance of an Experienced Mediator**

A proposed class-action settlement is considered presumptively fair where, as here, the parties have engaged in extensive arm's-length negotiations after meaningful discovery. *See In Re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) ("[T]he fact that the settlement was negotiated at arm's length and reached after discovery renders the agreement presumptively fair."); *Keegan v. Am. Honda Motor Co, Inc.*, 2014 WL 12551213, at *12 (C.D. Cal. Jan. 21, 2014) (granting approval where "discovery has been sufficient to permit the parties to enter into a well-informed settlement").

As noted above, the Parties – sophisticated public pension funds on the one hand, and a global medical device manufacturer and its senior-most executive officers on the other hand – participated in an extended mediation process before Ms. Yoshida, an experienced and respected mediator with Phillips ADR, one of the country's preeminent mediation firms. The Parties' mediation efforts involved the exchange of detailed mediation statements and a full-day mediation session. No agreement was reached at the mediation session. The Parties reached an agreement only after Ms. Yoshida issued a mediator's recommendation following six weeks of continued negotiations after the mediation session that the Action be settled for $18.25 million, which the Parties accepted on a double-blind basis.

The lengthy arm's-length settlement negotiations under the supervision of an experienced mediator strongly support the conclusion that the Settlement is fair and was achieved free of collusion. *See Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021) ("The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive."); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement that was "the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida of Phillips ADR").

LEAD PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 8:19-cv-2236-DOC-ADS

By the time of the Settlement, Lead Plaintiffs and Lead Counsel were highly knowledgeable about the facts of the case, as they had been actively litigating this Action for nearly two years and had conducted meaningful fact discovery, which followed a thorough pre-suit investigation that included dozens of witness interviews. Lead Counsel are highly experienced in securities litigation and have achieved some of the largest recoveries in history for investors. *See* ECF Nos. 35-5, 35-6. Courts have repeatedly recognized that "the fact that experienced counsel involved in the case approved the settlement after hard-fought negotiations is entitled to considerable weight." *Vinh Nguyen v. Radient Pharms. Corp.,* 2014 WL 1802293, at *3 (C.D. Cal. May 6, 2014); *see Heritage Bond*, 2005 WL 1594403, at *9 ("Great weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation.").

Additionally, throughout the Action and the settlement negotiations, a reputable and experienced national law firm—King & Spalding—vigorously represented Defendants. Defense counsel was therefore equally well-informed regarding the case and their representation of the Defendants was no less rigorous than Lead Counsel's representation of the Settlement Class. Because the Settlement is the product of serious, informed, and non-collusive negotiations among experienced counsel and a highly qualified mediator, it merits preliminary approval.

### C. The Proposed Settlement is Within the Range of Possible Approval

At the preliminary approval stage, the Court need only determine whether it will "likely be able" to approve the Settlement, Fed. R. Civ. P. 23(e)(1), or, in other words, whether the Settlement is "within the range of possible approval." *Pederson*, 2018 WL 2138457, at *7. Because the proposed $18.25 million Settlement represents an excellent recovery for the Settlement Class given the substantial risks of non-recovery presented by continued litigation and the likely damages that could be recovered at trial, the Settlement falls well within the range of possible approval.

Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit. They recognize, however, the substantial risks the Settlement Class would face in establishing liability and complete damages, as well as the significant delay and expenses that would necessarily be incurred to pursue their claims against Defendants through summary judgment, trial, and appeals. In particular, Lead Plaintiffs would have faced risks in establishing the required elements of falsity, materiality, scienter, and loss causation to survive a motion for summary judgment and prevail at trial.

As to "falsity," Defendants would continue to maintain that their statements to investors were not false or misleading when made. Specifically, Defendants would likely continue to argue that Lead Plaintiffs mischaracterize Defendants' statements to investors, taking them out of context and excluding clarifying remarks. For example, Defendants argue that Lampropoulos's statement in an April 23, 2019 press release that "[t]he Cianna transition is complete," was not a representation that the *integration* of Cianna into Merit was complete, because Lampropoulos did not use the term "integration" and further clarified during an earnings call by stating that "we are in fact through the [Cianna] *transition* period. By that I mean we are shipping inventory out of Salt Lake City and out of Richmond. We're doing all the billing." Defendants would likely argue that Lead Plaintiffs do not allege that Merit was not billing for Cianna's products or shipping them from Merit's facilities at the end of April, and therefore Lampropoulos's statement was not false when made.

