**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Hani Y. Farah (SBN 307622)
hfarah@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone:  (858) 997-0860
Facsimile:   (858) 369-0096

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Proposed Settlement Class*

[Additional counsel appear on signature page]

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (SBN 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | Case No. 8:19-cv-2326-DOC-ADS<br><br>**LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION**<br><br>Judge:        Hon. David O. Carter<br>Courtroom: 9D<br>Date:         April 13, 2022<br>Time:         8:30 a.m. |

# TABLE OF CONTENTS

I.     INTRODUCTION ...................................................................................... 1

II.    THE SETTLEMENT WARRANTS FINAL APPROVAL ........................... 4

       A.    Lead Plaintiffs and Lead Counsel Have Adequately
             Represented the Class ................................................................... 5

       B.    The Settlement is the Result of Arm's Length Negotiations .................... 6

       C.    The Relief Provided for the Settlement Class is Adequate ...................... 8

             1.   The Amount Offered in the Settlement Weighs in
                  Favor of Final Approval ........................................................ 8

             2.   The Settlement Weighs the Strength of Lead
                  Plaintiffs' Claims with the Substantial Risks of
                  Continuing Litigation ........................................................... 11

             3.   The Proposed Method for Distributing Relief to
                  the Settlement Class is Effective .......................................... 14

             4.   Lead Counsel's Fee and Expense Request is Fair
                  and Reasonable .................................................................... 14

             5.   The Parties Have No Side Agreements Other Than
                  the Supplemental Agreement Concerning Opt-Outs ............... 16

             6.   All Settlement Class Members are Treated
                  Equitably .............................................................................. 16

       D.    The Extent of Discovery Completed and the Stage of the
             Proceedings Favor Final Settlement Approval .................................... 17

       E.    The Risk of Maintaining a Class Action Through Trial
             Supports Approval ..................................................................... 18

       F.    The Experience and Views of Counsel Favor Approval ...................... 18

       G.    The Reaction of the Settlement Class Favors Approval ...................... 19

III.   NOTICE TO THE SETTLEMENT CLASS SATISFIED THE
       REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE
       PSLRA ......................................................................................... 20

IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND
       ADEQUATE ................................................................................... 23

V.     THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS .............. 25

VI.    CONCLUSION ............................................................................... 25

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*,
568 U.S. 455 (2013) .................................................................................................6

*Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach*,
2019 WL 7753447 (C.D. Cal. Jan. 7, 2019) .........................................................8

*Avila v. LifeLock Inc.*,
2020 WL 4362394 (D. Ariz. July 27, 2020) .......................................................15

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016)..............................................11, 15

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019)................................................*passim*

*Churchill Village L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)................................................................................19

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992)........................................................................13, 23

*Destefano v. Zynga, Inc.*,
2016 WL 537946 (N.D. Cal. Feb. 11, 2016) .......................................................22

*Garner v. State Farm Mut. Auto. Ins. Co.*,
2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ....................................................11

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998)...................................................................3, 5, 11

*Harris v. U.S. Physical Therapy, Inc.*,
2012 WL 3277278 (D. Nev. July 18, 2012).........................................................19

*Hefler v. Wells Fargo & Co.*,
2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ....................................6, 14, 16, 22

*Hill v. Canidae Corp.*,
2021 WL 4988032 (C.D. Cal. Apr. 2, 2021)..........................................................7

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
2018 WL 4959014 (C.D. Cal. Aug. 13, 2018)......................................................15

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014)....................................................18

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016).......................................................4

*In re Banc of California Sec. Litig.*,
2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) .........................................................7

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12697736 (C.D. Cal. June 5, 2015) ........................................................5

*In re Biolase, Inc. Sec. Litig.*,
2015 WL 12720318.........................................................................................10, 23

*In re Carrier IQ, Inc., Consumer Privacy Litig.*,
2016 WL 4474366 (N.D. Cal. Aug. 25, 2016)....................................................16

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019).....................................9, 11, 18, 20

*In re JDS Uniphase Corp. Sec. Litig.*,
2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).....................................................13

*In re LJ Int'l Inc. Sec. Litig.*,
2009 WL 10669955 (C.D. Cal. Oct. 19, 2009).....................................................11

*In re Omnivision Techs. Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2007) ..............................................................15

*In re Oracle Corp. Sec. Litig.*,
627 F.3d 376 (9th Cir. 2010).............................................................................12

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ......................................................15

*In re Silver Wheaton Corp. Sec. Litig.*,
2020 WL 4581642 (C.D. Cal. Aug. 6, 2020).......................................................15

*In Re Snap Inc. Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb. 18, 2021)........................................................10

*In re Syncor ERISA Litig.*,
   516 F.3d 1095 (9th Cir. 2008)................................................................1, 4

*In re Vivendi Universal, S.A., Sec. Litig.*,
   2012 WL 362028 (S.D.N.Y. Feb. 6, 2012)........................................................13

*In re Zynga Inc. Sec. Litig.*,
   2015 WL 6471171 (N.D. Cal. Oct. 27, 2015)......................................................16

*International Broth. of Elec. Workers Local 697 Pension Fund v.*
   *Int'l Game Tech., Inc.*,
   2012 WL 5199742 (D. Nev. Oct. 19, 2012)........................................................10

*Maine State Ret. Sys. v. Countrywide Fin. Corp.*,
   2013 WL 6577020 (C.D. Cal. Dec. 5, 2013) ................................................18, 20

*Mild v. PPG Indus., Inc.*,
   2019 WL 3345714 (C.D. Cal. July 25, 2019)............................................8, 10, 17

*Mullane v. Central Hanover Bank & Trust Co.*,
   339 U.S. 306 (1950) ..............................................................................20

*Murphy v. Precision Castparts Corp.*,
   2021 WL 2080016 (D. Or. May 24, 2021) ........................................................12

*Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ............................................................11, 13, 19

*Officers for Justice v. Civil Serv. Comm'n of City and County*
   *of San Francisco*,
   688 F.2d 615 (9th Cir. 1982)..............................................................4, 5, 9

*Pataky v. Brigantine, Inc.*,
   2018 WL 3020159 (S.D. Cal. June 18, 2018)........................................................7

