**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Hani Y. Farah (SBN 307622)
hfarah@saxenawhite.com
12750 High Bluff Drive, Suite 475
San Diego, CA 92130
Telephone:   (858) 997-0860
Facsimile:    (858) 369-0096

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Proposed Settlement Class*

[Additional counsel appear on signature page]

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (SBN 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3472

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | Case No. 8:19-cv-2326-DOC-ADS<br><br>**LEAD COUNSEL'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND LITIGATION EXPENSES**<br><br>Judge:         Hon. David O. Carter<br>Courtroom: 9D<br>Date:          April 13, 2022<br>Time:          8:30 a.m. |

## **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................... 1

II. THE REQUESTED FEE IS REASONABLE .................................................... 3

    A. A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases ........................ 3

    B. The Relevant Factors Support Approval of the 30% Fee Request ........... 5

        1. The Results Achieved ................................................................. 6

        2. The Litigation was Risky and Complex .................................... 7

        3. The Skill Required and the Quality of Lead Counsel's Work Performed Support the Fee Request ........................................................................................ 9

        4. The Contingent Nature of the Representation and Financial Burden Carried by Class Counsel Support the Requested Fee ....................................................... 11

        5. The Requested Fee Is Consistent With Awards Made in Comparable Cases ....................................................... 13

        6. The Reaction of the Settlement Class ...................................... 15

        7. A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable ................................................................... 16

III. LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE ...... 17

IV. THE PSLRA AWARD REQUESTS ARE REASONABLE ......................... 18

V. CONCLUSION ..................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Avila v. LifeLock Inc.*,
   2020 WL 4362394 (D. Ariz. July 27, 2020) ......................................................................14

*Blum v. Stenson*,
   465 U.S. 886 (1984) ........................................................................................................4, 13

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................................................3

*Brown v. China Integrated Energy Inc.*,
   2016 WL 11757878 (C.D. Cal. July 22, 2016) ............................................................*passim*

*Burnthorne-Martinez v. Sephora USA, Inc.*,
   2018 WL 5310833 (N.D. Cal. May 16, 2018) .........................................................................5

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ..............................................................*passim*

*Cunha v. Hansen Nat. Corp.*,
   2015 WL 12697627 (C.D. Cal. Jan. 29, 2015) .......................................................................5

*Ford v. CEC Ent. Inc.*,
   2015 WL 11439033 (S.D. Cal. Dec. 14, 2015).......................................................................5

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998)................................................................................................4

*Hefler v. Wells Fargo & Co.*,
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ................................................................7, 17

*In re Allergan, Inc. Proxy Violation Derivatives Litig.*,
   2018 WL 4959014 (C.D. Cal. Aug. 13, 2018)..............................................................2, 5, 13

*In re Apollo Grp. Inc. Sec. Litig.*,
   2012 WL 1378677 (D. Ariz. Apr. 20, 2012)........................................................................14

*In re Banc of Cal. Sec. Litig.*,
   2020 WL 1283486 (C.D. Cal. Mar. 16, 2020) .....................................................................13

*In re BHP Billiton Ltd. Sec. Litig.*,
    2019 WL 1577313 (S.D.N.Y. Apr. 10, 2019)......................................................14

*In re Bluetooth Headset Prods. Liab. Litig.*,
    654 F.3d 935 (9th Cir. 2011)...............................................................................4

*In re CytRx Corp. Sec. Litig.*,
    2018 WL 8950655 (C.D. Cal. Sept. 17, 2018).....................................................14

*In re Heritage Bond Litig.*,
    2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................................................14

*In re Hi-Crush Partners L.P. Sec. Litig.*,
    2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) .......................................................9

*In re Immune Response Sec. Litig.*,
    497 F. Supp. 2d 1166 (S.D. Cal. 2007).........................................................19, 20

*In re IsoRay, Inc. Sec. Litig.*,
    2017 WL 11461073 (E.D. Wash. Mar. 7, 2017)..................................................17

*In re JDS Uniphase Corp. Sec. Litig.*,
    2007 WL 4788556 (N.D. Cal. Nov. 27, 2007).....................................................12

*In re K12 Inc. Sec. Litig.*,
    2019 WL 3766420 (N.D. Cal. July 10, 2019)......................................................14

*In re Omnivision Techs. Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..............................................................13

*In re Oracle Corp. Sec. Litig.*,
    2009 WL 1709050 (N.D. Cal. June 19, 2009) .....................................................12

*In re Perrigo Co. PLC Sec. Litig.*,
    2022 WL 500913 (S.D.N.Y. Feb. 18, 2022).........................................................14

*In re Rayonier Inc. Sec. Litig.*,
    2017 WL 4542852 (M.D. Fla. Oct. 5, 2017).......................................................14

*In re Regulus Therapeutics Inc. Sec. Litig.*,
    2020 WL 6381898 (S.D. Cal. Oct. 30, 2020) ................................................17, 19

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................15

*In re Silver Wheaton Corp. Sec. Litig.*,
 2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) ....................................................... 13

*In Re Snap Inc. Sec. Litig.*,
 2021 WL 667590 (C.D. Cal. Feb. 18, 2021) .......................................................... 6

*In re Veeco Instruments Inc. Sec. Litig.*,
 2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ................................................... 12, 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods.*
 *Liab. Litig.*,
 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ..................................................... 17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*,
 19 F.3d 1291 (9th Cir. 1994) ................................................................................ 4

*Katz v. China Century Dragon Media, Inc.*,
 2013 WL 11237202 (C.D. Cal. Oct. 10, 2013) ..................................................... 13

