**SAXENA WHITE P.A.**
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860

*Attorneys for Lead Plaintiffs the Atlanta Funds and Co-Lead Counsel for the Proposed Settlement Class*

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Jonathan D. Uslaner (SBN 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*

[Additional counsel appear on signature page]

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**
**SOUTHERN DIVISION**

| | |
|---|---|
| IN RE MERIT MEDICAL SYSTEMS, INC. SECURITIES LITIGATION | Case No. 8:19-cv-02326-DOC-ADS<br><br>**LEAD PLAINTIFFS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF UNOPPOSED MOTION FOR APPROVAL OF DISTRIBUTION PLAN**<br><br>Judge: Hon. David O. Carter<br>Courtroom: 10A<br>Date: January 9, 2023<br>Time: 8:30 a.m. |

# TABLE OF CONTENTS

**Page(s)**

I.    BACKGROUND ........................................................................................2

II.   CLAIMS ADMINISTRATION ...............................................................3

    A.    No Disputed Claims ...................................................................4

    B.    Late Claims and Final Cut-Off Date .........................................4

III.  FEES AND EXPENSES OF CLAIMS ADMINISTRATOR..........................5

IV.   DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND .................6

    A.    Initial Distribution of the Net Settlement Fund .......................6

    B.    Additional Distribution(s) of the Net Settlement Fund...........7

V.    RELEASE OF CLAIMS ..........................................................................9

VII.  CONCLUSION.......................................................................................11

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGE(S)**

*Hefler v. Wells Fargo & Co.*,
  Case No. 16-cv-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18,
  2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir.
  2020) .................................................................................................................9

*In re Capstone Turbine Corp. Sec. Litig.*,
  CV 15-8914, 2020 WL 7889062 (C.D. Cal. Aug. 26, 2020) .........................9, 10

*In re Illumina, Inc. Sec. Litig.*,
  Case No. 3:16-cv-3044, 2021 WL 1017295 (S.D. Cal. Mar. 17,
  2021) .................................................................................................................9

*In re Toyota Motor Corp. Sec. Litig.*,
  2014 CV 10-992, WL 12586787 (C.D. Cal. Aug. 4, 2014) ..............................10

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab.
  Litig.*,
  MDL No. 2672, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28,
  2018) .................................................................................................................9

Court-appointed Lead Plaintiffs, City of Atlanta Police Pension Fund and City of Atlanta Firefighters' Pension Fund (collectively, the "Atlanta Funds") and the Employees' Retirement System of the City of Baton Rouge and Parish of East Baton Rouge ("Baton Rouge" and, together with the Atlanta Funds, the "Lead Plaintiffs"), respectfully move for entry of the proposed Order Approving Distribution Plan ("Class Distribution Order") for the proceeds of the Settlement in the above-captioned securities class action ("Action"). The Distribution Plan is included in the accompanying Declaration of Eric J. Miller ("Miller Declaration" or "Miller Decl."), submitted on behalf of the Court-approved Claims Administrator, A.B. Data, Ltd.'s Class Action Administration Company ("A.B. Data").[1]

The Class Distribution Order will, upon being entered by the Court, permit A.B. Data to make an Initial Distribution of the Settlement proceeds to eligible Claimants. Among other things, the Class Distribution Order will: (i) approve A.B. Data's administrative determinations accepting and rejecting Claims submitted in connection with the Settlement; (ii) direct the Initial Distribution of the Net Settlement Fund to Claimants whose Claims are accepted by A.B. Data as valid and approved by the Court ("Authorized Claimants"), while maintaining a Reserve for any tax liability and claims administration-related contingencies that may arise; and (iii) approve A.B. Data's fees and expenses incurred and estimated to be incurred in the administration of the Settlement and the Initial Distribution.

There are no disputed Claims by any Settlement Class Member requiring Court review. Further, under the Stipulation, Defendants have no role in or responsibility for the administration of the Settlement Fund or processing of Claims, including determinations as to the validity of Claims or the distribution of the Net

---

[1] Unless otherwise indicated in this memorandum, all terms with initial capitalization shall have the meanings ascribed to them in the Miller Declaration or the Stipulation and Agreement of Settlement dated December 21, 2021 (ECF No. 105-1) ("Stipulation"). The Settlement is contained in the Stipulation.

