UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
(SOUTHERN DIVISION - SANTA ANA)

| | |
|---|---|
| IN RE: | ) CASE NO: 8:19-cv-02326-DOC-ADSx |
| | ) |
| | )              CIVIL |
| | ) |
| MERIT MEDICAL SYSTEMS, INC. | )     Santa Ana, California |
| SECURITIES LITIGATION | ) |
| | )    Wednesday, April 13, 2022 |
| | ) |
| | )     (4:26 p.m. to 4:49 p.m.) |

HEARING RE:

MOTION FOR SETTLEMENT APPROVAL
OF PRELIMINARY APPROVAL OF SETTLEMENT [DKT.NO.105];

MOTION FOR SETTLEMENT APPROVAL OF PROPOSED CLASS ACTION
SETTLEMENT AND PLAN OF ALLOCATION [DKT.NO.107];

PLAINTIFF'S MOTION FOR ATTORNEY FEES AND LITIGATION EXPENSES
[DKT.NO.109]

BEFORE THE HONORABLE DAVID O. CARTER,
UNITED STATES DISTRICT JUDGE

**APPEARANCES**:                    SEE PAGE 2

Court Reporter:            Recorded; CourtSmart

Courtroom Deputy:          Karlen Dubon

Transcribed by:            Exceptional Reporting Services, Inc.
                           P.O. Box 8365
                           Corpus Christi, TX 78468
                           361 949-2988

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**


Plaintiffs:                    DAVID R. KAPLAN, ESQ.
                               Saxena White
                               12750 High Bluff Dr.
                               Suite 475
                               San Diego, CA 92130

                               JONATHAN D. USLANER, ESQ.
                               Bernstein Litowitz Berger & Grossmann
                               2121 Avenue of the Stars
                               Suite 2575
                               Los Angeles, CA 90067


Defendants:                    MICHAEL J. BILES, ESQ.
                               King & Spalding
                               500 West 2nd Street
                               Suite 1800
                               Austin, TX 78701

3

**Santa Ana, California; Wednesday, April 13, 2022; 4:26 p.m.**

--oOo--

THE COURT:  All right.  We're on the record in 19-02326, *In Re: Merit Medical Systems, Inc. Securities Litigation.*

Counsel, if you'd remain seated and would you please make your appearance beginning with Plaintiff?

MR. KAPLAN:  Good afternoon, Your Honor, Dave Kaplan of Saxena White on behalf of the lead Plaintiffs and with me here today is Jonathan Uslaner from Bernstein Litowitz Berger and Grossmann, our co-counsel -- our co-lead counsel in this case also on behalf of lead Plaintiffs.

THE COURT:  Thank you.

On behalf of the Defendant?

MR. BILES:  Good afternoon, Your Honor.  It's Michael Biles of King and Spalding on behalf of Defendants.

THE COURT:  And, Counsel, your comments, your argument on this matter.

MR. KAPLAN:  Thank you, Your Honor.  We're here before Your Honor today on a motion for final approval of the settlement in this case, a settlement Your Honor granted preliminary approval of on January 3rd of this year.  And I'm happy to summarize for the Court the principal reasons supporting our request for final settlement approval and answer any questions Your Honor may have.

4

THE COURT:  Please.

MR. KAPLAN:  So the pending motions for final approval of the settlement and for attorneys' fees and reimbursement of litigation expenses are unopposed.  There were no objections to any aspect of the settlement as well as any aspect of the request for fee and reimbursement.

The proposed settlement consideration is $18.25 million and following the Court's January 3rd preliminary approval order, the full amount of that settlement consideration was deposited into an escrow account at Huntington Bank where it's been invested in Treasury Bills and has been earning interest for the benefit of the settlement class.

THE COURT:  Okay.

MR. KAPLAN:  And in accordance with the Court's preliminary approval order, lead counsel together with the claims administrator has embarked on an extensive notice program which included providing nearly 26,000 notice packets to potential settlement class members that have been identified by the company itself, the Defendant company Merit Medical itself as well as banks, brokers and other nominees.  And those notice packets -- the mailing of those notice packets occurred between January 21st and March 25th.

Publication notice was also provided in *Investors Business Daily* and the *PR Newswire* on February 7th.  Both of

the respective lead counsel firms have also provided notice via our websites as well as a dedicated website maintained by the class action administrator for the settlement, www.meritmedicalsecuritieslitigation.com.