Similarly, with respect to alleged false statements that Merit retained Cianna's salesforce, Defendants would continue to argue that Merit never represented that it had retained 100% of Cianna's sales force, but rather that it had kept "essentially" all of the salesforce and indicated there had been departures. Defendants would have also continued to argue that, in any event, the departures of four salespeople in a Company with thousands of employees do not render Lampropoulos's statement that Merit "essentially" retained the Cianna salesforce misleading.

As to "materiality," Defendants would continue to argue that the challenged statements concerning the Cianna and ClariVein acquisitions were not material because they had a negligible impact on Merit's overall 2019 financial results. Merit issued overall 2019 revenue guidance between $1.01 billion and $1.03 billion and reported 2019 revenue of $994.85 million. Merit missed the low end of its 2019 revenue projection by $16 million (1.5%) and the high end of its 2019 revenue projection by $36 million (3.5%), and only a fraction of the revenue miss was attributable to Cianna and ClariVein. Accordingly, Defendants would likely have continued to argue that missing revenue projections by 1.5% to 3.5% is immaterial as a matter of law under Ninth Circuit precedent, and, moreover, that Plaintiffs exaggerate the impact of Cianna and ClariVein products on Merit's 2019 revenue as Merit is a global company that sells hundreds of medical devices in the United States and around the world. Defendants also would have continued to argue that Merit only missed its revenue guidance from Cianna and ClariVein by approximately $3 million—less than 0.3% of the low-end of the Company's total guidance range. Specifically, for Cianna, which reported $49.5 million in sales for 2019—Merit underperformed its full year guidance range of $50 to $56 million by just $464,000 (less than 1%). For ClariVein, which represented only approximately 1% of Merit's projected 2019 revenue, Merit's 2019 ClariVein sales shortfall was only $2.5 million from the low end of Merit's guidance range.

As to "loss causation," Defendants would continue to argue that the declines in Merit's stock price on July 26, 2019 and October 31, 2019, the trading days after the alleged corrective disclosure dates, were not caused by the revelation of any fraud. In support of this contention, Defendants would continue to argue that on the alleged corrective dates Merit disclosed a variety of factors unrelated to Cianna or Vascular Insights that contributed to the 2Q19 and 3Q19 financial results, and its decision to lower FY 2020 revenue guidance. Defendants would have cited a host of factors disclosed by the Company and discussed in analyst reports as contributing

to the financial results and lowered guidance, and argued that the vast majority of such factors were unrelated to the Cianna and Vascular Insights acquisitions or their post-acquisition integration or performance.

The Settlement is also reasonable when considered in relation to the range of potential recoveries for the Settlement Class if Lead Plaintiffs prevailed at trial (which was far from certain) and on any appeals.  If the Settlement Class prevailed through class certification, summary judgment, trial and appeals on all arguments concerning liability, loss causation, and damages, the maximum class-wide damages are approximately $251.0 million, *before* accounting for issues of loss causation.

Accounting for issues of loss causation, Lead Plaintiffs and their expert estimated the absolute maximum theoretical damages in this case were approximately $153.0 million.  This is because multiple adverse disclosures were made on the two corrective disclosure dates of July 25, 2019 and October 30, 2019. Defendants had strong arguments that many of those disclosures bore no causal connection to Cianna and Vascular Insights.  If the Court or jury were to accept Defendants' loss causation arguments, the maximum realistic class-wide damages were approximately $33.4 million.  Accordingly, when considering issues of loss causation, the $18.25 million settlement represents a substantial recovery of up to 55% of the total class-wide damages.

Judged against any of the above maximum damage estimates, the proposed Settlement represents an excellent recovery, and compares very favorably to the average settlement recovery in other securities class actions.  *See, e.g.*, *Snap*, 2021 WL 667590, at *1 (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4 (C.D. Cal. Oct. 13, 2015) (approving securities class action settlement representing "8% of the maximum recoverable damages"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008)

-16-

(approving securities class action settlement of about 9% of maximum damages).

### D.      The Settlement Treats All Settlement Class Members Fairly

The Settlement does not improperly grant preferential treatment to Lead Plaintiffs or any segment of the Settlement Class.  Rather, all Settlement Class Members will be eligible to receive a distribution from the Net Settlement Fund in accordance with a plan of allocation to be approved by the Court.