*Riker v. Gibbons*,
   2010 WL 4366012 (D. Nev. Oct. 28, 2010)........................................................11

*Rodriguez v. West. Pub. Corp.*,
   563 F.3d 948 (9th Cir. 2009)..............................................................21

*Silber v. Mabon*,
   18 F.3d 1449 (9th Cir. 1994)..............................................................20

*Sudunagunta v. NantKwest, Inc.,*
  2019 WL 2183451 (C.D. Cal. May 13, 2019) ...................................13, 15, 17, 19

*Todd v. STAAR Surgical Co.,*
  2017 WL 4877417 (C.D. Cal. Oct. 24, 2017).............................................8, 16, 18

*van Wingerden v. Cadiz, Inc.,*
  2017 WL 5565263 (C.D. Cal. Feb. 8, 2017)........................................................15

*Vinh Nguyen v. Radient Pharms. Corp.,*
  2014 WL 1802293 (C.D. Cal. May 6, 2014) .......................................................23

*Vizcaino v. Microsoft Corp.,*
  290 F.3d 1043 (9th Cir. 2002)............................................................................15

**STATUTES**

15 U.S.C. § 78u-4(a)(7) ............................................................................................21

**RULES**

Fed. R. Civ. P. 23................................................................................................*passim*

**OTHER AUTHORITIES**

4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*
  § 11:50 (4th ed. 2002) ......................................................................................11

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Court-appointed Lead Plaintiffs City of Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund (collectively, the "Atlanta Funds") and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("Baton Rouge" and, together with the Atlanta Funds, the "Lead Plaintiffs") respectfully submit this memorandum of law in support of their motion for final approval of the Settlement, and approval of the proposed Plan of Allocation.[1]

## I.   **<u>INTRODUCTION</u>**

After more than two years of hard-fought litigation, Lead Plaintiffs are pleased to present the Settlement for the Court's consideration and final approval. The Settlement provides for a $18.25 million all-cash payment—an exceptional result for the Settlement Class in a case that was complex, uncertain, and risky. The Settlement provides an immediate and meaningful benefit for the Settlement Class that avoids the risk, delay, and expense inherent in years of continued litigation. As such, it is the embodiment of the Ninth Circuit's "policy favoring settlement, particularly in class actions." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (emphasizing the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned").

---

[1] Lead Plaintiffs respectfully refer the Court to the accompanying Joint Declaration of David R. Kaplan and Jonathan D. Uslaner in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl.") for a detailed description of the case and the Settlement. Unless otherwise noted, capitalized terms have the meaning set forth in the Stipulation and Agreement of Settlement (ECF No. 105-1); all internal citations and quotation marks are omitted, and all emphasis is added. On January 3, 2022, the Court preliminarily approved the Settlement and the Notice plan (ECF No. 106). On or about January 14, 2022, Defendants caused the $18.25 million Settlement Amount to be deposited into an escrow account for the benefit of the Settlement Class. Pursuant to L.R. 7-3, Lead Counsel has conferred with counsel for Defendants, and Defendants do not oppose the relief requested herein.

In reaching the Settlement, Lead Plaintiffs and Lead Counsel recognized that if they had proceeded with the litigation, they would have faced significant risks and obstacles in establishing all of the elements of their claims, including damages. The gravamen of Lead Plaintiffs' claims is that, throughout the Class Period, Defendants made materially false and misleading statements relating to two of Merit's recent acquisitions: (i) Cianna Medical, Inc. ("Cianna"), a manufacturer of devices for the treatment of breast cancer; and (ii) the principal assets of Vascular Insights LLC ("Vascular Insights"), namely, ClariVein, a device for the treatment of varicose veins. Plaintiffs further alleged that these misstatements caused the price of Merit common stock to trade at artificially inflated prices and decline significantly when the truth was allegedly revealed.

While Lead Plaintiffs and Lead Counsel strongly believe in the merits of their claims and aggressively prosecuted the Action, Defendants vehemently disputed both liability and damages, and at summary judgment and trial would have presented credible arguments that their statements to investors were neither false nor misleading. Specifically, Defendants would have argued that the statements concerned a revenue shortfall that was immaterial as a matter of Ninth Circuit law and that the departure of a few salespersons similarly had an immaterial impact on the Company's 2019 financial results. Defendants would have also argued that they lacked any fraudulent intent in making the subject statements, that Lead Plaintiffs' losses and those of the proposed class were not caused by their statements, and that even if liability and loss causation could be established at trial, the vast majority of Merit's stock price declines following the alleged corrective disclosure events were unrelated to the alleged fraud, and thus, any damages were far less than those sought by Lead Plaintiffs. Had the Court or a jury accepted these arguments, either in whole or in part, damages would have been dramatically reduced or entirely eliminated.

By the time the Parties agreed to the Settlement, Lead Plaintiffs had developed a robust understanding of the strengths and weaknesses of the claims and defenses

asserted in this Action. Indeed, the Settlement is the product of Lead Plaintiffs' extensive litigation efforts, including: (1) completing an extensive pre-suit and ongoing investigation of the claims at issue, including interviews of over four dozen former Merit, Cianna, and Vascular Insights employees; (2) successfully opposing Defendants' motion to transfer the Action to the District of Utah, where Merit is headquartered; (3) preparing and filing the detailed 98-page Complaint; (4) successfully opposing Defendants' motion to dismiss the Complaint before Magistrate Judge Autumn D. Spaeth and, again, before this Court; and (5) conducting meaningful fact discovery, including seeking and obtaining over a half-million pages of documents from Defendants and five subpoenaed non-parties, diligently reviewing and analyzing such documents, and serving and obtaining interrogatory responses and supplemental interrogatory responses from Defendants.

In light of the result achieved, the risks of litigating this Action, and the substantial delay that would be entailed in the continued litigation of this Action through class certification, summary judgment, trial, and the inevitable appeals, Lead Plaintiffs and Lead Counsel strongly believe that the Settlement is a highly favorable result for the Settlement Class that is supported by each of the factors set forth by the Ninth Circuit in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998) and Rule 23(e)(2). The Settlement represents a substantial recovery of between 12% and 55% of the Settlement Class's maximum realistic trial damages and was the product of a recommendation by the independent mediator, Michelle Yoshida of Phillips ADR. The Settlement is also endorsed by Lead Plaintiffs, who are sophisticated institutional investors that collectively manage over $3 billion in pension assets. The Settlement eliminates these substantial risks and provides an immediate $18.25 million cash recovery to the Settlement Class. Accordingly, Lead Plaintiffs respectfully submit that the Court should approve the Settlement as fair, adequate, and reasonable.