*Moreno v. Pretium Packaging, L.L.C.*,
 2021 WL 3673845 (C.D. Cal. Aug. 6, 2021) ....................................................... 13

*Murphy v. Precision Castparts Corp.*,
 2021 WL 2080016 (D. Or. May 24, 2021) ............................................................ 12

*Parkinson v. Hyundai Motor Am.*,
 796 F. Supp. 2d 1160 (C.D. Cal. 2010) ............................................................... 17

*Patel v. Axesstel, Inc.*,
 2015 WL 6458073 (S.D. Cal. Oct. 23, 2015) ......................................................... 5

*Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*,
 2021 WL 2981970 (D. Colo. July 15, 2021) ......................................................... 14

*Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*,
 478 U.S. 546 (1986) ........................................................................................... 16

*Plymouth County Ret. Sys. v. GTT Communications, Inc.*,
 2021 WL 1659848 (E.D. Va. Apr. 23, 2021) ....................................................... 14

*Pokorny v. Quixtar, Inc.*,
 2013 WL 3790896 (N.D. Cal. July 18, 2013) ......................................................... 5

*Schulein v. Petroleum Dev. Corp.*,
  2015 WL 12762256 (C.D. Cal. Mar. 16, 2015) ......................................................5

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ................................................................................16

*Thomas v. MagnaChip Semiconductor Corp.*,
  2018 WL 2234598 (N.D. Cal. May 15, 2018) ......................................................18

*Todd v. STAAR Surgical Co.*,
  2017 WL 4877417 (C.D. Cal. Oct. 24, 2017) ..................................................18, 19

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ....................................................................................4

*van Wingerden v. Cadiz, Inc.*,
  2017 WL 5565263 (C.D. Cal. Feb. 8, 2017) .........................................................16

*Varljen v. H.J. Meyers & Co.*,
  2000 WL 1683656 n.2 (S.D.N.Y. Nov. 8, 2000) ...................................................19

*Vincent v. Hughes Air West, Inc.*,
  557 F.2d 759 (9th Cir. 1977) ..................................................................................4

*Vinh Nguyen v. Radient Pharm. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ..........................................................5

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002) ..................................................................4, 5, 6, 16

**STATUTES**

15 U.S.C. §78u-4(a)(4) ...............................................................................................3

**RULES**

Fed. R. Civ. P. 23(e) ...................................................................................................1

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Counsel Saxena White P.A. and Bernstein Litowitz Berger & Grossmann LLP ("Lead Counsel") respectfully request that the Court grant their motion for (i) an award of attorneys' fees in the amount of 30% of the Settlement Fund; (ii) payment of $104,686.68 in litigation expenses that Lead Counsel reasonably and necessarily incurred in prosecuting and resolving the Action; and (iii) payment of awards totaling $8,892.01 to Lead Plaintiffs to reimburse them for the value of the time their employees devoted the Action, as authorized by the PSLRA.[1]

## I.    INTRODUCTION

Through its effective advocacy and tireless efforts over the past two years, Lead Counsel achieved a Settlement of $18.25 million in cash for the benefit of the Settlement Class.  Lead Counsel undertook this litigation on a fully contingent basis—without any guarantee of compensation or reimbursement of expenses.  Lead Counsel devoted thousands of hours of attorney and staff time to achieve this Settlement, all the while recognizing the risk that the Class may recover nothing and Lead Counsel may never receive any compensation.

The prosecution and settlement of this litigation required extensive efforts on the part of counsel over the past two years.  Among other things, Lead Counsel (a) conducted a thorough investigation, which included interviewing over five dozen potential witnesses, reviewing and analyzing Merit's public SEC filings, conference call transcripts, and media reports, and conducting legal research on key issues in the case; (b) drafted a 98-page consolidated complaint replete with detailed witness

---

[1] Lead Plaintiffs respectfully refer the Court to the accompanying Joint Declaration of David R. Kaplan and Jonathan D. Uslaner in Support of Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation, and Lead Counsel's Motion for Attorneys' Fees and Litigation Expenses ("Joint Declaration" or "Joint Decl.") for a detailed description of the case and the Settlement.  Unless otherwise noted, capitalized terms have the meanings set forth in the Stipulation and Agreement of Settlement, dated December 21, 2021 (ECF No. 105-1, the "Stipulation"), all emphasis has been added, and all internal citations and quotation marks have been omitted.

accounts necessary to satisfy the stringent pleading standards governing securities actions; (c) defeated Defendants' motion to transfer the case to the District of Utah; (d) thoroughly researched, briefed and defeated Defendants' motion to dismiss twice—both before Magistrate Judge Autumn D. Spaeth, and again before this Court; (e) conducted extensive discovery, including obtaining over a half-million of pages of documents from Defendants and five non-parties; and (f) successfully negotiated a favorable Settlement for the benefit of the Settlement Class far in excess of the typical recovery rate in comparable securities class actions, under the supervision of an independent mediator.

The Settlement achieved through the efforts of Lead Counsel is a particularly favorable result when considered in light of the significant risks confronted in the litigation, including challenges related to proving Defendants' liability and establishing loss causation and damages. First, this case was prosecuted under the PSLRA and, therefore, was extremely risky and difficult from the outset, as the PSLRA makes it difficult for investors to bring and successfully conclude securities class actions. Moreover, this was a case in which there was no parallel government or SEC action and no restatement of the Company's financial statements that would have assisted Lead Counsel in establishing the elements of Lead Plaintiffs' claims. On the contrary, Lead Counsel faced substantial risks in establishing all of the elements of Lead Plaintiffs' claims, including the falsity and materiality of Defendants' alleged misstatements, loss causation, and damages. In the face of these considerable risks, Lead Counsel vigorously pursued this Action on a contingent basis with no guarantee of any recovery at all.