Settlement Fund. *See* Stipulation ¶¶ 18, 22, 24; *see also* Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for Attorneys' Fees and Litigation Expenses ("Notice") ¶ 44 and Notice App. A ¶ 1. Nevertheless, we provided Defendants' Counsel a copy of these motion papers and they informed us that Defendants do not oppose this motion. As such, the motion is ripe for determination and Lead Counsel respectfully submit that a hearing on this motion is not required.

## I.    BACKGROUND

As the Court is aware, this Action was settled for $18.25 million in cash. On April 15, 2022, the Court entered the Order Approving Plan of Allocation of Net Settlement Fund (ECF No. 117) and entered the Judgment Approving Class Action Settlement (ECF No. 119) on April 18, 2022. The Effective Date of the Settlement has now occurred. *See* Stipulation ¶ 32. Accordingly, the Net Settlement Fund may be distributed to Authorized Claimants. In accordance with paragraph 27 of the Stipulation, Lead Plaintiffs respectfully request that the Court enter the Class Distribution Order approving the Distribution Plan.

In accordance with the Court's Order Preliminarily Approving Settlement and Providing for Notice of the Settlement (ECF No. 106) ("Preliminary Approval Order"), A.B. Data mailed the Notice and the Proof of Claim and Release Form ("Claim Form" and, collectively with the Notice, the "Notice Packet") to potential Settlement Class Members, brokers, and other nominees. Miller Decl. ¶ 2. A.B. Data has disseminated 26,636 Notice Packets to potential Settlement Class Members, brokers, and nominees. *Id*. ¶ 4. The Notice informed Settlement Class Members that if they wished to be eligible to participate in the distribution of the Net Settlement Fund, they were required to submit a properly executed Claim Form postmarked no later than May 25, 2022. *Id*. ¶ 7.

## II.    CLAIMS ADMINISTRATION

As set forth in the Miller Declaration, through November 28, 2022, A.B. Data received and processed 12,440 Claims. Miller Decl. ¶ 7. All Claims received through November 28, 2022, have been fully processed in accordance with the Stipulation and the Court-approved Plan of Allocation included in the Notice (*see id*.), and A.B. Data has worked with Claimants to help them perfect their Claims. *See id.* ¶¶ 19-28. Many of the Claims were initially deficient or ineligible for one or more reasons, including being incomplete, not signed, not properly documented, or otherwise deficient, which required substantial follow-up work by A.B. Data. *Id*. ¶¶ 19, 22.

If A.B. Data determined a Claim to be defective or ineligible, A.B. Data sent a letter (if the Claimant or filer filed a paper Claim) or an email (if the Claimant or filer filed an electronic Claim) to the Claimant or filer, as applicable, describing the defect(s) or condition(s) of ineligibility in the Claim and the steps necessary to cure any curable defect(s) in the Claim ("Deficiency Notices"). *Id*. ¶¶ 20, 22. The Deficiency Notices advised the Claimant or filer that the appropriate information or documentary evidence to complete the Claim had to be sent within twenty (20) days from the date of the Deficiency Notice or A.B. Data would recommend the Claim for rejection to the extent the deficiency or condition of ineligibility was not cured. *Id*. ¶¶ 20, 23. Examples of the Deficiency Notices are attached as Exhibits A, B, and C to the Miller Declaration.

Of the 12,440 Claims that are the subject of this motion, A.B. Data has determined that 6,992 Claims are acceptable in whole or in part, and that 5,748 Claims should be rejected because they are ineligible for payment from the Net Settlement Fund. Miller Decl. ¶¶ 34-37. Lead Plaintiffs respectfully request that the Court approve A.B. Data's administrative determinations accepting and rejecting Claims as set forth in the Miller Declaration.

## A.   No Disputed Claims

A.B. Data carefully reviewed Claimants' and filers' responses to the Deficiency Notices and worked with them to resolve deficiencies where possible. *Id.* ¶¶ 21, 26. Consistent with paragraph 25(e) of the Stipulation, the Deficiency Notices specifically advised the Claimant or filer of the right, within twenty (20) days after the mailing or emailing of the Deficiency Notice, to contest the rejection of the Claim and request Court review of A.B. Data's administrative determination of the Claim. *Id.* ¶¶ 20, 23, and Exhibits A and B.