And throughout this process, as is customary, the claims administrator maintained a toll-free number for investors to call with any questions about the settlement. There's only been a few calls, seven in -- 14 inbound calls that lasted approximately 2.5 hours and seven outbound calls made in response to messages left and to follow up on any questions.

My co-counsel and I actually spoke with the claims administrator yesterday afternoon just to ensure that the notice program was going smoothly and that there were no questions by potential class members or the brokers or the nominees regarding any aspect of the settlement or the notice program.  And the claims administrator confirmed that everything is proceeding smoothly and as planned.

So on March 9th following the transfer of the full settlement consideration into the Huntington Bank into the escrow account, we, lead Plaintiffs, filed their reply in further support of final settlement approval.  And we're pleased to report that there has not been a single objection, as I mentioned earlier, to any aspect of the settlement nor has any member of the proposed settlement class requested

exclusion.

We did receive one exclusion request.  It was by an individual investor who was not a member of the settlement class.  They held 20 shares of Merit common stock and sold them for a gain before the first alleged corrected disclosure.  So they wouldn't be a member of the settlement class in any event.

So there's been no request for exclusion.  There's been no objections to any aspect to either of the motions.  And as set forth in our papers, I would submit to the Court that the settlement is fair, reasonable and adequate and meets the approval standards of Rule 23(e)(2) and applicable Ninth Circuit law including each of the handling factors.

And I'm happy to go through those and I'm also happy to detail the extensive efforts that the lead Plaintiffs and the lead counsel took in this case on behalf of the class that resulted in the 18.25 million-dollar recovery.  I could go through those efforts briefly for Your Honor.

It included two years of litigation and an extensive pre-suit investigation that included the identification over -- of over 700 former employees of Merit Medical and the two acquisition companies that it -- two companies that it acquired and that were the subject of the claims and interviews with over four dozen of those former employees, 16 of which were included in our nearly hundred-page amended complaint.

My colleague Jon here spoke with each and every one

of those during those interviews and confirmed their accounts and their accounts were cited in both Your Honor's decision denying transfer of the case to the Defendant company's home forum of the District of Utah as well as the decision denying the motion -- substantially denying the motion to dismiss in this case.

Our efforts also included, as I mentioned, defeating Defendants' transfer motion to Utah, largely defeating the motion to dismiss first before Magistrate Judge Spaeth and then again before Your Honor in connection with Defendants' objection to Judge Spaeth's Report and Recommendation.

Thereafter, discovery began and we received from Defendants and reviewed from Defendants and five nonparties over a half million pages of documents and we also consulted with experts regarding various aspects of the claims and damages.

Thereafter, we engaged in mediation discussions before a well -- a highly experienced mediator Michelle Yoshida of Phillips ADR which we informed Your Honor about at that settlement conference that we had in this case.

We engaged in a full-day in-person mediation.  That did not result in a settlement but our discussions continued for six weeks thereafter, as did discovery, and ultimately the parties accepted the mediator's recommendation on a double-blind basis for the $18.25 million in settlement consideration.

I would point out as well that, as Your Honor may be aware, typically in securities class action settlements, the settlement is funded entirely by directors' and officers' insurance policies.  Here, over half of the settlement consideration was funded by the company itself.  The company went out of pocket.  So we do believe that's a meaningful fact to bring to the Court's consideration in assessing the substantial recovery achieved for the class here.

And in that regard, in terms of the recovery achieved for the class, our expert estimated that the total realistic class-wide damages in this case after considering some significant loss-causation arguments -- and I could get into those if Your Honor would like -- was $153 million.  But that is taking a very --

THE COURT:  Right.

MR. KAPLAN:  -- Plaintiff's-oriented view of loss causation and -- but under Defendants' arguments, our expert analyzed that the total class-wide damages were $33 million.

So depending on which side you look at and which side the jury -- the Court or jury were to accept, the recovery achieved through this settlement represents between 12 and 55 percent of the maximum realistic trial damages class-wide in this case.  And that's a very significant figure.

For example, every year a leading economic consulting firm, Cornerstone Research, publishes a review of securities

9

class action settlements and the median recovery rates.  And the most recent report cited a median recovery in cases of all sizes from 2011 to 2019 of 4.9 percent.  So we're more than double that figure even at the low end of the range and over 11 times that figure at the high end of the range.