At the final Settlement Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for the Net Settlement Fund (the "Plan of Allocation").  The Plan of Allocation provides a formula for the distribution of the Net Settlement Fund to Settlement Class Members demonstrating a loss on their transactions in Merit common stock related to the alleged fraud.  The formula to apportion the Net Settlement Fund among Settlement Class Members was developed by Lead Counsel in consultation with Lead Plaintiffs' damages expert and is based on the estimated amount of artificial inflation in the price of Merit common stock during the Class Period related to Defendants' alleged misconduct.

The calculation of "Recognized Loss Amounts" under the Plan will depend on when the claimant purchased and/or sold the eligible securities, whether the claimant held the securities through the statutory 90-day "look-back" period, *see* 15 U.S.C. § 78u-4(e), and the value of the securities when the claimant purchased, sold, or held them.  Once the Claims Administrator has processed all submitted claims, it will make distributions to eligible Settlement Class Members, until redistributions are no longer cost effective.  Any remaining balance will be contributed to non-sectarian, not-for-profit, 501(c)(3) organization(s) approved by the Court.

### E.      The Settlement Does Not Excessively Compensate Lead Counsel

The Court will not decide Lead Counsel's fee application until the submission of final approval briefing.  That said, the fees and expenses that Lead Counsel will request in this Action—an amount not to exceed 30% of the Settlement Fund plus litigation expenses up to $250,000—are reasonable.  In the Ninth Circuit, a 30%

award is "the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage.'" *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (Carter, J.) (quoting *Omnivision Techs.*, 559 F. Supp. 2d at 1047-48). A 30% fee award is consistent with fees awarded in comparable securities class actions with similar contingency fee risks. *See In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1 (C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (30% fee award of $20 million settlement was "fair and reasonable"); *Turocy v. El Pollo Loco Holdings, Inc.*, No. 8:15-cv-01343-DOC-KES, slip op. at ¶ 4 (C.D. Cal. Aug. 27, 2019) (awarding 30% of $20 million settlement) (Carter, J.).

Lead Counsel will provide detailed information in support of its application in its motion for attorneys' fees and expenses, which will be filed 35 days before the final Settlement Hearing.

**F.    Lead Plaintiffs Have Identified All Agreements Made in Connection With the Settlement**

In addition to the Stipulation, Lead Plaintiffs and Defendants have entered into a confidential Supplemental Agreement regarding requests for exclusion ("opt-outs") from the Settlement Class. *See* Stipulation ¶ 36. This agreement establishes the conditions under which Defendants may terminate the Settlement if the opt-outs received exceed an agreed-upon threshold. "This type of agreement is a standard provision in securities class actions and has no negative impact on the fairness of the Settlement." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *13 (S.D.N.Y. July 21, 2020); *see also Thomas v. MagnaChip Semiconductor Corp.*, 2017 WL 4750628, at *7 (N.D. Cal. Oct. 20, 2017) (same). As is also standard in securities class actions, agreements of this kind are not made public to avoid incentivizing individuals to leverage the opt-out threshold to exact individual

LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT CASE NO. 8:19-cv-2236-DOC-ADS

settlements at the Settlement Class's expense. *See, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 4207245, at *7 (N.D. Cal. Sept. 4, 2018) ("There are compelling reasons to keep this information confidential in order to prevent third parties from utilizing it for the improper purpose of obstructing the settlement and obtaining higher payouts."). In accordance with its terms, the Supplemental Agreement may be submitted to the Court *in camera*.

## V.    THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

In determining whether to grant preliminary approval, the Court should also determine whether it "will likely be able to" certify the proposed Settlement Class for purposes of the Settlement at final approval. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, to which the Parties have stipulated, consists of "all persons who purchased Merit common stock from February 26, 2019 through October 30, 2019, inclusive (the 'Class Period'), and who were damaged thereby." Stipulation ¶ 1(qq).[3]

The Ninth Circuit has long recognized that courts may certify class actions "for settlement purposes only." *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1018-19 (9th Cir. 1998). A settlement class, like other certified classes, must satisfy all the requirements of Rules 23(a) and (b), although Rule 23(b)(3)'s manageability concerns are not at issue. *See Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 593 (1997). The Court "will likely be able to" certify the Settlement Class at final approval because certification of the proposed Settlement Class is appropriate.

---

[3] Excluded from the Settlement Class are Defendants, the Officers and directors of Merit at all relevant times, and all such excluded persons' Immediate Family Members, legal representatives, heirs, agents, affiliates, predecessors, successors, and assigns, and any entity in which any excluded person has or had a controlling interest, as well as anyone who excludes him or herself by submitting a request for exclusion that is accepted by the Court.