Lead Plaintiffs also request that the Court approve the proposed Plan of Allocation for the Net Settlement Fund. The Plan of Allocation is designed to equitably distribute the Settlement Fund proceeds on a *pro rata* basis to Authorized Claimants. It was prepared with the assistance of Lead Plaintiffs' damages expert, who calculated the artificial inflation in the prices of Merit common stock during the Settlement Class Period, and is substantially similar to numerous other settlement plans of allocation that have been approved in this District and around the country as fair, adequate, and reasonable.

## II.    **THE SETTLEMENT WARRANTS FINAL APPROVAL**

The Ninth Circuit and courts around the country recognize that there is a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *Syncor*, 516 F.3d at 1101; *In re Amgen Inc. Sec. Litig.,* 2016 WL 10571773, at *2 (C.D. Cal. Oct. 25, 2016) (same). The Ninth Circuit has long underscored that "voluntary conciliation and settlement are the preferred means of dispute resolution" which is "especially true in complex class action litigation." *See Officers for Justice v. Civil Serv. Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "Settlement is the offspring of compromise; the question . . . is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Rentech*, 2019 WL 5173771, at *5

Federal Rule of Civil Procedure 23(e) sets forth the procedures for approval of class action settlements. In determining whether a proposed settlement is "fair, reasonable, and adequate," the Court considers whether: (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's

fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

The Ninth Circuit also considers the following *Hanlon* factors in determining whether a proposed class action settlement is fair, reasonable, and adequate: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement. *Hanlon,* 150 F.3d at 1026. "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case." *Officers for Justice*, 688 F.2d at 625. As discussed below, the proposed $18.25 million Settlement here amply satisfies each of the applicable factors.

### A.    Lead Plaintiffs and Lead Counsel Have Adequately Represented the Class

In determining whether to approve a class action settlement, the Court considers whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12697736, at *4 (C.D. Cal. June 5, 2015). Here, there is no conflict between Lead Plaintiffs and the Settlement Class. Lead Plaintiffs and the other Settlement Class Members all purchased Merit common stock during the Class Period and were damaged by the same alleged false and misleading statements.

If Lead Plaintiffs proved their claims at trial, they would also prove the Settlement Class's claims. *See Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 460 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Further, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class in both their vigorous prosecution of the Action and in the negotiation and achievement of the Settlement. Lead Counsel are highly qualified and experienced in securities litigation, as set forth in their firm resumes (*see* Joint Decl., Exs. D-4 & E-3), and effectively led the prosecution of the litigation against skilled and experienced opposing counsel.

Given this vigorous prosecution of the Action, Lead Plaintiffs and their counsel "possessed 'sufficient information to make an informed decision about settlement.'" *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at *6 (N.D. Cal. Dec. 18, 2018). Specifically, Lead Plaintiffs' decision to settle this case was informed by a thorough pre-suit and ongoing investigation of the subject claims (including interviews of over four dozen former Merit, Cianna, and/or Vascular Insights employees); the filing of a detailed 98-page Complaint; success in defeating Defendants' motion to transfer the case to the District of Utah, where Merit is headquartered; success in substantially defeating Defendants' motion to dismiss (through two successive rounds of briefing); obtaining through discovery more than a half-million pages of documents from Defendants and five subpoenaed third parties (including four prominent investment banks/financial advisors); and consultation with experienced and qualified experts. The Settlement is demonstrably the product of well-informed negotiations and vigorous advocacy on behalf of Merit investors. This factor clearly supports approval of the Settlement.

**B.      The Settlement is the Result of Arm's Length Negotiations**

There is a strong presumption of fairness to settlements negotiated at arm's-length by experienced counsel and with the assistance of an independent mediator.

*See, e.g., Hill v. Canidae Corp.*, 2021 WL 4988032, at *8 (C.D. Cal. Apr. 2, 2021) ("The use of a mediator experienced in the settlement process tends to establish that the settlement process was not collusive."); *In re Banc of California Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019) (that settlement was reached after "significant arms-length negotiations with a third-party mediator" was "important factor" in finding settlement "fair, reasonable, and appropriate").

As an initial matter, "[a] settlement is presumed to be fair if reached in arms-length negotiations after relevant discovery has taken place." *Pataky v. Brigantine, Inc.*, 2018 WL 3020159, at *3 (S.D. Cal. June 18, 2018). The presumption applies here. As detailed above, the Settlement was reached after Lead Plaintiffs conducted extensive document discovery of Defendants and five subpoenaed non-parties that were directly involved in the Cianna and Vascular Insights acquisitions. Accordingly, at the time the Settlement was reached, Lead Plaintiffs and Lead Counsel possessed a firm understanding of the strengths and weaknesses of the Settlement Class's claims and Defendants' defenses.

Moreover, the Settlement was secured only after a full-day in-person mediation session and approximately six weeks of continued negotiations under the guidance of an experienced mediator. The Parties first began earnestly exploring the possibility of a settlement in the fall of 2021, after Lead Plaintiffs defeated Defendants' motion to transfer and substantially defeated Defendants' motion to dismiss. The Parties agreed to engage in private mediation and retained an experienced mediator, Michelle Yoshida of Phillips ADR, one of the nation's preeminent mediation firms. Ms. Yoshida has served as full-time mediator, arbitrator, and special master since 2007, and both Ms. Yoshida and Phillips ADR have expertise in mediating complex securities and shareholder litigation. Pursuant to a schedule approved by Ms. Yoshida, the Parties exchanged detailed mediation statements concerning liability and damages on September 24, 2021, and

participated in a full-day mediation session on October 5, 2021. The October 5 mediation did not, however, result in a settlement.

The Parties continued to engage in settlement discussions, under Ms. Yoshida's supervision, for approximately six weeks following their in-person mediation. When negotiations reached an impasse, Ms. Yoshida made a mediator's recommendation that the Parties settle the Action for $18,250,000. The mediator's recommendation was made on a double-blind basis, which the Parties accepted on November 16, 2021.