Lead Counsel's fee request of 30% is consistent with the "norm" for percentage fee awards in common fund cases. *See In re Allergan, Inc. Proxy Violation Derivatives Litig.,* 2018 WL 4959014, at *1 (C.D. Cal. Aug. 13, 2018) (Carter, J.) (noting that a 30% award is "the norm" in the Ninth Circuit and granted

"in most common fund cases").  Courts in the Central District, including this Court, often award percentage fees of 30% or higher in comparable securities class actions. The reasonableness of Lead Counsel's fee request is also supported by a lodestar cross-check, which yields a modest multiplier of 1.4.  Lead Counsel also seek $104,686.68 for their litigation expenses, and respectfully move for $8,892.01 pursuant to 15 U.S.C. §78u-4(a)(4) for time and expenses incurred by Lead Plaintiffs in their representation of the Settlement Class.

Additionally, Lead Plaintiffs—sophisticated fiduciaries that collectively manage over $3 billion in assets and who were closely involved in the prosecution and settlement of the Action—have reviewed and fully endorse this motion.  And, while the deadline for Settlement Class Members to object to the requested attorneys' fees has not yet passed, thus far no objections to the fee or expense requests have been lodged.

For these reasons, and as set forth in more detail below, Lead Counsel respectfully request that the Court approve this motion.

## II.   THE REQUESTED FEE IS REASONABLE

### A.   A Reasonable Percentage of the Fund Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases

For their efforts in creating a common fund for the benefit of the Settlement Class, Lead Counsel seek a reasonable percentage of the fund recovered as attorneys' fees.  The percentage method of awarding fees has become the prevailing method for awarding fees in common fund cases in this Circuit and throughout the nation.

The Supreme Court has long recognized that "a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478-79 (1980).  Similarly, the Ninth Circuit has held that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve

a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of the common fund doctrine is to adequately compensate class counsel for services rendered and to ensure that all class members contribute equally towards the costs associated with the litigation. *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) ("those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it").

In *Blum v. Stenson*, 465 U.S. 886 (1984), the Supreme Court recognized that under the common fund doctrine a reasonable fee may be based "on a percentage of the fund bestowed on the class." *Id.* at 900 n.16. While courts have discretion to employ either a percentage-of-recovery or lodestar method in determining an attorneys' fee award, *see In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942-43 (9th Cir. 2011), the Ninth Circuit has expressly and consistently approved the use of the percentage method in common fund cases. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1050 (9th Cir. 2002) ("the primary basis of the fee award remains the percentage method"); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1029 (9th Cir. 1998); *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376-77 (9th Cir. 1993). Indeed, the percentage method "is typically used where attorney's fees will be paid out of a common fund." *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019).

The percentage-of-recovery method is particularly appropriate in common fund cases where, as here, "the benefit to the class is easily quantified." *Bluetooth*, 654 F.3d at 942. Further, as this Court has explained, "[t]here are significant benefits to the percentage approach, including consistency with contingency fee calculations in the private market, aligning the lawyers' interests with achieving the highest award for the class members, and reducing the burden on the courts that a complex

lodestar calculation requires." *Vinh Nguyen v. Radient Pharm. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Carter, J.).

Lead Counsel requests an award of attorneys' fees consistent with the Ninth Circuit "norm" of 30%, including in securities litigation. *See Allergan*, 2018 WL 4959014, at *1 (noting that a 30% award is "the norm" in the Ninth Circuit); *Schulein v. Petroleum Dev. Corp.*, 2015 WL 12762256, at *1 (C.D. Cal. Mar. 16, 2015) (same); *Burnthorne-Martinez v. Sephora USA, Inc.*, 2018 WL 5310833, at *2 (N.D. Cal. May 16, 2018) (same); *Ford v. CEC Ent. Inc.*, 2015 WL 11439033, at *5 (S.D. Cal. Dec. 14, 2015) (same); *Pokorny v. Quixtar, Inc.*, 2013 WL 3790896, at *1 (N.D. Cal. July 18, 2013) (same); *see also Cunha v. Hansen Nat. Corp.*, 2015 WL 12697627, at *6 (C.D. Cal. Jan. 29, 2015) ("[A]bsent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%.").

As discussed below, the relevant factors and pertinent case law strongly support Lead Counsel's requested fee.

**B.     The Relevant Factors Support Approval of the 30% Fee Request**

In awarding an attorneys' fee from a common fund, the Court must determine whether the requested fee would be reasonable. The Ninth Circuit has stated that a 25% fee is the benchmark attorneys' fee for class actions, which may be adjusted up or down depending on the circumstances of each case. *Vizcaino*, 290 F.3d at 1048. Several Courts in this District, including this Court, have found that "in most common fund cases, the [fee] award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage." *Allergan,* 2018 WL 4959014, at *1; *see also Rentech*, 2019 WL 5173771, at *10-11 (awarding 33 1/3 % of the Settlement Fund); *Patel v. Axesstel, Inc.*, 2015 WL 6458073, at *8 (S.D. Cal. Oct. 23, 2015) (awarding 30% fees in a securities fraud class action based on "the complexity of securities litigation, the

lodestar crosscheck, and the lack of any objection from the class members"). Consistent with these authorities, Lead Counsel request the "norm" fee percentage of 30%. The fee request is squarely within the range of percentages courts in this Circuit award in similar securities fraud class action settlements, and highly reasonable given the favorable result achieved for the Settlement Class.