With respect to the fully processed Claims, A.B. Data received no requests for Court review of its administrative determinations. *Id.* ¶ 28. Accordingly, there are no outstanding requests for Court review by any Claimants. *Id.*

## B.   Late Claims and Final Cut-Off Date

The 12,440 Claims received through November 28, 2022, include 66 Claims that were postmarked or received after May 25, 2022, the Court-approved Claim submission deadline. *Id.* ¶¶ 29, 35. Those late Claims have been fully processed, and 35 of them are, but for their late submission, otherwise eligible to participate in the Settlement. *Id.* Although these 35 Claims were late, they were received while the processing of timely Claims was ongoing. *Id.* Due to the amount of time needed to process the timely Claims received, the processing of these late Claims did not delay the completion of the claims administration process or the distribution of the Net Settlement Fund. *Id.* ¶ 29. The Court has discretion to accept Claims received after the Claim submission deadline. *See* Preliminary Approval Order ¶ 11; Notice ¶ 46. Lead Plaintiffs respectfully submit that, when the equities are balanced, it would be unfair to prevent an otherwise eligible Claim from participating in the distribution of the Net Settlement Fund solely because it was received after the Court-approved Claim submission deadline if it were submitted while timely Claims were still being processed.

To facilitate the efficient distribution of the Net Settlement Fund, however, there must be a final cut-off date after which no other Claims may be accepted. Accordingly, Lead Plaintiffs respectfully request that the Court order that any new Claims and any adjustments to previously filed Claims that would result in an increased Recognized Claim amount received after November 28, 2022, be barred, subject to the provisions of paragraph 39(f) of the Miller Declaration. Paragraph 39(f) of the Miller Declaration applies to any Claims received or modified after November 28, 2022, that would have been eligible for payment or additional payment pursuant to the Court-approved Plan of Allocation if timely received. At the time when Lead Counsel, in consultation with A.B. Data, determine that an additional distribution is not cost-effective as provided in paragraph 39(e) of the Miller Declaration, the post-November 28, 2022 Claimants, after payment of fees and expenses as provided in paragraph 39(f) of the Miller Declaration and at the discretion of Lead Counsel and to the extent possible, may be paid their distribution amounts or additional distribution amounts on a *pro rata* basis that would bring them into parity with other Authorized Claimants who have cashed all their prior distribution checks.

## III.   FEES AND EXPENSES OF CLAIMS ADMINISTRATOR

The Court-approved Claims Administrator for the Settlement, A.B. Data, was responsible for, among other things, disseminating notice of the Settlement to the Settlement Class, creating and maintaining a website and toll-free telephone helpline, processing Claims, and allocating and distributing the Net Settlement Fund to Authorized Claimants. Miller Decl. ¶ 2. A.B. Data's fees and expenses for its work performed through October 31, 2022, are $159,141.95, and its estimated fees and expenses for work to be performed in connection with the Initial Distribution are $17,905.88, which together total $177,047.83. *Id*. ¶ 38. Should the estimate of fees and expenses to conduct the Initial Distribution of the Net Settlement Fund exceed the actual cost, the excess will be returned to the Net Settlement Fund and

will be available for subsequent distribution to Authorized Claimants. *Id*. To date, A.B. Data has received payment in the amount of $154,269.42 for its fees and expenses. *Id*. Accordingly, there is an outstanding balance of $22,778.41 payable to A.B. Data, which amount includes the estimated fees and expenses to be incurred by A.B. Data in connection with the Initial Distribution. *Id*. Lead Counsel reviewed A.B. Data's invoices and respectfully request on behalf of Lead Plaintiffs that the Court approve all of A.B. Data's fees and expenses.