So we did believe that the settlement achieved here, as well as the lead Plaintiffs strongly believed, represented a very meaningful recovery for the class and that continued risk -- continued further litigation in the case not only might not achieve a larger recovery but it might result in no recovery at all because Defendants vigorously challenged every aspect of the claims including the core claim elements of falsity, materiality, scienter and loss causation.

And some of these arguments were extremely challenging and we believed in the merits of our case and in the strength of our investigation but there were very real risks in this case and we do believe that the recovery achieved in this case is an excellent recovery for the class and certainly surpasses the typical recovery in securities class action cases.

**THE COURT:**  Okay.

**MR. KAPLAN:**  I can move on to address the plan of allocation very briefly.

**THE COURT:**  Why don't you?

**MR. KAPLAN:**  Sure.  So the plan of allocation here

seeks to equitably distribute the net settlement fund among settlement class members who suffered economic losses as a result of the alleged violations of the securities laws pled in our complaint.  It was developed by lead counsel in consultation with lead Plaintiffs' damages expert and is consistent with plans of allocation utilized in this district and Federal courts throughout California and nationwide.

And what it does is it calculates the estimated amount of artificial inflation that was introduced into the stock price by Defendants' alleged misrepresentations and the amount of that artificial inflation that was removed in this case on two alleged corrective disclosure dates when the stock price plummeted in response to various news disclosures including what we allege are corrective revelations of the prior misstatements.

So it measures the amount of artificial inflation within the stock price drop on those two corrective disclosure events that was removed and tied to the alleged misstatements in the case and then treats all class members equally in apportioning the net settlement fund based on the timing of those -- each class member's purchases and sales and the amount of artificial inflation that they -- that was in the stock price when they purchased it and the damages that they suffered as a result of holding those shares over the corrective disclosure events.

So it's a very common plan of allocation, typical of security -- in securities class action settlements.  And it's fairly straightforward in this case given that there were two corrective disclosure events and it's an eight-month class period.

I can go into greater detail on the plan of allocation.  It's described in great detail in the notice that went out to class members but if Your Honor doesn't have any questions regarding the plan of allocation, I'm happy to turn to our fee and expense request.

**THE COURT:**  Please.

**MR. KAPLAN:**  So -- thank you, Your Honor.  As I mentioned earlier, this action was litigated for two years and without any compensation to the lead counsel firms.  It was -- we took this case on a full contingency-fee basis.  All expenses were out-of-pocket expenses incurred by the firms.

We're requesting a fee of 30 percent of the net settlement fund or $5.475 million with the agreement and full support of the three lead Plaintiffs in this case.  The three lead Plaintiffs are sophisticated public pension funds with several billion dollars of combined assets under management.  They're experienced fiduciaries and that experience includes oversight of lead counsel and many other securities class action settlements.

The 30-percent fee amount has -- for securities class

12

actions, Your Honor, as recognized in other cases, is the norm in complex securities fraud cases and is consistent with percentage fees awarded in comparable cases and certainly in cases where -- involving significant work by counsel and substantial results that have been achieved by counsel.

And we do recognize that the Ninth Circuit has a benchmark, 25 percent.  We do think, given the substantial amount of work that we've invested in this case and the extraordinary recovery that this proposed settlement would return to shareholders, that a modest upwards adjustment to 30 percent is consistent not only with your prior case law stating that that's the norm in complex securities fraud cases but case law from numerous other judges in District courts throughout California and beyond California.

And I point out that if the Court were to look at the lodestar that our firm has incurred and the prosecution -- investigation, research and prosecution in this case, it totals $3.8 million or over 6,550 hours of work and none of that is in connection with the fee and expense request.  That's all been removed -- so just for the investigation and prosecution of this case.  And that results in a modest multiplier of 1.4 --

THE COURT:  Okay.

MR. KAPLAN:  -- so certainly in line with other multipliers approved by Courts in the Ninth Circuit and, in fact, at the low end.  There's many cases Courts approving

13

percentage-fee awards with three to four times multipliers and often cases with substantially less recovery rates than we've achieved here.  So we do believe that this -- what we would term a "modest" 1.4 percent multiplier, if the Court were to perform a lodestar cross-check, also supports the -- fully supports the 30-percent fee request.