**A.       The Proposed Settlement Class Satisfies Rule 23(a)**

*First*, numerosity is satisfied here.  The "numerosity" requirement is satisfied if "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Numerosity is presumed "when a proposed class has at least forty members," *In re Banc of Cal Sec. Litig.*, 326 F.R.D. 640, 646 (C.D. Cal. 2018), and for "securities fraud suits involving nationally traded stocks." *Milbeck v. TrueCar, Inc.*, 2019 WL 2353010, at *1 (C.D. Cal. May 24, 2019).  Here, Merit common stock was traded on the NASDAQ, with approximately 55 million shares outstanding during the Class Period and an average daily trading volume during the Class Period of over 600,000 shares.  *See In re NetSol Techs., Inc. Sec. Litig.*, 2016 WL 7496724, at *3 (C.D. Cal. July 1, 2016) ("Courts in the Central District have inferred that classes in securities cases include more than forty members based on trade volume.").

*Second*, commonality is satisfied.  Commonality is satisfied if "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  Rule 23(a)(2) is "construed permissively" and "[a]ll questions of fact and law need not be common to satisfy the rule." *Hanlon*, 150 F.3d at 1019.  "So long as there is even a single common question, a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Banc of Cal.*, 326 F.R.D. at 646.  Plaintiffs in securities fraud litigation generally satisfy this prerequisite "very easily." *Brown v. China Integrated Energy Inc.*, 2015 WL 12720322, at *14 (C.D. Cal. Feb. 17, 2015).  Here, there are numerous common questions of law and fact, including: (i) whether Defendants omitted or misrepresented material facts; (ii) whether Defendants acted with scienter; (iii) whether the price of Merit's common stock was artificially inflated or maintained during the Class Period; and (iv) whether Defendants' misrepresentations and omissions caused class members to suffer economic losses.  Courts routinely certify classes in securities fraud cases involving such common questions. *See, e.g.*, *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975); *TrueCar*,

2019 WL 2353010, at *2; *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *4 (C.D. Cal. July 25, 2019).

*Third*, typicality is established.  Typicality is satisfied when the claims or defenses of the party or parties representing the class are typical of the claims or defenses of the other class members. *See Amchem*, 521 U.S. at 625 (common-issues test readily met in securities cases).  Differences in the amount of damage, size or manner of purchase, nature of the purchase, and date of purchase also will not defeat class certification.  *See Alfus v. Pyramid Tech. Corp.*, 764 F. Supp. 598, 606 (N.D. Cal. 1991).  Typicality exists "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members."  *Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1155 (S.D. Cal. 2007), *aff'd*, 660 F.3d 1055 (9th Cir. 2011).  Here, Lead Plaintiffs' claims arise from the same events or course of conduct that give rise to claims of other Settlement Class Members, and the claims asserted are based on the same legal theory.  *See In re Silver Wheaton Corp. Sec. Litig.*, 2017 WL 2039171, at *7 (C.D. Cal. May 11, 2017) (finding typicality when "like all members of the proposed Class, plaintiffs purchased Silver Wheaton common stock during the Class Period and were allegedly damaged by the same misstatements and omissions by Silver Wheaton").

*Fourth*, adequacy is established.  To satisfy Rule 23(a)'s adequacy requirement, the class representatives must show that they will fairly and adequately protect the interests of the Settlement Class.  The proposed class representative must be free of interests that are antagonistic to the other members of the class, and counsel representing the class must be qualified, experienced, and capable of conducting the litigation.  *See Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978); *Hanlon*, 150 F.3d at 1020.  Here, Lead Plaintiffs have claims that are typical of, and coextensive with, those of the Settlement Class.  Lead Plaintiffs have also retained counsel highly experienced in securities class action litigation who have successfully prosecuted many securities class actions.  Thus,

Lead Plaintiffs are adequate representatives of the Settlement Class, and their counsel are qualified, experienced, and capable of prosecuting this Action.[4]

**B.      The Proposed Settlement Class Satisfies Rule 23(b)**

Rule 23(b)(3) requires that common questions of law or fact predominate over individual questions, and that a class action is superior to other available methods of adjudication.  *See Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011); *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 525 (N.D. Cal. 2009).