These facts demonstrate the Parties' good-faith arm's-length negotiations and support approval of the Settlement. *See, e.g., Arnaud van der Gracht de Rommerswael on Behalf of Puma Biotechnology, Inc. v. Auerbach,* 2019 WL 7753447, at *3 (C.D. Cal. Jan. 7, 2019) (approving settlement where "Plaintiffs did extensive document review, exchanged initial settlement demands with Defendants, and participated in months of telephonic and written negotiations and mediation," finding the "arms-length negotiations before a qualified mediator" supported approval of the settlement); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *2 (C.D. Cal. Oct. 24, 2017) (approving settlement that was "the outcome of an arms-length negotiation conducted with the help of experienced mediator Michelle Yoshida of Phillips ADR").

**C.   The Relief Provided for the Settlement Class is Adequate**

**1.   The Amount Offered in the Settlement Weighs in Favor of Final Approval**

The $18,250,000 cash Settlement constitutes a meaningful percentage of the maximum possible recovery for the Settlement Class, especially taking into account the uncertainty, risks, and costs associated with attempting to obtain a greater amount. *Mild v. PPG Indus., Inc.*, 2019 WL 3345714, at *6 (C.D. Cal. July 25, 2019) ("Based on the significant risks of continued litigation and the Settlement amount, the Court finds that the amount offered for settlement is fair."). To evaluate

the adequacy of the settlement amount, courts primarily consider "plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Extreme Networks, Inc. Sec. Litig.,* 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019). In undertaking this analysis, "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery will not per se render the settlement inadequate or unfair." *Officers for Justice*, 688 F.2d at 628.

Lead Counsel retained Crowninshield Financial Research, Inc. ("Crowninshield"), an independent consulting firm that is highly experienced in providing expert analysis and testimony in the fields of economics, finance, and accounting, with particular expertise in securities litigation, to opine on damages in this case. Based on Crowninshield's expert analysis, Lead Plaintiffs estimate that if the Settlement Class prevailed through class certification, summary judgment, trial and appeals on all arguments concerning liability, loss causation, and damages, the absolute *maximum* theoretical class-wide damages are approximately $251 million, *before* accounting for *any* issues of loss causation. *After* accounting for issues of loss causation, Lead Plaintiffs and their expert estimated the *maximum* damages in this case were approximately $153 million.

Lead Counsel and Lead Plaintiffs appreciated, however, that Defendants had meaningful arguments concerning loss causation that, if accepted by the Court or the jury, would materially decrease the amount of recoverable damages well below Lead Plaintiffs' maximum damages estimate. Specifically, Defendants would have argued that the vast majority of Merit's stock price decline following the alleged corrective disclosure events was in response to news and information that was unrelated to the alleged fraud, and thus any damages were far less than those sought by Lead Plaintiffs. Defendants would continue to argue that, on the alleged corrective dates, Merit disclosed a variety of factors unrelated to Cianna or ClariVein that contributed to the 2Q19 and 3Q19 financial results and its decision to lower FY 2020 revenue guidance. Defendants would have also cited a host of factors disclosed

by Merit and discussed in analyst reports as contributing to the financial results and lowered guidance, such as foreign exchange headwinds and higher operating expenditures, and would have argued that the majority of these extraneous factors were unrelated to the alleged misrepresentations and omissions that specifically concerned the Cianna and ClariVein acquisitions. If the Court or jury were to accept Defendants' loss causation arguments, Lead Plaintiffs and their expert estimated that the maximum realistic trial damages were approximately $33.4 million.

Accordingly, assuming Lead Plaintiffs and the Settlement Class prevailed at trial and on any appeals on all arguments concerning Defendants' liability, and after accounting for confounding news and other issues of loss causation, the Settlement represents a substantial recovery of between 12% and 55% of the total class-wide damages. This compares favorably to the percentage recovery typically achieved in comparable securities class actions. *See International Broth. of Elec. Workers Local 697 Pension Fund v. Int'l Game Tech., Inc.*, 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement where recovery was about 3.5% of maximum damages and noting "[t]his amount is within the median recovery in securities class actions settled in the last few years"); *see also* Cornerstone Research, Securities Class Action Settlements—2020 Review and Analysis (Cornerstone Research 2021) at p. 6, Figure 5 (finding median recovery rate of 4.9% based on empirical study of securities class action settlements between 2011-2019). Indeed, settlements valued at lower percentages of possible damages are routinely approved. *See, e.g., In Re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (approving settlement representing "approximately 7.8% of the class's maximum potential aggregate damages, which is similar to the percent recovered in other court-approved securities settlements"); *PPG Indus., Inc.*, 2019 WL 3345714, at *6 (approving settlement representing "approximately 5.8% of the total maximum damages potentially available" and noting that this exceeded the median recoveries in securities class actions); *In re Biolase, Inc. Sec. Litig.*, 2015 WL 12720318, at *4

(approving securities class action settlement representing "8% of the maximum recoverable damages"); *In re LJ Int'l Inc. Sec. Litig.,* 2009 WL 10669955, at *4 (C.D. Cal. Oct. 19, 2009) (approving securities class action settlement where recovery was approximately 4.5% of maximum damages).

**2. The Settlement Weighs the Strength of Lead Plaintiffs' Claims with the Substantial Risks of Continuing Litigation**

In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i), courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial." *Extreme Networks,* 2019 WL 3290770, at *8 (citing *Hanlon*, 150 F.3d at 1026). Courts favor settlement as it conserves valuable judicial resources and avoids further "protracted and uncertain litigation" and "subsequent appeals." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc*., 221 F.R.D. 523, 527 (C.D. Cal. 2004); *see Garner v. State Farm Mut. Auto. Ins. Co.*, 2010 WL 1687832, at *10 (N.D. Cal. Apr. 22, 2010) ("Settlement avoids the complexity, delay, risk and expense of continu[ed] … litigation" and "produce[s] a prompt, certain, and substantial recovery for the … class."). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at *7 (C.D. Cal. July 22, 2016); *Riker v. Gibbons*, 2010 WL 4366012, at *4 (D. Nev. Oct. 28, 2010) (citing 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* § 11:50 (4th ed. 2002)).