Moreover, the attorneys' fee request is fair and reasonable in light of the relevant factors, including: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and the quality of work; (iv) the contingent nature of the fee and the financial burden carried; and (v) awards made in similar actions. *Vizcaino*, 290 F.3d at 1048-50. The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Id.* As set forth below, all of the *Vizcaino* factors militate in favor of approving the requested fee.

### 1.    The Results Achieved

As discussed, the result achieved—the creation of a settlement fund in the amount of $18,250,000—is an excellent result for the Settlement Class that was achieved despite many complexities and risks, while avoiding the substantial expense, delay, risk, and uncertainty of continued discovery, motion practice, class certification, summary judgment, trial, and appeal.

Furthermore, Lead Plaintiffs' realistic assessment based on the evidence and extensive consultation with financial experts is that the maximum realistic damages range from $33.4 million to $153.0 million. Thus, the Settlement represents a favorable recovery of 12% to 55% of the Settlement Class's maximum realistic trial damages—a range that far exceeds the typical recovery rate in securities class actions. *See, e.g.*, *In Re Snap Inc. Sec. Litig.*, 2021 WL 667590, at *1 (C.D. Cal. Feb. 18, 2021) (noting that a settlement representing approximately 7.8% of damages was "similar to the percent recovered in other court-approved securities

settlements"); *Rentech,* 2019 WL 5173771, at \*9 ("median recovery in securities class actions in 2018 was approximately 2.6% of estimated damages"); *see also* Cornerstone Research, *Securities Class Action Settlements—2020 Review and Analysis* (Cornerstone Research 2021) at p. 6, Figure 5 (empirical study finding 4.9% median recovery rate in securities class action settlements between 2011-2019).  Settlement Class Members will thus enjoy the significant benefit of the Settlement now, without the risk of no recovery.  Considering the substantial $18.25 million all-cash recovery, complexities and uncertainties of this case (discussed further below), and the present and time value of money, the Settlement presents an exceptional result and warrants approval of Lead Counsel's fee request.

### 2.    The Litigation was Risky and Complex

"The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees." *Rentech*, 2019 WL 5173771, at \*9.  While courts have always recognized that securities class actions carry significant risks, post-PSLRA rulings make it clear that the risk of no recovery has increased significantly.  As one court in this District aptly explained:

> By their very nature, securities class actions … involve complex legal and factual issues. … To succeed in this litigation, Plaintiffs would have been required to prove falsity, scienter, reliance and loss causation on the part of Defendants, which would be by no means guaranteed. … Moreover, both sides' arguments on loss causation and establishing damages at trial would have relied heavily on expert testimony, with no guarantee of whose testimony the factfinder would credit.

*Brown v. China Integrated Energy Inc.*, 2016 WL 11757878, at \*7 (C.D. Cal. July 22, 2016); *see also, e.g.*, *Hefler v. Wells Fargo & Co.*, 2018 WL 6619983, at \*13 (N.D. Cal. Dec. 18, 2018) ("'[I]n general, securities actions are highly complex and . . . securities class litigation is notably difficult and notoriously uncertain'").  This

Action was no exception.

There is no question that this Action presented numerous contested issues and formidable defenses to liability and damages. Throughout the litigation and in settlement discussions, Defendants have adamantly denied liability and asserted various defenses on materiality, falsity, scienter, and loss causation. Defendants would also certainly contest any damage calculations presented by Lead Plaintiffs. Any one of the foregoing issues, if they were decided in Defendants' favor, could have ended Lead Plaintiffs' case, or at the very least, severely curtailed any prospects for a recovery.

Lead Plaintiffs also recognize that evidence produced in discovery may be susceptible to different interpretations. Principally, Lead Plaintiffs and Lead Counsel understood that the upcoming class certification motion practice, as well as summary judgment motion practice and trial (assuming the case was certified) would lead to a difficult and highly uncertain determinations for the Court or jury on issues of materiality, falsity, and scienter, and a difficult and contested "battle of the experts" on issues of loss causation and damages. The Court or the jury might not agree with Lead Plaintiffs that the evidence demonstrated that Defendants made any materially false and misleading statements (for example, that Defendant Lampropoulos's statement that Merit "maintained" Cianna's sales force was rendered false or misleading by the departure of four salespersons). Moreover, even if the Court or jury were to agree with Lead Plaintiffs that the alleged misstatements were actionably false or misleading, the Court or jury could have found that such statements did not cause the class's losses. And, even if successful at trial, Plaintiffs would still face the risk of an unfavorable ruling in a dispositive post-trial motion or a reversal on appeal.

Nor did Lead Plaintiffs benefit from other advantages securities class action plaintiffs frequently have. In particular, Lead Counsel developed the case without

the benefit of a governmental investigation. *See, e.g., In re Hi-Crush Partners L.P. Sec. Litig.,* 2014 WL 7323417, at \*16 (S.D.N.Y. Dec. 19, 2014) ("Lead Counsel did not have the benefit of a 'road map' established by a government investigation off which they could 'piggy back', but instead independently developed factual allegations and legal theories sufficient to survive the PSLRA's heightened pleading standards").    Additionally, there were no financial restatements, accounting irregularities, internal investigations, executive departures, short-seller or other investigative reports, or SEC charges that would illuminate a theory of the case and set out key evidence.  Nor was there an SEC whistleblower who could be counted on to cooperate with Lead Plaintiffs and explain to the jury why Defendants' conduct was fraudulent.  And, as a further obstacle to Lead Plaintiffs' successful prosecution of the Action, not only did the Cianna and ClariVein acquisitions collectively perform fairly close to the Company's revenue guidance during the Class Period, Defendants would likely have argued that their favorable post-Class Period sales performance further undermined Lead Plaintiffs' allegations of pervasive integration failures and entrenched regulatory and insurance roadblocks.