## IV.    DISTRIBUTION PLAN FOR THE NET SETTLEMENT FUND

### A.    Initial Distribution of the Net Settlement Fund

Under the proposed Distribution Plan, A.B. Data will distribute 95% of the Net Settlement Fund after deducting (i) all payments previously allowed, (ii) payments approved by the Court on this motion, and (iii) any estimated taxes, the costs of preparing appropriate tax returns, and any escrow fees (i.e., the Initial Distribution). *See* Miller Decl. ¶ 39(a). In the Initial Distribution, A.B. Data will calculate award amounts for all Authorized Claimants as if the entire Net Settlement Fund were to be distributed now. *Id*. ¶ 39(a)(1). A.B. Data will first determine each Authorized Claimant's *pro rata* share of the total Net Settlement Fund based on the Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants. *Id*. A.B. Data will eliminate from the Initial Distribution any Authorized Claimant whose *pro rata* share calculates to less than $10.00, as these Claimants will not receive any payment from the Net Settlement Fund and will be so notified by A.B. Data. *Id*. ¶ 39(a)(2). A.B. Data will then recalculate the *pro rata* share of the Net Settlement Fund for Authorized Claimants who would have received $10.00 or more based on the amount of the Authorized Claimant's Recognized Claim in comparison to the total Recognized Claims of all Authorized Claimants who would have received $10.00 or more. *Id*. ¶ 39(a)(3). This *pro rata* share is the Authorized Claimant's Distribution Amount. *Id*. Authorized Claimants whose Distribution Amount calculates to less than $200.00 will be paid their full

Distribution Amount in the Initial Distribution ("Claims Paid in Full"). *Id*. ¶ 39(a)(4). These Authorized Claimants will receive no additional funds in subsequent distributions. *Id*. After deducting the payments to the Claims Paid in Full, 95% of the remaining balance of the Net Settlement Fund will be distributed *pro rata* to Authorized Claimants whose Distribution Amount calculates to $200.00 or more. *Id*. ¶ 39(a)(5). The remaining 5% of the Net Settlement Fund will be held in reserve (the "Reserve") to address any tax liability and claims administration-related contingencies that may arise. *Id*. To the extent the Reserve is not depleted, the remainder will be distributed in the Second Distribution. *Id*.

To encourage Authorized Claimants to cash their checks promptly, Lead Plaintiffs propose that all distribution checks bear the notation, "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY [DATE 90 DAYS AFTER ISSUE DATE]." *Id*. ¶ 39(b). Authorized Claimants who do not cash their checks within the time allotted or on the conditions set forth in paragraph 39(b) of the Miller Declaration will irrevocably forfeit all recovery from the Settlement, and the funds allocated to these stale-dated checks will be available to be redistributed to other Authorized Claimants in a subsequent distribution, as described below. *Id*. ¶ 39(c).

### B.    Additional Distribution(s) of the Net Settlement Fund

After A.B. Data has made reasonable and diligent efforts to have Authorized Claimants cash their Initial Distribution checks, but not earlier than seven (7) months after the Initial Distribution, A.B. Data will, after consulting with Lead Counsel, conduct the Second Distribution of the Net Settlement Fund. *Id*. ¶ 39(d). In the Second Distribution, any amount remaining in the Net Settlement Fund, after deducting any unpaid fees and expenses incurred, will be distributed to all Authorized Claimants (other than Claims Paid in Full) who cashed their Initial Distribution checks and would receive at least $10.00 from the Second Distribution based on their *pro rata* share of the remaining funds. *Id*. If any funds remain in the

Net Settlement Fund after the Second Distribution, and if cost-effective, subsequent distributions will take place at six-month intervals. *Id*. When Lead Counsel, in consultation with A.B. Data, determine that a further distribution is not cost-effective, if sufficient funds remain to warrant the processing of Claims received after November 28, 2022, A.B. Data will process those Claims. *Id*. ¶ 39(e). Any of these Claims that are otherwise valid, as well as any earlier received Claims for which an upward adjustment was received after November 28, 2022, may be paid in accordance with paragraph 39(f) of the Miller Declaration. *Id*. If any funds remain in the Net Settlement Fund after payment of these Claims and any unpaid fees or expenses, Lead Counsel propose that such remaining funds (if there are any) be contributed to the Investor Protection Trust ("IPT"). Lead Counsel propose that IPT be designated as the "non-sectarian, not-for-profit 501(c)(3) organization to be recommended by Lead Counsel" referenced in the Court-approved Plan of Allocation. *See* Notice App. A ¶ 20.