Lastly, turning to expenses, we're very pleased to report to Your Honor that the total expenses that we're seeking reimbursement of in this case is less than half of the 250,000-dollar estimate that was in the notice.  And specifically, we're requesting reimbursement of expenses in the amount of $104,686.  These are typical expenses that one would incur in a case of this type.

Nearly -- just to give you a rough sense of the nature of the expenses, nearly 80 percent of the expenses were for categories involving legal and factual research, experts and consultants and mediation.  And we're cognizant of some of Your Honor's prior statements in other approval hearings and decisions regarding expert fees.  And here we were able to keep the expert fees to under $50,000.

**THE COURT:**  Okay.

**MR. KAPLAN:**  -- and especially given some the hourly rates of experts in this field, we think that's certainly a very reasonable sum, as is the total, approximate 104,000-dollar expense reimbursement request.

THE COURT: Okay.

MR. KAPLAN: Finally -- and this would be the last substantive aspect of the motions that I would like to address with Your Honor is a very modest reimbursement for the time spent by the actual lead Plaintiffs overseeing the prosecution of the case. The lead Plaintiffs were very involved in the prosecution of the case from the outset, from the lead Plaintiffs stage through settlement approval.

That -- this included reviewing drafts of the pleadings and other key -- and motions and briefs and key case filings in the case, participating in the mediation process, evaluating and approving the settlement. And awards that we're requesting are $5,500 for the two Atlanta funds and $3,392 for the Baton Rouge fund. And, again, that is a reimbursement --

THE COURT: Is that the $8,892 added together? I think it --

MR. KAPLAN: Right. For their actual time spent overseeing the prosecution of the case.

THE COURT: Got it.

MR. KAPLAN: And then in all other respects, their claims would be submitted under the plan of allocation to the claims administrator and treated the same as any other class member.

THE COURT: Counsel --

MR. KAPLAN: And unless Your Honor has any other

questions, which I'm happy to address, I would just like to close by thanking the Court for its two years overseeing this complex matter.

**THE COURT:**  Well, thank you.

Counsel, any response or any thoughts?

**MR. BILES:**  Your Honor, the Defendants take no position on Plaintiffs' request for fees but we support the Court's approval of the settlement and entry of final judgment.

**THE COURT:**  All right.  Then under Federal Rule of Civil Procedure 23(e)(2), the Court may approve a final class action settlement only on finding that it is fair, reasonable and adequate.  And the Court must consider whether the class representatives and the class counsel have adequately represented the class, the proposal was negotiated at arm's length, the relief provided for the class is adequate taking into account the costs, risks and delay of trial and appeal, effectiveness of any proposed method of distributing relief to the class including the method of processing class member claims and the terms of any proposed award of attorneys' fees including timing of payment.

Here the proposed settlement gives 18 million -- well, 18.25 million to the class -- or to the settlement class, 30 percent of the settlement fund in attorneys' fees, $104,686.68 in litigation expenses and $8,892.01 to lead Plaintiffs.  This Court is convinced that the class

16

representatives and counsel have adequately represented the class.  The proposed settlement appears and seems to have been negotiated at arm's length and the settlement does not raise any concerns.

Securities class action litigation under the PSLRA is risky and often difficult to prove.  Moreover, this case progressed without a parallel SEC action and the results achieved are substantial and avoid the risks of proceeding to trial.

This Court has previously found an attorneys' fee award of 30 percent is the norm in common fund cases but I especially find and make the same award and find that the attorneys' fee award is not only reasonable but to be commended here.  And I want to thank each of you for your courtesy.  Well represented --

**MR. SPEAKER:**  Thank you, Your Honor.

**MR. SPEAKER:**  Thank you, Your Honor.

**THE COURT:**  -- and very, very much appreciated.

**MR. SPEAKER:**  Thank you, Your Honor.

**MR. SPEAKER:**  Thank you, Your Honor.

**THE COURT:**  And so we'll see you soon or maybe not so soon.  Good night now.

**MR. SPEAKER:**  Good afternoon.

**(This proceeding adjourned at 4:49 p.m.)**

17

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____               December 1, 2022

            **Signed**                                  **Dated**

*TONI HUDSON, TRANSCRIBER*