*First*, there are a number of common questions of law and fact that predominate.   These questions clearly predominate over individual questions because Defendants' alleged misconduct affected all Settlement Class Members in the same manner.  *See, e.g.*, *In re Cooper Cos. Inc. Sec. Litig.*, 254 F.R.D. 628, 632 (C.D. Cal. 2009) ("The common questions of whether misrepresentations were made and whether Defendants had the requisite scienter predominate over any individual questions of reliance and damages.").   Indeed, issues relating to Defendants' liability are common to all members of the Settlement Class.  *Id*.; *see LDK Solar*, 255 F.R.D. at 530.  Falsity, materiality, scienter, and loss causation are issues that "affect investors alike," and whose proof "can be made on a class-wide basis" because they "affect[] investors in common." *Schleicher v. Wendt*, 618 F.3d 679, 685, 687 (7th Cir. 2010).

---

[4] Attached as Exhibit 3 is a copy of an order in an unrelated action where BLB&G has been serving as Lead Counsel for SEB Investment Management AB ("SEB"), and class counsel for the certified class.  *See SEB Inv. Mgmt. AB v. Symantec Corp.*, 2021 WL 1540996 (N.D. Cal. Apr. 20, 2021).  As reflected in the order, counsel for a competing lead plaintiff movant (which was not appointed) raised questions about BLB&G's hiring of a former employee of the lead plaintiff in that case, SEB. Following discovery and extensive briefing, the court found that the evidence did not establish any *quid pro quo*, and allowed BLB&G to continue as class counsel. *See id*. at \*1-2.  The court in *Symantec* nevertheless ordered BLB&G to bring the order to the attention of any court in which BLB&G seeks appointment as class counsel, *see id*. at \*2, so we are submitting the order to the Court's attention.

LEAD PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT CASE NO. 8:19-cv-2236-DOC-ADS

*Second*, a class action is the superior method available to fairly and efficiently adjudicate this Action. The superiority of class actions to resolve the claims of a large, geographically dispersed class of investors in securities fraud cases is well recognized. *See Amchem*, 521 U.S. at 625. Thus, all of the requirements of Rule 23(a) and (b) are satisfied, and there is nothing preventing the Court from certifying this Settlement Class for settlement purposes, appointing Lead Plaintiffs as class representatives, and appointing Lead Counsel as counsel for the Settlement Class.

## VI.  THE COURT SHOULD APPROVE THE PROPOSED FORM OF NOTICE AND PLAN FOR PROVIDING NOTICE TO THE SETTLEMENT CLASS

Rule 23(c)(2)(B) requires that notice to class members of the pendency of the Action and their right to request exclusion be the "best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." In addition, Rule 23(e)(1)(B) requires that notice of a class action settlement be directed "in a reasonable manner to all class members who would be bound by the" proposed settlement. The settlement notice "must 'generally describe[] the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Lane v. Facebook, Inc.*, 696 F.3d 811, 826 (9th Cir. 2012). Here, the proposed Notice and method of disseminating Notice satisfy all these standards.

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval, the Claims Administrator, A.B. Data, Ltd. will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Preliminary Approval Order) by first-class mail to all Settlement Class Members who can be identified with reasonable effort. The Claims Administrator will mail Notices to shareholders identified by Merit and will also utilize a proprietary list of the largest and most common banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice to potential Settlement Class

Members.  Furthermore, a Summary Notice will be published in *The Wall Street Journal* and transmitted over *PR Newswire*.

Lead Counsel will also make copies of the Notice and Claim Form available for download via the website to be established by the Claims Administrator, www.MeritMedicalSecuritiesLitigation.com.  The website will provide copies of key documents related to the Action and proposed Settlement.

The proposed Notice includes all the information required by Rule 23 and the PSLRA, as well as additional information.  The proposed Notice describes the essential terms of the Settlement and sets forth, among other things: (1) the nature, history and status of the litigation; (2) the definition of the Settlement Class and who is excluded from the Settlement Class; (3) the reasons the parties have proposed the Settlement; (4) the amount of the Settlement; (5) the estimated average recovery per damaged share; (6) the Settlement Class's claims and issues; (7) the Parties' disagreement over damages and liability; (8) the maximum amount of attorneys' fees and expenses that Lead Counsel intend to seek in connection with final settlement approval; (9) the proposed plan for allocating the Settlement proceeds to the Settlement Class; and (10) the date, time, and place of the final settlement hearing. Further, the proposed Notice discusses the rights Settlement Class Members have in connection with the Settlement, including: (1) the right to request exclusion from the Settlement Class and the method for doing so; (2) Settlement Class Members' right to object to the Settlement, or any aspect thereof, and the manner for filing and serving an objection; and (3) the right to participate in the Settlement and instructions on how to complete and submit a Claim Form.