Here, Lead Plaintiffs considered the many costly milestones that remain in this litigation. As an initial matter, courts recognize that "securities fraud class actions are complex cases that are time-consuming and difficult to prove." *Rentech*, 2019 WL 5173771, at *6; *see also Extreme Networks,* 2019 WL 3290770, at *8 ("Securities actions in particular are often long, hard-fought, complicated, and

extremely difficult to win"). Complex securities fraud class actions such as this one present myriad risks that plaintiffs must overcome in order to ultimately secure a recovery. *See, e.g., In re Oracle Corp. Sec. Litig*., 627 F.3d 376, 395 (9th Cir. 2010) (affirming summary judgment in favor of defendants where plaintiff failed to establish a triable issue on loss causation); *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *5 (D. Or. May 24, 2021) (granting summary judgment after more than five years of litigation in light of new Ninth Circuit precedent, finding that plaintiffs failed to establish falsity and loss causation). While Plaintiffs must prove all elements of their claims to prevail, Defendants need only succeed on one defense to potentially defeat the entire Action. The uncertainty created by these circumstances weighs in favor of approving the Settlement.

Moreover, while Lead Plaintiffs strongly believe in the merits of this case, they are cognizant of the risk that continued litigation could end in no recovery. Lead Plaintiffs recognize the risks in establishing the core claim elements of falsity, materiality, scienter, and loss causation to survive a motion for summary judgment and prevail at trial. Regarding "falsity," Defendants would likely continue to argue that Lead Plaintiffs mischaracterize Defendants' statements to investors, taking them out of context and excluding clarifying remarks. As to "materiality," Defendants would continue to argue that the challenged statements concerning Cianna and ClariVein were not material as a matter of law because they had a negligible impact on Merit's overall 2019 financial results. As to "loss causation," Defendants would continue to strenuously argue that the declines in Merit's stock price on July 26, 2019 and October 31, 2019, the trading days after the alleged corrective disclosure dates, were caused by a variety of factors unrelated to the alleged fraud. Defendants deny and would continue to vigorously defend against Lead Plaintiffs' allegations and would continue to do so should this Action proceed to trial.

Further, Defendants would likely have argued that, despite the asserted securities fraud, there were no SEC investigations, internal investigations, executive

departures, whistleblowers, financial restatements, or accounting irregularities of any kind bearing on the alleged improprieties.  Moreover, despite the alleged fundamental integration failures concerning Cianna and ClariVein, after the Class Period, Merit's stock price immediately rebounded and had reached record highs by the time the Settlement was reached.  Further still, Defendants Lampropoulos and Parra remain firmly in place as the Company's CEO and CFO.  These and other facts supporting the Company's positive long-term performance would have presented a credible challenge to Plaintiffs' securities fraud claims, and supported Defendants' arguments that their statements were immaterial, taken out-of-context, lacked any intent to defraud, and any underlying business issues were ephemeral.

Lead Plaintiffs believe that they would have advanced strong arguments in response.  However, there is no question that a jury could side with Defendants.  *See In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury returned a verdict for defense after trial in securities fraud class action, finding that defendants were not liable for securities fraud).  Absent settlement now, the Parties may face years litigating this Action to a final resolution, including further discovery, dispositive motions, trial, and likely post-trial appeals.  *See Sudunagunta v. NantKwest, Inc.,* 2019 WL 2183451, at *4 (C.D. Cal. May 13, 2019) (finding the likelihood of "further deposition and expert discovery, motion practice, trial, and potentially appeals following trial" to favor settlement); *Nat'l Rural Telecomms. Coop.,* 221 F.R.D. at 527 ("even if [a jury] did reach unanimous verdicts, it is likely that an appeal would have followed"); *In re Vivendi Universal, S.A., Sec. Litig.*, 2012 WL 362028, at *1 (S.D.N.Y. Feb. 6, 2012) (noting that, two years after jury verdict in plaintiffs' favor and ten years after the case was filed, shareholders had still received no recovery).

In light of these considerations, the Settlement provides a certain and beneficial result and avoids considerable risks, expense, and delay, favoring approval.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1291 (9th Cir. 1992)

("the court need not reach any ultimate conclusions on the contested issues of fact and law which underlie the merits of the dispute, for it is the very uncertainty of outcome in litigation and avoidance of wasteful and expensive litigation that induce consensual settlements.").

### 3. The Proposed Method for Distributing Relief to the Settlement Class is Effective

The Court also considers "the effectiveness of [the] proposed method of distributing relief to the class." Fed. R. Civ. P. 23(e)(2)(C)(ii). Here, as demonstrated below in Section IV, the method for processing Settlement Class Members' claims and distributing relief to eligible claimants include well-established, effective procedures for processing claims submitted by potential Settlement Class Members and efficiently distributing the Net Settlement Fund. A.B. Data, Ltd. ("A.B. Data"), the Court-approved Claims Administrator, will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any deficiencies in their claims or request the Court to review a denial of their claims, and, lastly, mail Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation) after Court-approval. Claims processing like the method proposed here is both standard and effective in securities class action settlements. *See Hefler*, 2018 WL 6619983, at *7 ("The Court further finds that the proposed claims process provides an effective method of implementing that plan by ensuring that the claimant provides sufficient information to calculate the recognized loss amount. Therefore, this factor weighs in favor of approval").

### 4. Lead Counsel's Fee and Expense Request is Fair and Reasonable

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment." As detailed in the accompanying Motion for Attorneys' Fees and Litigation Expenses, Lead Counsel seek an award of attorneys' fees of 30% of the Settlement Fund and $104,686.68 in expenses, which include

eDiscovery costs and costs of retaining experts.  This falls within the "norm" of attorney's fees in the Ninth Circuit.  *In re Allergan, Inc. Proxy Violation Derivatives Litig.*, 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (Carter, J.) (in the Ninth Circuit, a 30% fee award is "the norm 'absent extraordinary circumstances that suggest reasons to lower or increase the percentage'") (quoting *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1047-48 (N.D. Cal. 2007)); *see, e.g.*, *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *Turocy v. El Pollo Loco Holdings, Inc.*, No. 8:15-cv-01343-DOC-KES, slip op. at ¶ 4 (C.D. Cal. Aug. 27, 2019) (Carter, J.) (awarding 30% of $20 million settlement); *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (30% fee award of $20 million settlement was "fair and reasonable").