Substantial risks and uncertainties in this type of litigation and in this case in particular made it far from certain that any recovery, let alone a $18.25 million recovery, would ultimately be obtained.  This factor strongly supports the requested award.

### 3.    The Skill Required and the Quality of Lead Counsel's Work Performed Support the Fee Request

In determining a reasonable fee, courts often consider the quality of the work performed by counsel and the skill required in the action.  "The prosecution and management of a complex national class action requires unique legal skills and abilities. This is particularly true in securities cases because the Private Securities Litigation Reform Act makes it much more difficult for securities plaintiffs to get past a motion to dismiss." *Rentech*, 2019 WL 5173771, at \*10.

Here, Lead Counsel are nationally known in the fields of securities class actions and complex litigation. *See* Joint Decl. Ex. D (Saxena White firm resume at Ex. 4) and Ex. E (BLB&G Firm Resume at Ex. 3). Moreover, the record shows that this litigation is highly complex, involving thorny, and often unresolved, legal issues and difficult assembly of proof. Among the many issues on which the parties do not agree are: (i) whether Defendants made any false or misleading statements; (ii) whether any of the challenged statements were material to investors; (iii) whether Defendants acted with scienter; (iv) the method for determining whether the price of Merit common stock was artificially inflated during the Class Period; (v) the amount (if any) of such inflation; and (vi) the amount of damages (if any) that could be recovered at trial.

From the outset of this case, Lead Counsel sought to obtain the maximum recovery for the class. Lead Counsel devoted substantial amounts of attorney and staff time, as well as their own money and other considerable resources in the vigorous prosecution of this matter. *See* Joint Decl. at ¶¶ 77-79, 81.

As a result of Lead Counsel's work, the Settlement Class was able to plead detailed allegations based on an extensive pre-suit investigation;[2] successfully oppose Defendants' motion to transfer to the District of Utah despite the fact that the Company, the Individual Defendants, and rest of Merit's executive management team are located there; successfully defeat Defendants' motion to dismiss, despite the PSLRA's heightened pleading (prevailing twice, once before this Court and once

---

[2] The fruits of Lead Counsel's extraordinarily thorough pre-suit investigation were cited favorably by the Court in multiple decisions in the Action, including the Court's Order denying Defendants' motion to transfer and Order substantially denying Defendants' motion to dismiss. *See* ECF No. 49 at 4-6 (citing the convenience of non-party witnesses located in California and Lampropoulos's Newport Beach house in denying transfer); ECF No. 72 at 6, 9, 18-19, 25-26 (citing testimony from former Cianna and Vascular Insights employees in substantially denying Defendants' motion to dismiss).

before Magistrate Judge Spaeth); work with experts and consultants to present strong counterarguments to Defendants' positions on loss causation and damages; engage in meaningful fact discovery including obtaining a half-million pages of documents from Defendants and five subpoenaed non-parties; engage in a lengthy mediation process that involved a full-day, in-person mediation and approximately six weeks of continued negotiations supervised by an experienced mediator; and negotiate an all-cash settlement in a case where Defendants aggressively disputed every element of Lead Plaintiffs' claims and the potential for recovering nothing was stark. Lead Counsel's extensive efforts and skill led to the Settlement and strongly support the requested fee percentage.

The quality of opposing counsel is also considered in evaluating the quality of the work done by Lead Counsel. *Rentech*, 2019 WL 5173771, at *10 ("requested fee" supported because "Lead Counsel faced a vigorous defense" from "a respected national law firm"). Lead Counsel was opposed by skilled counsel from King & Spalding LLC, an international law firm with twenty-two offices worldwide and a well-deserved reputation for vigorous advocacy in the defense of complex civil cases such as this. In the face of this opposition, Lead Counsel was able to develop their case and secure a significant recovery for the Settlement Class, supporting Lead Counsel's fee request.

### 4. The Contingent Nature of the Representation and Financial Burden Carried by Class Counsel Support the Requested Fee

"The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Rentech*, 2019 WL 5173771, at *10; *see also China Integrated Energy*, 2016 WL 11757878, at *11 ("The contingent nature of the representation bears on the overall fairness and reasonableness of a fee request. … The risk that

counsel will not recover, as well as the financial burden accompanying the contingent nature of the representation, may justify a higher percentage fee award.").

Here, Lead Counsel undertook this Action on an entirely contingent basis and prosecuted the claims with no guarantee of compensation or recovery of any litigation expenses. *See, e.g., In re Veeco Instruments Inc. Sec. Litig.,* 2007 WL 4115808, at *6 (S.D.N.Y. Nov. 7, 2007) ("There are numerous class actions in which counsel expended thousands of hours and yet received no remuneration whatsoever despite their diligence and expertise"). Although Lead Plaintiffs had been successful at the motion to dismiss stage, the risks would only continue to threaten the viability of the Action through class certification, summary judgment, trial and the inevitable appeals. *See, e.g., In re Oracle Corp. Sec. Litig.*, 2009 WL 1709050 (N.D. Cal. June 19, 2009), *aff'd sub nom. In re Oracle Corp. Sec. Litig.*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation); *Murphy v. Precision Castparts Corp.*, 2021 WL 2080016, at *5 (D. Or. May 24, 2021) (granting summary judgment to defendants after more than five years of litigation in light of new Ninth Circuit precedent, finding that plaintiffs failed to establish falsity and loss causation); *In re JDS Uniphase Corp. Sec. Litig.*, 2007 WL 4788556 (N.D. Cal. Nov. 27, 2007) (jury returned a defense verdict after trial in securities fraud class action, finding that defendants were not liable for securities fraud).