IPT is a non-sectarian, nonprofit organization exempt from taxation under Section 501(c)(3) of the Internal Revenue Code. *See About the Investor Protection Trust*, Investor Protection Trust, https://iptrust.wpengine.com/about/ (last visited Nov. 11, 2022), and *Investor Protection Trust,* Charity Navigator, www.charitynavigator.org/ein/396570280 (last visited Nov. 11, 2022). Founded in 1993, IPT's primary mission is "to provide the independent, objective investor education that Americans need to make informed investment decisions." *About the Investor Protection Trust*, Investor Protection Trust, https://iptrust.wpengine.com/about/ (last visited Nov. 11, 2022). IPT's recently funded projects include radio-based and video ad-based investor protection awareness campaigns, the creation and distribution of a digital investor education awareness campaign, and a program to educate professional groups, military organizations, law enforcement, and religious groups on resources for investor protection. *See Grants*, Investor Protection Trust,

https://investorprotection.org/grants/ (last visited Nov. 11, 2022). Federal courts have approved IPT as a *cy pres* recipient of residual balances of net settlement funds in other settlements. *See, e.g., In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig.*, No. MDL 2672, 2018 WL 6198311, at *5 (N.D. Cal. Nov. 28, 2018) ("The proposed *cy pres* recipient, the Investor Protection Trust, is a nonprofit organization focused on investor education. A savvy, educated investor is hopefully more likely to identify signs of securities fraud, which furthers the Exchange Act's purpose of maintaining 'fair and honest markets.'" (citation omitted)); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 6619983, at *11 (N.D. Cal. Dec. 18, 2018) ("[T]he Court concludes that the Investor Protection Trust's mission of educating investors makes it an appropriate cy pres beneficiary."), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020); *In re Capstone Turbine Corp. Sec. Litig.*, No. 15-cv-8914, 2020 WL 7889062, at *2 (C.D. Cal. Aug. 26, 2020) (approving IPT as *cy pres* recipient); *In re Illumina, Inc. Sec. Litig.*, No. 3:16-cv-3044, 2021 WL 1017295, at *9 (S.D. Cal. Mar. 17, 2021) (same).

## V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to (i) bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants; and (ii) provide that all persons involved in any aspect of Claims processing, or who are involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from all claims arising out of that involvement. *See* Stipulation ¶ 29. Accordingly, Lead Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted in connection with the Settlement, or who are otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from all claims arising out of that involvement, and bar all Settlement Class Members and other Claimants,

whether or not they receive payment from the Net Settlement Fund, from making any further claims against the Net Settlement Fund, Lead Plaintiffs, Lead Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Lead Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or any other person released under the Settlement beyond the amounts allocated to Authorized Claimants.

Courts have repeatedly approved similar releases in connection with the distribution of settlement proceeds. *See, e.g.*, *Capstone Turbine*, 2020 WL 7889062, at *2 ("All persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, are released and discharged from any and all claims arising out of such involvement, and all Settlement Class Members, whether or not they are to receive payment from the Net Settlement Fund, are barred from making any further claim against the Net Settlement Fund or the released persons beyond the amount allocated to them pursuant to this Order."); *In re Toyota Motor Corp. Sec. Litig.*, No. 14:10-cv-922, 2014 WL 12586787, at *2 (C.D. Cal. Aug. 4, 2014) (approving substantially similar language in order authorizing distribution of settlement proceeds).

## VII.  CONCLUSION

For the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant their Unopposed Motion for Approval of Distribution Plan and enter the [Proposed] Order Approving Distribution Plan.

Dated:  November 29, 2022            Respectfully submitted,

**SAXENA WHITE P.A.**

/s/ *David R. Kaplan*
David R. Kaplan (SBN 230144)
dkaplan@saxenawhite.com
Hani Y. Farah (SBN 307622)
hfarah@saxenawhite.com
505 Lomas Santa Fe Drive, Suite 180
Solana Beach, CA 92075
Telephone: (858) 997-0860
Facsimile: (858) 369-0096

-and-

Steven B. Singer (*pro hac vice*)
ssinger@saxenawhite.com
10 Bank Street, 8th Floor
White Plains, NY 10606
Tel: (914) 437-8551
Fax: (888) 631-3611

*Attorneys for Lead Plaintiffs the Atlanta*
*Funds and Co-Lead Counsel for the Proposed*
*Settlement Class*

**BERNSTEIN LITOWITZ BERGER
& GROSSMANN LLP**

/s/ *Jonathan D. Uslaner*
Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
Lauren M. Cruz (Bar No. 299964)
lauren.cruz@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

-and-

John J. Rizio-Hamilton (*pro hac vice*)
johnr@blbglaw.com
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

*Attorneys for Lead Plaintiff Baton Rouge and Co-Lead Counsel for the Proposed Settlement Class*