A.B. Data estimates that the total Notice and Administration Costs for the Action will be approximately $250,000.  However, because these costs are dependent on how many Notice and Claim Forms are ultimately mailed and how many claims are ultimately received and processed, this is only an estimate.

Courts routinely find that comparable notice procedures meet the

requirements of due process, Rule 23, and the PSLRA. *See, e.g.*, *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *4 (S.D. Cal. Oct. 30, 2020) (approving comparable notice plan); *In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884, at *3 (C.D. Cal. Dec. 4, 2019) (same). Accordingly, in granting preliminary approval of the Settlement, Lead Plaintiffs respectfully request that the Court also approve the proposed form and method of giving notice.

## VII. PROPOSED SCHEDULE OF EVENTS

In connection with preliminary approval of the Settlement, the Court must also set dates for certain future events (*i.e.*, mailing of the Notice and publication of the Summary Notice, filing of supporting briefs, deadlines for requesting exclusion from the Settlement Class, objecting to the Settlement, submitting claim forms and the fairness hearing). Lead Plaintiffs propose the schedule set forth in Appendix A, which is based on the date the Preliminary Approval Order is entered and the date for which the Settlement Hearing is scheduled. If the Court agrees with the proposed schedule, Lead Plaintiffs request that the Court schedule the Settlement Hearing for a date 100 calendar days after entry of the Preliminary Approval Order, or at the Court's earliest convenience thereafter. For example, if the Court enters the Preliminary Approval Order by December 29, 2021, Lead Plaintiffs request that the Court schedule the Settlement Hearing for April 1, 2022, or at the earliest date thereafter that the Court's schedule may permit.

## VIII. CONCLUSION

Based on the foregoing, Lead Plaintiffs respectfully request that the Court enter the [Proposed] Order Preliminarily Approving Settlement and Providing for Notice of the Settlement submitted herewith, which will: (1) preliminarily approve the proposed Settlement; (2) approve the form and manner of giving notice of the Settlement to the Settlement Class; and (3) schedule a hearing date and time to consider final approval of the Settlement and related matters.

Dated:  December 22, 2021          Respectfully submitted,

**SAXENA WHITE P.A.**

/s/ *David R. Kaplan*
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Hani Y. Farah (SBN 307622)
hfarah@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

-and-

Steven B. Singer (appearing *pro hac vice*)
ssinger@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Proposed Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

-and-

John J. Rizio-Hamilton
(appearing *pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*

LEAD PLAINTIFFS' MOTION FOR
PRELIMINARY APPROVAL OF SETTLEMENT
CASE NO. 8:19-cv-2236-DOC-ADS

**Appendix A**

**Proposed Schedule of Settlement Events**

| Event | Time for Compliance | Proposed Dates[5] |
|---|---|---|
| Deadline to commence mailing the Notice and Claim Form to Settlement Class Members ("Notice Date") | 15 business days after the entry of the Preliminary Approval Order (Preliminary Approval Order ¶ 7(b)) | Jan. 21, 2022 |
| Deadline for publishing the Summary Notice | 10 business days after the Notice Date (*Id.* ¶ 7(d)) | Feb. 4, 2022 |
| Deadline for filing papers in support of final settlement approval, the Plan of Allocation, and the request for attorneys' fees and litigation expenses | 35 calendar days before the date scheduled for the Settlement Hearing (*Id.* ¶ 27) | Feb. 25, 2022 |
| Deadline for requesting exclusion from the Settlement Class or filing an objection to the Settlement | 21 calendar days before the date of the Settlement Hearing (*Id.* ¶¶ 17-18) | Mar. 11, 2022 |
| Deadline for filing reply papers | 7 calendar days before the Settlement Hearing (*Id.* ¶ 27) | Mar. 25, 2022 |
| Settlement Hearing | At the Court's convenience, at least 100 calendar days following entry of the proposed Preliminary Approval Order (*Id.* ¶ 5) | Apr. 1, 2022 |
| Deadline for submitting Claim Forms | 120 calendar days following the Notice Date (*Id.* ¶ 11) | May 21, 2022 |

---

[5] The "Proposed Calendar Dates" are representative dates that would apply if the Court entered the Preliminary Approval order on December 29, 2021 and set the Settlement Hearing for April 1, 2022.