Moreover, a lodestar crosscheck fully supports this award as the requested fee equates to a multiplier of just 1.4, which is on the low end of the typical lodestar multiples commonly awarded.  *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1052-54 (9th Cir. 2002) (concluding that multipliers most commonly fall range from 1.0 to 4.0); *van Wingerden v. Cadiz, Inc.*, 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) ("multipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation"); *China Integrated Energy, Inc.*, 2016 WL 11757878, at *12 ("Courts often approve" fee awards with "positive lodestar multiplier[s] between three and four."); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) ("the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar").

Further, as explained in the Notice, Lead Plaintiffs also request a total of $8,892.01 for reimbursement for their time and expenses in representing the Settlement Class, including overseeing the prosecution of the Action and preparing for and attending a full-day, in-person mediation.  *See e.g., NantKwest,* 2019 WL 2183451, at *6 (approving two reimbursement payments of $7,500, one for each

lead plaintiff, for time spent litigating the action, including responding to discovery, communicating with counsel about the action, and helping to evaluate settlement proposals); *STAAR Surgical Co.,* 2017 WL 4877417, at *6 (awarding $10,000 to lead plaintiff for "lost time in his representation of the Class").

### 5.    The Parties Have No Side Agreements Other Than the Supplemental Agreement Concerning Opt-Outs

Rule 23(e)(2)(C)(iv) requires the disclosure of any side agreement.  The Stipulation noted that the Parties entered into a confidential supplemental agreement which provides that if Settlement Class Members opt out of the Settlement such that the number of shares of Merit common stock represented by such opt outs equals or exceeds a certain amount, Defendants shall have the option to terminate the Settlement.  Stipulation ¶ 36.  Such agreements are common in securities class action settlements, and do not weigh against final approval.  *See Hefler*, 2018 WL 6619983, at *7 ("The existence of a termination option triggered by the number of class members who opt out of the Settlement . . . does not weigh against approval" of settlement); *In re Carrier IQ, Inc., Consumer Privacy Litig*., 2016 WL 4474366, at *5 (N.D. Cal. Aug. 25, 2016) ("opt-out deals are not uncommon as they are designed to ensure than an objector cannot try to hijack a settlement in his or her own self-interest").

### 6.    All Settlement Class Members are Treated Equitably

Rule 23 also requires consideration of whether "the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(D).  As described herein, the proposed Plan of Allocation is fair, reasonable, and adequate because it does not treat Lead Plaintiffs or any other Settlement Class Member preferentially.  *See In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *10 (N.D. Cal. Oct. 27, 2015) (finding the plan of allocation "distributes the funds without giving undue preferential treatment to any class members").  Under the Plan of Allocation, Settlement Class Members who have submitted timely claims will receive payments

on a *pro rata* basis based on the extent of their injury and the number of claims filed. Lead Plaintiffs, just like all other Settlement Class Members, will be subject to the same formulas for distribution of the Settlement.  Thus, this factor weighs in favor of approval. *See  PPG Indus., Inc.*, 2019 WL 3345714, at \*6.

**D.    The Extent of Discovery Completed and the Stage of the Proceedings Favor Final Settlement Approval**

The stage of the proceedings and the amount of discovery completed are also factors courts consider in determining the fairness, reasonableness, and adequacy of a settlement. *See NantKwest*, 2019 WL 2183451, at \*4 (finding "review and analysis of over 140,000 pages of documents" and "extensive adversarial motion practice, including motions to dismiss" supportive of final approval).

Lead Plaintiffs' decision to enter into the Settlement was based on their thorough understanding of the strengths and weaknesses of their claims and Defendants' defenses garnered through their zealous prosecution of the Action, which included, among other things: (i) conducting an extensive factual investigation, including identifying, contacting and interviewing over four dozen former employees of Merit, Cianna, and Vascular Insights with knowledge of the facts, which were conducted by senior attorneys of Lead Counsel together with highly experienced private investigators with decades of law enforcement and other relevant experience in the field; (ii) defeating Defendants' motion to transfer the Action to the U.S. District Court for the District of Utah; (iii) drafting the 98-page Complaint subject to the heightened pleading standards of the PSLRA; (iv) consulting with financial experts; (v) successfully opposing Defendants' motion to dismiss before Magistrate Judge Spaeth and this Court; (vi) conducting meaningful fact discovery, which included seeking and obtaining over a half-million pages of documents from Defendants and five non-parties; and (vii) preparing for and participating in a full-day mediation session and six weeks of continued settlement negotiations under the oversight of an experienced mediator.  This factor

clearly weighs in favor of final approval of the Settlement. *STAAR Surgical Co.*, 2017 WL 4877417, at *4 (final settlement approval supported where the "parties engaged in extensive adversarial motion practice" and "researched, prepared, and drafted comprehensive mediation briefs").

### E.    The Risk of Maintaining a Class Action Through Trial Supports Approval

Plaintiffs believe they had strong arguments in favor of class certification. However, even if a class were certified, there would always be the chance that the Action might not have been maintained as a class through trial, or the class period would have been narrowed. *See In re Am. Apparel, Inc. S'holder Litig.*, 2014 WL 10212865, at *11 (C.D. Cal. July 28, 2014) ("Even had the court certified a class [] subsequent facts adduced through discovery might have led to decertification. Avoiding such a risk … favors approval of the settlement."). The Settlement removes this uncertainty and eliminates the risk that class certification would have been denied, or the class would subsequently have been modified or decertified.

### F.    The Experience and Views of Counsel Favor Approval

"In reviewing a settlement for final approval, courts accord great weight to the recommendation of counsel. . . . Counsel are most closely acquainted with the facts of the underlying litigation and are therefore in an ideal position to assess the fairness of the settlement offer." *Maine State Ret. Sys. v. Countrywide Fin. Corp.*, 2013 WL 6577020, at *15 (C.D. Cal. Dec. 5, 2013). Lead Counsel have significant experience in securities and other complex class action litigation and have negotiated numerous other substantial class action settlements throughout the country, including in this District. Lead Counsel have been an integral part of many securities class action settlements, and, in their estimation, the Settlement is an excellent result because it provides the Settlement Class with genuine and substantial relief under difficult legal circumstances. *See Extreme Networks*, 2019 WL 3290770, at *9

("That such experienced counsel advocate in favor of the settlement weighs in favor of approval").