Unlike counsel for the Defendants, who were paid and reimbursed for their expenses on a current basis, Lead Counsel have received no compensation for their efforts during the course of the Action. Lead Counsel have invested 6,553.5 hours of work equating to a total lodestar of $3,807,351.25, and advanced expenses of over $100,000, knowing that if their efforts were not successful, no fees or expenses would be paid. Substantial additional work in implementing the Settlement, claims administration and distribution of Settlement funds will also be required.

At the time it brought this action, Lead Counsel understood that it was embarking on a complex, expensive, and lengthy litigation process. In undertaking this heavy responsibility, Lead Counsel were obligated to ensure that sufficient attorney time and other human resources were dedicated to this prosecution, and that funds were available to pay for the considerable expenses. Courts within the Ninth Circuit have consistently recognized that the risk of receiving no recovery is a major factor in considering an attorneys' fees award. *See Rentech,* 2019 WL 5173771, at *10 (finding thousands of "hours of work with no compensation" and "facing the real possibility of no recovery" supporting the requested fees).[3]

### 5.  The Requested Fee Is Consistent With Awards Made in Comparable Cases

The requested fee in comparison to the Settlement also supports the approval of Lead Counsel's fee request. "The Ninth Circuit uses a 25% benchmark in common fund class actions, and in most common fund cases, the award exceeds that benchmark, with a 30% award the norm absent extraordinary circumstances that suggest reasons to lower or increase the percentage." *Allergan*, 2018 WL 4959014, at *1.[4]  A 30% fee award is consistent with fees awarded in comparable securities class action settlements with similar contingency fee risks. *See In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Banc of Cal. Sec. Litig.*, 2020 WL 1283486, at *1

---

[3] Moreover, if this were a non-representative litigation, the customary fee arrangement would be contingent, on a percentage basis, and in the range of 30% to 40% of the recovery. *See Blum*, 465 U.S. at 903 ("In tort suits, an attorney might receive one third of whatever amount the Plaintiff recovers. In those cases, therefore, the fee is directly proportional to the recovery."); *Katz v. China Century Dragon Media, Inc.*, 2013 WL 11237202, at *8 (C.D. Cal. Oct. 10, 2013) ("[C]ontingency fee arrangements generally range from 30% to 40% of final recovery.").

[4] Indeed, "in most common fund cases, the award exceeds that [25%] benchmark." *In re Omnivision Techs. Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *see also Moreno v. Pretium Packaging, L.L.C.*, 2021 WL 3673845, at *2 (C.D. Cal. Aug. 6, 2021) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery").

(C.D. Cal. Mar. 16, 2020) (awarding 33% of $19.75 million settlement); *Avila v. LifeLock Inc.*, 2020 WL 4362394, at *1 (D. Ariz. July 27, 2020) (30% fee award of $20 million settlement was "fair and reasonable").

Fee awards of 30%, or more, have been awarded in numerous securities settlements in district courts throughout the Ninth Circuit. *See, e.g.*, *Rentech*, 2019 WL 5173771 at *9-11 (awarding fees in the amount of one-third of the settlement fund); *In re CytRx Corp. Sec. Litig.*, 2018 WL 8950655, at *1 (C.D. Cal. Sept. 17, 2018) (awarding fees in the amount of 30% of the settlement fund); *In re K12 Inc. Sec. Litig.*, 2019 WL 3766420, at *1 (N.D. Cal. July 10, 2019) (awarding 33% of the settlement fund); *In re Apollo Grp. Inc. Sec. Litig.*, 2012 WL 1378677, at *7 (D. Ariz. Apr. 20, 2012) (awarding a fee of 33.33% of the settlement); *In re Heritage Bond Litig.*, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (awarding a fee of 33 1/3% of the settlement, and collecting cases awarding similar fees). Accordingly, Lead Counsel's fee request is in line with other comparable cases and should be approved.

Moreover, a review of fee decisions in other federal jurisdictions in securities class actions with comparable settlements also shows that an award of 30% is reasonable. *See*, *e.g.*, *In re Perrigo Co. PLC Sec. Litig.*, 2022 WL 500913, at *1 (S.D.N.Y. Feb. 18, 2022) (awarding a one-third fee on $31.9 million settlement); *Peace Officers' Annuity & Benefit Fund of Georgia v. DaVita Inc.*, 2021 WL 2981970, at *4 (D. Colo. July 15, 2021) (30% of the $135 million common fund "reflects a reasonable attorney fee award"); *Plymouth County Ret. Sys. v. GTT Communications, Inc.*, 2021 WL 1659848, at *5 (E.D. Va. Apr. 23, 2021) (awarding one-third fee on $25 million settlement); *In re BHP Billiton Ltd. Sec. Litig.*, 2019 WL 1577313, at *1 (S.D.N.Y. Apr. 10, 2019) (awarding 30% of $50 million settlement amount); *In re Rayonier Inc. Sec. Litig.*, 2017 WL 4542852, at *3 (M.D. Fla. Oct. 5, 2017) (awarding attorneys' fees in the amount of 30% of $73 million

settlement).

Accordingly, Lead Counsel requests a fee of 30%—i.e., the "norm" in common fund class action settlements. The fee request is squarely within the range of percentage fees that courts in this Circuit and nationwide award in similar complex class action settlements, and is highly reasonable given the favorable result achieved for the Settlement Class. *See Turocy v. El Pollo Loco Holdings, Inc*., No. 8:15-cv-01343-DOC-KES, slip op. at ¶ 4 (C.D. Cal. Aug. 27, 2019) (awarding 30% of $20 million settlement and requested costs) (Carter, J.).