As discussed above, at the time that the Parties agreed to the Settlement, Lead Counsel had obtained a thorough understanding of the strengths and weaknesses of the claims and defenses in this case. *See NantKwest*, 2019 WL 2183451, at *5 (final approval granted where "Counsel have conducted detailed discovery in this action, filed numerous motions for Plaintiffs and the class, and engaged in extensive mediated negotiations before ultimately reaching and recommending this Agreement"). It is Lead Counsel's informed opinion that given the risks and uncertainties inherent in this complex litigation, the Settlement is fair, reasonable and adequate and in the best interest of the Settlement Class. "Based on counsels' knowledge of the specific facts of this action, experience in settlements such as this, and opinion that the settlement [] is fair, reasonable, and adequate," this factor, too, weighs in favor of final settlement approval. *Harris v. U.S. Physical Therapy, Inc.*, 2012 WL 3277278, at *7 (D. Nev. July 18, 2012).

## G.    <u>The Reaction of the Settlement Class Favors Approval</u>

"It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 529; *see also Churchill Village L.L.C. v. Gen. Elec.*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming settlement with 45 objections out of approximately 90,000 notices sent).

Here, the deadline for submission of objections to the Settlement, or exclusion requests, is March 23, 2022. To date, after an extensive notice program (*see* A.B. Data Decl. ¶¶ 2-12), the parties have received no objections or exclusion requests, which strongly weighs in favor of final approval. *See* A.B. Data Decl. ¶ 13; Joint

Decl. ¶ 63.[2] "Many potential class members are sophisticated institutional investors; the lack of objections from such institutions indicates that the settlement is fair and reasonable." *Extreme Networks*, 2019 WL 3290770, at \*9.

Moreover, the approval of Lead Plaintiffs—sophisticated institutional investors with over $3 billion of assets under management and significant financial stakes in this Action, and which were closely involved throughout the litigation and the settlement negotiations—also supports final approval. *See Countrywide Fin. Corp.*, 2013 WL 6577020, at \*16 (granting final approval and stating that "Courts afford special weight to the opinions of class representatives"); Joint Decl., Ex. A at ¶¶ 7-9; Ex. B at ¶¶ 4-7.

In sum, as discussed in detail above, each of the Rule 23(e)(2) and *Hanlon* factors support a finding that the Settlement is fair, reasonable, and adequate. Final approval is, therefore, appropriate.

## III. NOTICE TO THE SETTLEMENT CLASS SATISFIED THE REQUIREMENTS OF RULE 23, DUE PROCESS, AND THE PSLRA

The notice sent to potential Settlement Class Members concerning the certification of the Settlement Class and their right to request exclusion must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B); *see also Rentech*, 2019 WL 5173771, at \*8. To comport with due process, "notice must be the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)). In addition, notice of the proposed Settlement, must be sent "in a reasonable manner to all class members who would be bound by the [proposed settlement]." Fed. R. Civ. P. 23(e)(1)(B). "Settlement notices are supposed to

---

[2] Should any objections be received after the date of this submission, they will be addressed by Lead Plaintiffs in their reply brief due April 6, 2022.

present information about a proposed settlement neutrally, simply, and understandably[.]" *Rodriguez v. West. Pub. Corp.*, 563 F.3d 948, 962 (9th Cir. 2009).

The PSLRA also imposes notice requirements. *See* 15 U.S.C. § 78u-4(a)(7). Under the PSLRA, any proposed final settlement agreement "shall include each of the following statements, along with a cover page summarizing the information contained in such statements:" a statement of the plaintiffs' recovery, a statement of potential outcomes of the case, a statement on attorneys' fees or costs sought, identification of the lawyers' representatives for questions from class members, a statement of reasons for the settlement, and other information as required by the court. *Id.*

Here, Lead Plaintiffs selected A.B. Data, an experienced and diligent claims administrator, to administer the notice and claims program. In connection with the proposed Settlement, A.B. Data received a list of the record shareholders of Merit common stock during the Class Period from Merit, and mailed copies of the Notice and Claim Form (the "Notice Packet") to the 100 shareholders on that list. Joint Decl., Ex. C (Declaration of Eric J. Miller of A.B. Data), at ¶ 3. A.B. Data also mailed the Notice Packet to a list of 4,149 nominees contained in its proprietary nominee database; mailed 9,026 copies of the Notice Packet to potential Settlement Class Members whose names and addresses were received from individuals or nominees; and mailed 12,555 Notice Packets to nominees who requested Notice Packets to forward to their customers. *Id.* at ¶¶ 4-7. As of March 8, 2022, A.B. Data had mailed a total of 25,830 Notice Packets to potential Settlement Class Members and nominees. *Id.* at ¶ 8. A.B. Data also published the Summary Notice in *Investor's Business Daily* and over *PR Newswire* on February 7, 2022 (*id.* at ¶ 9); maintained a website, at www.MeritMedicalSecuritiesLitigation.com, which went "live" on January 21, 2022 (*id.* at ¶¶ 10-11); and maintained call center services (*id.* at ¶ 12). Copies of the Stipulation, Notice, Claim Form, and Preliminary Approval Order

were also made available on Lead Counsel's websites, www.saxenawhite.com and www.blbglaw.com.

The Notice was carefully drafted to contain all necessary information. All the information is provided in plain language and in a format that is easily accessible. The Notice clearly advises recipients of their rights and obligations in connection with the Settlement, including the right to object to any portion of the Settlement or submit a completed Proof of Claim to be eligible to share in the Settlement. Contact information for Lead Counsel and the Claims Administrator is provided, as well as a toll-free number and website for the recipient if there are any questions.