### 6. The Reaction of the Settlement Class

Courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See Rentech*, 2019 WL 5173771, at *10 ("no objections . . . supports granting the requested fees"); *China Integrated Energy*, 2016 WL 11757878, at *12 ("reaction of the class is relevant in determining the overall fairness and reasonableness of an award of attorneys' fees.").

The Notice advised Settlement Class Members that Lead Counsel would be requesting an award of attorneys' fees not to exceed 30% of the Settlement Fund and payment of Litigation Expenses in an amount not to exceed $250,000. As of this filing, no objection has been received.

Furthermore, Lead Plaintiffs are sophisticated fiduciaries that collectively manage over $3 billion in assets and who were closely involved in the prosecution and settlement of the Action. Lead Plaintiffs support the fee request, which further strongly supports approval. *See In re Signet Jewelers Ltd. Sec. Litig.,* 2020 WL 4196468, at *17 (S.D.N.Y. July 21, 2020) ("Because the requested fee is based on an agreement that Lead Counsel entered into with the sophisticated institutional Lead Plaintiff at the outset of the litigation, the fee is presumptively reasonable"); *Veeco*, 2007 WL 4115808, at *8 ("Since passage of the PSLRA, courts [] have found that in a PSLRA case, a fee request which has been approved and endorsed by a

properly-appointed lead plaintiff is 'presumptively reasonable,' especially where the lead plaintiff is a sophisticated institutional investor.").

### 7.    A Lodestar Cross-Check Confirms the Requested Fee Is Reasonable

As discussed above, the percentage-of-recovery approach is widely favored within the Ninth Circuit. *See supra* at Section II.A.  The reasonableness of a percentage fee may be confirmed, or "cross-checked," using the lodestar-multiplier method. *See Vizcaino*, 290 F.3d at 1050 n.5.  In conducting a lodestar cross-check, the court engages in a two-step analysis.  First, the court multiplies the number of hours each attorney spent on the case by the reasonable hourly rate to obtain the lodestar. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564 (1986).  Second, the court adjusts that lodestar figure (by applying a multiplier) to reflect such factors as the risk and contingent nature of the litigation, the result obtained and the quality of the attorneys' work. *Staton v. Boeing Co.*, 327 F.3d 938, 967-68 (9th Cir. 2003).  Here, utilizing the lodestar cross-check method amply confirms the reasonableness of Lead Counsel's requested fees.

Lead Counsel have collectively spent 6,553.5 hours in connection with the Action, resulting in a total lodestar of $3,807,351.25.[5]  The 30% fee requested represents a fee of $5,475,000 (plus interest).  Thus, the fee request represents a multiplier of 1.4 of Lead Counsel's lodestar, which is on the low end of the typical lodestar multipliers commonly awarded.  *See Vizcaino*, 290 F.3d at 1052-54 (concluding that multipliers most commonly fall range from 1.0 to 4.0 and affirming fee representing a 3.65 multiplier); *van Wingerden v. Cadiz, Inc.*, 2017 WL 5565263, at *13 (C.D. Cal. Feb. 8, 2017) ("[m]ultipliers in the 3–4 range are common in

---

[5] *See* the lodestar and expense declarations of David R. Kaplan and Jonathan D. Uslaner attached to the Joint Decl. as Exhibits D and E.  These declarations provide the names of the attorneys and paraprofessionals who worked on the Action, the hourly rates for each attorney and paraprofessional, lodestar value of the time expended by such attorneys and paraprofessionals, the unreimbursed disbursements of these firms and the background and experience of the firms.

lodestar awards for lengthy and complex class action litigation"); *China Integrated Energy*, 2016 WL 11757878, at *12 ("Courts often approve percentage-fee awards that result in a positive lodestar multiplier between three and four."); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *7 (S.D. Cal. Oct. 30, 2020) ("the majority of fee awards in the district courts in the Ninth Circuit are 1.5 to 3 times higher than lodestar"); *In re IsoRay, Inc. Sec. Litig.*, 2017 WL 11461073, at *1 (E.D. Wash. Mar. 7, 2017) (30% fee award in securities class action was reasonable where lodestar multiplier was 1.48 or 1.77).[6]

In sum, Lead Counsel's requested fee award is reasonable, justified, and in line with what courts in this Circuit award in class actions such as this one, whether calculated as a percentage of the fund or as a multiple of counsel's lodestar. As discussed above, each of the factors considered by courts in the Ninth Circuit also strongly supports the reasonableness of the requested fee.[7]

## III.   LEAD COUNSEL'S LITIGATION EXPENSES ARE REASONABLE

"Attorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters." *Rentech*, 2019 WL 5173771, at *11. The Notice apprised Settlement Class Members that Lead Counsel would

---

[6] "Courts may find hourly rates reasonable based on evidence of other courts approving similar rates or other attorneys engaged in similar litigation charging similar rates." *Parkinson v. Hyundai Motor Am.*, 796 F. Supp. 2d 1160, 1172 (C.D. Cal. 2010). Here, Plaintiff's Counsel's rates are consistent with other attorneys engaged in similar litigation and of comparable ability and reputation. *See, e.g.*, *Hefler*, 2018 WL 6619983, at *14 (in securities class action settled in 2018, finding rates ranging "from $650 to $1,250 for partners or senior counsel, from $400 to $650 for associates, and from $245 to $350 for paralegals" to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (approving fee award following lodestar cross-check where "billing rates rang[ed] from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals").