Specifically, the Notice informed Settlement Class Members of, among other things: (1) an explanation of the nature of the Action and the claims asserted; (2) the definition of the Settlement Class; (3) the amount of the Settlement; (4) the reasons why the Parties are proposing the Settlement; (5) the estimated average recovery per affected share of Merit common stock; (6) the maximum amount of attorneys' fees and expenses that will be sought; (7) the identity and contact information for the representatives of Lead Counsel who are reasonably available to answer questions from Settlement Class Members; (8) Settlement Class Members' right to opt-out of the Settlement Class or to object to the Settlement, the Plan of Allocation or the requested attorneys' fees or expenses; (9) the binding effect of a judgment on Settlement Class Members; and (10) the dates and deadlines for certain Settlement-related events. The Notice also contains the Plan of Allocation and provides Settlement Class Members with information on how to submit a Claim Form in order to be eligible to receive a distribution from the Net Settlement Fund.

Notice programs such as this have been approved in a multitude of class action settlements. *See e.g. Rentech,* 2019 WL 5173771, at *8 (approving mailed notice, published summary notice, and availability of online notice); *Hefler,* 2018 WL 6619983, at *5 (approving similar notice program); *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *7 (N.D. Cal. Feb. 11, 2016) (finding individual notice mailed to

class members combined with summary publication constituted "the best form of notice available under the circumstances"). Moreover, this Court has already found that the proposed notice program is adequate and sufficient. *See* Preliminary Approval Order (ECF No. 106) at ¶¶ 7-8. Lead Counsel and A.B. Data carried out the notice program as proposed. Therefore, Lead Plaintiffs respectfully submit that the Notice fairly apprises Settlement Class Members of their rights with respect to the Settlement and is the best notice practicable under the circumstances.

## IV.    THE PLAN OF ALLOCATION IS FAIR, REASONABLE, AND ADEQUATE

A plan of allocation should be approved where it is "fair, reasonable, and adequate." *City of Seattle*, 955 F.2d at 1284-85. "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable. It is also reasonable to allocate more of the settlement to class members with stronger claims on the merits." *Biolase*, 2015 WL 12720318, at *5; *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *7 (C.D. Cal. May 6, 2014) (Carter, J.) ("It is reasonable to allocate the settlement funds to class members based on the extent of their injuries or the strength of their claims on the merits.").

Here, the Plan of Allocation is found in Appendix A to the Notice ("Appendix A," attached to the A.B. Data Decl.), which was preliminarily approved by the Court. Lead Plaintiffs' damages expert calculated the estimated alleged amount of artificial inflation in the per share closing price of Merit common stock which allegedly was proximately caused by Defendants' alleged misrepresentations and material omissions. Appendix A, ¶¶ 3-4. In calculating the estimated alleged artificial inflation allegedly caused by Defendants' alleged misrepresentations and omissions, Lead Plaintiffs' damages expert considered price changes in Merit common stock on July 26, 2019 and October 31, 2019, following the alleged corrective disclosures, adjusting for price changes on each day that were attributable to market or industry

forces or that would likely have been attributed to non-fraud-related confounding information released on the same days. *Id.*

The Plan of Allocation calculates a "Recognized Loss Amount" for each purchase of Merit common stock during the Class Period that is listed in the Claim Form and for which adequate supporting documentation is provided. Recognized Loss Amounts are based primarily on the difference in the amount of alleged artificial inflation in the prices of Merit common stock at the time of purchase or acquisition and at the time of sale or the difference between the actual purchase price and sale price. Appendix A, ¶¶ 5-6. To have a Recognized Loss Amount, claimants who purchased Merit shares from February 26, 2019 through July 25, 2019, inclusive, must have held their shares until at least the close of trading on July 25, 2019, and claimants who purchased Merit stock from July 26, 2019 through October 30, 2019, inclusive, must have held their shares until at least the close of trading on October 30, 2019. *Id.* The sum of a claimant's Recognized Loss Amounts for all his, her, or its Class Period purchases is the Claimant's "Recognized Claim," and the Net Settlement Fund will be allocated to eligible claimants on a *pro rata* basis based on the relative size of their Recognized Claims. Appendix A, ¶¶ 6-8, 10, 18.

The Plan of Allocation is consistent with the damages and loss causation calculations performed by Lead Plaintiffs' expert. The Plan of Allocation provides a reasonable, rational basis for Settlement Class Members to recover their *pro rata* damages based upon the dates on which they purchased or sold Merit common stock. The proposed Plan of Allocation also prohibits class members from receiving a windfall by limiting recovery only to those who suffered actual losses on Merit shares attributable to the alleged fraud. *See Rentech*, 2019 WL 5173771, at *8 ("Each Class Member's allocation will therefore be proportionate to actual injury. The Court finds that the Plan of Allocation is 'fair, reasonable, and adequate'"). To date, after mailing 25,830 Notices, no Settlement Class Member has objected to the Plan of Allocation.

## V.    **THE COURT SHOULD CERTIFY THE SETTLEMENT CLASS**

The Court's Preliminary Approval Order conditionally certified the Settlement Class under Rules 23(a) and (b)(3) for purposes of the Settlement. *See* Preliminary Approval Order (ECF No. 106) at 1. Nothing has occurred since then to cast doubt on the propriety of class certification, and no objections to certification have been received. For all the reasons stated in the Preliminary Approval Order and Lead Plaintiffs' unopposed motion for preliminary approval of the Settlement (ECF No. 105), Lead Plaintiffs respectfully request that the Court grant final certification to the Settlement Class under Rules 23(a) and (b)(3).

## VI.    **CONCLUSION**

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court approve the proposed Settlement and Plan of Allocation as fair, reasonable, and adequate.

Dated: March 9, 2022                    Respectfully submitted,

                                        **SAXENA WHITE P.A.**

                                        /s/ *David R. Kaplan*
                                        David R. Kaplan (SBN 230144)
                                        dkaplan@saxenawhite.com
                                        Hani Y. Farah (SBN 307622)
                                        hfarah@saxenawhite.com
                                        12750 High Bluff Drive, Suite 475
                                        San Diego, CA 92130
                                        Telephone: (858) 997-0860
                                        Facsimile: (858) 369-0096

                                        -and-

                                        Steven B. Singer (appearing *pro hac vice*)
                                        ssinger@saxenawhite.com
                                        10 Bank Street, 8th Floor
                                        White Plains, NY 10606
                                        Tel: (914) 437-8551

Fax: (888) 631-3611

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Proposed Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

-and-

John J. Rizio-Hamilton
(appearing *pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*