Moreover, the lodestar does not include time for additional services to be provided by Lead Counsel to the Settlement Class, including attending the final settlement hearing, responding to Settlement Class Members inquiries, supervising the Claims Administrator in the review and processing of claims, preparing and filing a motion for distribution of the Settlement funds, and overseeing the distribution of checks to Settlement Class Members.

seek expenses in an amount not to exceed $250,000.  Lead Counsel have incurred expenses in an aggregate amount of $104,686.68 in prosecuting this Action.

These expenses are set forth in the declarations from counsel submitted to the Court and are of the type generally approved by courts for reimbursement.  Joint Decl. Exs. D and E.  Counsel's declarations itemize the various categories of expenses incurred and state that these expenses were reasonable and necessary to prosecuting the claims and achieving the Settlement.  *See China Integrated Energy*, 2016 WL 11757878, at *13.  Lead Counsel's expenses include the costs of conducting Lead Plaintiffs' investigation, computerized research, document database management for discovery, hiring experts, and mail and delivery charges, among other things, all of which are properly chargeable to the Settlement fund.  The categories of expenses are consistent with costs normally billed to clients by attorneys, warranting approval. *See Thomas v. MagnaChip Semiconductor Corp.*, 2018 WL 2234598, at *4 (N.D. Cal. May 15, 2018) ("[C]ourts throughout the Ninth Circuit regularly award litigation costs and expenses—including photocopying, printing, postage, court costs, research on online databases, experts and consultants, and reasonable travel expenses—in securities class actions, as attorneys routinely bill private clients for such expenses in non-contingent litigation."); *Todd v. STAAR Surgical Co.*, 2017 WL 4877417, at *5 (C.D. Cal. Oct. 24, 2017) (approving reimbursement of expenses for "experts and consultants," "mediation fees," and "necessary travel, filing fees, investigator fees, and document storage and maintenance fees"); *China Integrated Energy*, 2016 WL 11757878, at *13 ("frequently reimbursed costs include travel, mediation fees, photocopying, private investigator ..., and delivery and mail charges").

## IV.    THE PSLRA AWARD REQUESTS ARE REASONABLE

The PSLRA authorizes the Court to allow reimbursement to a representative plaintiff for its "reasonable costs and expenses (including lost wages) directly

relating to the representation of the class to any representative party serving on behalf of a class." *See Regulus Therapeutics Inc.*, 2020 WL 6381898, at *8. As detailed in the Joint Declaration, Sims Declaration, and Mack Declaration, Lead Plaintiffs expended time and effort in representing the best interests of the Settlement Class in this Action, including the review of all pleadings and filings in this action, regular communications with Lead Counsel concerning the developments therein, and supervision of and participation in the settlement process.

Lead Plaintiffs the Atlanta Funds and Baton Rouge seek $5,500 and $3,392.01, respectively, for the time and effort they devoted to participation in and supervision of the Action. Courts have noted that it is important to reimburse time and expenses of class representatives because doing so "encourages participation of plaintiffs in the active supervision of their counsel." *Varljen v. H.J. Meyers & Co.*, 2000 WL 1683656, at *5 n.2 (S.D.N.Y. Nov. 8, 2000). A long line of cases holds that expenses and time spent by lead plaintiffs in managing the case are properly reimbursable and consistent with the PSLRA's objective to encourage institutional investors to actively lead securities class actions. *See, e.g., STAAR Surgical Co.*, 2017 WL 4877417, at *6 ($10,000 award for the "significant time and effort Lead Plaintiff expended to support this litigation," "including reviewing and commenting on the complaints and significant briefs, and communicating with counsel to oversee the litigation"); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1173-74 (S.D. Cal. 2007) ($40,000 reimbursement to lead plaintiff). Here, Lead Plaintiffs are seeking reimbursement for the reasonable value of the time their employees devoted to the Action, including by communicating with Lead Counsel, reviewing pleadings, and participating in the mediation process and settlement negotiations, as well as, for Baton Rouge, the work of its outside general counsel. *See* Exs. A and B to Joint Decl. (Sims Declaration at ¶¶ 13-14, Mack Declaration at ¶¶ 11-12).

Moreover, the requested award is particularly appropriate here given that the Notice advised Settlement Class members that Lead Counsel would apply for up to $250,000 in Litigation Expenses, which amount might include a request for reimbursement of Lead Plaintiffs' reasonable costs and expenses, and no Settlement Class Member has objected to this request as of the date of this filing. The total amount requested, $113,578.69, including $104,686.68 for Lead Counsel's litigation expenses and $8,892.01 sought by Lead Plaintiffs is substantially below the $250,000 maximum amount listed in the Notice.

## V.   CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully request that the Court award attorneys' fees of 30% of the Settlement Fund, litigation expenses in the amount of $104,686.68 and PSLRA awards to Lead Plaintiffs in the total amount of $8,892.01. A proposed order will be submitted with Lead Counsel's reply papers, after the March 23, 2022 objection and exclusion deadline has passed.

Dated:  March 9, 2022                    Respectfully submitted,

                                         **SAXENA WHITE P.A.**

                                         /s/ *David R. Kaplan*
                                         David R. Kaplan (SBN 230144)
                                         dkaplan@saxenawhite.com
                                         Hani Y. Farah (SBN 307622)
                                         hfarah@saxenawhite.com
                                         12750 High Bluff Drive, Suite 475
                                         San Diego, CA 92130
                                         Telephone: (858) 997-0860
                                         Facsimile: (858) 369-0096

                                         -and-

                                         Steven B. Singer (appearing *pro hac vice*)
                                         ssinger@saxenawhite.com
                                         10 Bank Street, 8th Floor

White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Proposed Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

/s/ *Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

-and-

John J. Rizio-Hamilton
(appearing *pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*